**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22574-ALTONAGA/Reid**

In re:

**KNOWBE4, INC.**
**SECURITIES LITIGATION**

Oral Argument Requested

_________________________________/

**DEFENDANTS' COMBINED MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

BACKGROUND ........ 2

A. KnowBe4 Finds Success As The World's Largest Security Awareness Training Platform ........ 2

B. The Board Forms A Special Committee And Selects Morgan Stanley As Its Financial Advisor ........ 3

C. Vista Agrees To Purchase KnowBe4 At A 44% Premium To The Public Stock Price ........ 4

D. The Special Committee Unanimously Recommends Accepting Vista's Bid As Fair To KnowBe4's Public Shareholders ........ 6

E. KnowBe4 Issues A Press Release, Proxy Statement, And Other Disclosures Concerning The Proposed Merger ........ 7

F. Public Shareholders Overwhelmingly Vote To Approve The Merger ........ 9

G. Plaintiffs Bring This Suit Following A Suit With Nearly Identical Allegations In The Delaware Court Of Chancery ........ 9

LEGAL STANDARD ........ 11

ARGUMENT ........ 12

II. PLAINTIFFS' SECTION 10(B) AND 14(A) CLAIMS FAIL ........ 12

A. Plaintiffs Do Not Adequately Allege Falsity ........ 12

1. Plaintiffs Do Not Adequately Allege That Defendants' Opinion About The Special Committee's Independence Was Materially False Or Misleading ........ 13

2. Plaintiffs Do Not Adequately Allege That The Special Committee's Opinion About Morgan Stanley's Independence Was Materially False Or Misleading ........ 17

3. Plaintiffs Do Not Adequately Allege The Special Committee's Opinion About The Fairness Of The Merger Was Materially False Or Misleading ........ 17

4. Plaintiffs Do Not Adequately Allege That The Proxy Omitted Material Facts About KKR's Preliminary Rollover Estimates ........ 18

B. Plaintiffs Do Not Adequately Allege Scienter or Negligence ........ 19

1. Plaintiffs' Non-Existent Allegations Of Scienter Requires Dismissal ........ 19

2. Plaintiffs Fail to Plead a Strong Inference of Negligence ........ 22

C. Plaintiffs Do Not Adequately Allege Loss Causation ....... 23

D. Plaintiffs' Section 10(b) Claim Is Time-Barred ....... 25

III. PLAINTIFFS' SECTION 20(A) CLAIM FAILS ....... 25

A. Plaintiffs Fail To Plead A Primary Violation Of The Securities Laws ....... 25

B. Plaintiffs Fail To Plead Control ....... 26

1. Plaintiffs Fail To Plead Control By Any Defendant Individually ....... 27

2. Plaintiffs Fail To Plead The Existence Of A Control Group ....... 29

3. Plaintiffs' 20(a) Claim Continues to Rely On Improper Shotgun Pleading ....... 29

CONCLUSION AND REQUEST FOR ORAL ARGUMENT ....... 30

**INTRODUCTION ....... 1**

**BACKGROUND ....... 2**

A. KnowBe4 Finds Success As The World's Largest Security Awareness Training Platform ....... 2

B. The Board Forms A Special Committee And Selects Morgan Stanley As Its Financial Advisor ....... 3

C. Vista Agrees To Purchase KnowBe4 At A 44% Premium To The Public Stock Price ....... 4

D. The Special Committee Unanimously Recommends Accepting Vista's Bid As Fair To KnowBe4's Public Shareholders ....... 6

E. KnowBe4 Issues A Press Release, Proxy Statement, And Other Disclosures Concerning The Proposed Merger ....... 7

F. Public Shareholders Overwhelmingly Vote To Approve The Merger ....... 9

G. Plaintiffs Bring This Suit Following A Suit With Nearly Identical Allegations In The Delaware Court Of Chancery ....... 9

**LEGAL STANDARD ....... 11**

**ARGUMENT ....... 12**

**II. PLAINTIFFS' SECTION 10(B) AND 14(A) CLAIMS FAIL ....... 12**

A. Plaintiffs Do Not Adequately Allege Falsity ....... 12

1. Plaintiffs Do Not Adequately Allege That Defendants' Opinion About The Special Committee's Independence Was Materially False Or Misleading ....... 13

2. Plaintiffs Do Not Adequately Allege That The Special Committee's Opinion About Morgan Stanley's Independence Was Materially False Or Misleading ....... 17

3. Plaintiffs Do Not Adequately Allege The Special Committee's Opinion About The Fairness Of The Merger Was Materially False Or Misleading ........ 17

4. Plaintiffs Do Not Adequately Allege That The Proxy Omitted Material Facts About KKR's Preliminary Rollover Estimates ........ 18

B. Plaintiffs Do Not Adequately Allege Scienter or Negligence ........ 19

1. Plaintiffs' Non-Existent Allegations Of Scienter Requires Dismissal ........ 19

2. Plaintiffs Fail to Plead a Strong Inference of Negligence ........ 22

C. Plaintiffs Do Not Adequately Allege Loss Causation ........ 23

D. Plaintiffs' Section 10(b) Claim Is Time-Barred ........ 25

**III. PLAINTIFFS' SECTION 20(A) CLAIM FAILS ........ 25**

A. Plaintiffs Fail To Plead A Primary Violation Of The Securities Laws ........ 25

B. Plaintiffs Fail To Plead Control ........ 26

1. Plaintiffs Fail To Plead Control By Any Defendant Individually ........ 27

2. Plaintiffs Fail To Plead The Existence Of A Control Group ........ 29

3. Plaintiffs' 20(a) Claim Continues to Rely On Improper Shotgun Pleading ........ 29

**CONCLUSION AND REQUEST FOR ORAL ARGUMENT ........ 30**

# TABLE OF AUTHORITIES

**Page**

## Cases

*100079 Canada, Inc. v. Stiefel Lab'ys, Inc.*,
596 F. App'x 744 (11th Cir. 2014) .......... 25

*A&M Mgmt. Inc. v. Deme*,
2019 WL 7344795 (S.D. Fla. Mar. 14, 2019) .......... 13

*Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*,
606 F.2d 602 (5th Cir. 1979) .......... 22

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) .......... 29

*and Adams v. Standard Knitting Mills, Inc.*,
623 F.2d 422 (6th Cir. 1980) .......... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 12

*Beck v. Dobrowski*,
559 F.3d 680 (7th Cir. 2009) .......... 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 11, 15

*In re BitConnect Sec. Litig.*,
2019 WL 9104318 (S.D. Fla. Aug. 23, 2019) .......... 26

*Brophy v. Jiangbo Pharms., Inc.*,
781 F.3d 1296 (11th Cir. 2015) .......... 11, 19, 20, 21

*Brown v. Enstar Grp., Inc.*,
84 F.3d 393 (11th Cir. 1996) .......... 26, 28

*Brown v. Mendel*,
864 F. Supp. 1138 (M.D. Ala. 1994), *aff'd sub nom. Enstar*, 84 F.3d 393 (11th Cir. 1996) .......... 26, 27

*Cameron v. Outdoor Resorts of Am., Inc.*,
608 F.2d 187 (5th Cir. 1979) .......... 28

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) ....................12, 17

*In re Columbia Pipeline, Inc.*,
405 F. Supp. 3d 494 (S.D.N.Y. 2019) ....................23

*Craig v. Target Corp.*,
2024 WL 4979234 (M.D. Fla. Dec. 4, 2024) ....................22

*Crenshaw v. Lister*,
556 F.3d 1283 (11th Cir. 2009) ....................11

*Curry v. TD Ameritrade, Inc.*,
662 F. App'x 769 (11th Cir. 2016) ....................26

*Douglas v. Norwegian Cruise Lines*,
2021 WL 1378296 (S.D. Fla. Apr. 12, 2021) ....................21

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ....................24

*Durham v. Whitney Info. Network, Inc.*,
2009 WL 3783375 (M.D. Fla. Nov. 10, 2009) ....................20

*FindWhat Investor Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ....................19, 23

*In re Focus Financial Partners*,
2025 WL 961488 (D. Del. Mar. 31, 2025) ....................13, 16

*Fouad v. Isilon Sys., Inc.*,
2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ....................29

*Galapagos, LLC v. Vision Bank*,
2010 WL 11468562 (N.D. Ala. July 20, 2010) ....................26

*In re Galectin Therapeutics, Inc. Secs. Litig.*,
843 F.3d 1257 (11th Cir. 2016) ....................13

*Garbutt v. S. Clays, Inc.*,
894 F. Supp. 456 (M.D. Ga. 1995) ....................28

*Gnanaraj v. Lilium N.V.*,
2023 WL 9064669 (S.D. Fla. Dec. 18, 2023) ....................30

*Happy Tax Franchising LLC v. Hill*,
2023 WL 2664261 (S.D. Fla. Jan. 25, 2023) ....................25

*Harvey M. Jasper Ret. Trust v. Ivax Corp.*,
920 F. Supp. 1260 (S.D. Fla. 1995)....................22

*Henningsen v. ADT Corp.*,
161 F. Supp. 3d 1161 (S.D. Fla. 2015), *aff'd sub nom. IBEW Loc. 595*, 660 F. App'x....................22, 25

*Hubbard v. BankAtlantic Bancorp, Inc.*,
625 F. Supp. 2d 1267 (S.D. Fla. 2008)....................11

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,
660 F. App'x 850 (11th Cir. 2016)....................14, 18

*In re January 2021 Short Squeeze Trading Litig.*,
584 F. Supp. 3d 1161 (S.D. Fla. 2022) (Altonaga, C.J.)....................3

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)....................13

*Johnson v. City of Atlanta*,
107 F.4th 1292 (11th Cir. 2024)....................3

*Karp v. First Connecticut Bancorp, Inc.*,
69 F.4th 223 (4th Cir. 2023)....................23

*Kinnett v. Strayer Educ., Inc.*,
501 F. App'x 890 (11th Cir. 2012)....................24

*In re KLX, Inc. Sec. Litig.*,
232 F. Supp. 3d 1269 (S.D. Fla. 2017)....................19, 25

*In re Kosmos Energy Ltd. Sec. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. 2013)....................29

*Kosowsky v. Icahn Enters.*,
748 F. Supp. 3d 1303 (S.D. Fla. 2024)....................17

*Laperriere v. Vesta Ins. Grp., Inc.*,
526 F.3d 715 (11th Cir. 2008)....................27

*Lee v. Frost*,
2021 WL 3912651 (S.D. Fla. Sept. 1, 2021)....................23

*LLDVF, L.P. v. Dinicola*,
2010 WL 3210613 (D.N.J. Aug. 12, 2010)....................29

*MacPhee v. MiMedx Grp., Inc.*,
73 F.4th 1220 (11th Cir. 2023)....................23

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) .......... 24

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) .......... 23

*Mills v. Esmark, Inc.*,
544 F. Supp. 1275 (N.D. Ill. 1982) .......... 13

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) .......... 11, 19

*Muhammad v. Citimortgage, Inc.*,
598 F. App'x 636 (11th Cir. 2015) .......... 25

*In re NVIDIA Corp. Sec. Litig.*,
2010 WL 4117561 (N.D. Cal. Oct. 19, 2010) .......... 22

*In re Ocera Therapeutics Secs. Litig.*,
806 F. App'x 603 (9th Cir. 2020) .......... 24

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .......... 12, 14

*Peltz v. Polyphase Corp.*,
36 F. App'x 316 (9th Cir. 2002) .......... 26

*Phillips v. Sci.-Atlanta, Inc.*,
374 F.3d 1015 (11th Cir. 2004) .......... 20

*Pinkney v. Minecore Int'l, Inc.*,
2009 WL 10668198 (S.D. Fla. Sept. 30, 2009) (Altonaga, C.J.) .......... 19, 22

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287 (S.D.N.Y. 2010) .......... 22

*Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) .......... 23

*Ret. Sys. v. Teleperformance SE*,
746 F. Supp. 3d 1395 (S.D. Fla. 2024) (Altonaga, C.J.) .......... 25

*Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*,
111 F. Supp. 3d 1336 (S.D. Fla. 2015) .......... 20

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) .......... 22

*In re Sahlen & Assocs., Inc. Secs. Litig.*,
773 F. Supp. 342 (S.D. Fla. 1991) ..... 28

*Sapssov v. Health Mgmt. Assocs., Inc.*,
608 F. App'x 855 (11th Cir. 2015) ..... 24

*Saunders v. Duke*,
766 F.3d 1262 (11th Cir. 2014) ..... 11

*Schlifke v. Seafirst Corp.*,
866 F.2d 935 (7th Cir. 1989) ..... 27

*Schmitt v. China XD Plastics Co., Ltd.*,
698 F. Supp. 3d 474 (E.D.N.Y. 2023) ..... 15

*SEC v. Shanahan*,
646 F.3d 536 (8th Cir. 2011) ..... 22

*Smykla v. Molinaroli*,
85 F.4th 1228 (7th Cir. 2023) ..... 13, 18

*Sulzer v. Associated Madison Cos., Inc.*,
1985 WL 5856 (M.D. Fla. May 10, 1985) ..... 18, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..... 20, 22

*Theoharous v. Fong*,
256 F.3d 1219 (11th Cir. 2001) ..... 25, 27

*In re Tibco Software Sec. Litig.*,
2006 WL 1469654 (N.D. Cal. May 25, 2006) ..... 22

*Tippens v. Round Island Plantation L.L.C.*,
2009 WL 2365347 (S.D. Fla. July 31, 2009) ..... 27, 28

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ..... 12

*Turner v. Williams*,
65 F.4th 564 (11th Cir. 2023) ..... 15

*United States v. Bestfoods*,
524 U.S. 51 (1998) ..... 26

*Va. Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) ..... 18

*Vargas v. Citrix Sys., Inc.*,
716 F. Supp. 3d 1295 (S.D. Fla. 2024) ....................15, 16

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ....................30

*In re Worlds of Wonder Sec. Litig.*,
721 F. Supp. 1140 (N.D. Cal. 1989) ....................29

**Rules / Statutes**

15 U.S.C. § 78t(a) ....................25

15 U.S.C. § 78u-4(b) ....................11

15 U.S.C. § 78u-4(b)(1) ....................15

28 U.S.C. § 1658(b)(1) ....................25

Del. Code Ann. tit. 8, § 262(g) (2023) ....................6, 7

Securities Exchange Act Section 10(b) .................... 10, 11, 12, 13, 19, 20, 22, 23, 25, 28, 30

Securities Exchange Act Section 14(a) .................... 1, 10, 12, 15, 16, 19, 22, 23, 24, 28, 30

Securities Exchange Act Section 20(a) ....................2, 3, 4, 5, 10, 11, 13, 19, 25, 26, 27, 28, 30

Securities Exchange Act Rule 13e-3 ....................9

17 C.F.R. § 230 ....................27

17 C.F.R. § 240 ....................8, 12, 14, 27

Fed. R. Civ. P. 8 .................... 11, 15, 29

Fed. R. Civ. P 9(b) .................... 1, 11, 15, 19, 20, 23, 30

Fed. R. Civ. P. 10(b) ....................29

S.D. Fla. L.R. 3.8, 7.1(b) ....................9, 30

## INTRODUCTION

Defendant KnowBe4, Inc. ("KnowBe4" or the "Company"), then a public company, was acquired in a take-private merger by Defendant Vista Equity Partners Management, LLC in 2023. The deal was the culmination of a robust process led by a committee of disinterested and independent directors who were charged with exploring the Company's strategic alternatives. The Special Committee met 23 times over five months, hired outside advisors, and reached out to 18 parties (including Vista). Only Vista submitted an acquisition proposal, which the Special Committee negotiated up from $24 to $24.90. The final deal price of $24.90 per share was a 44% premium to KnowBe4's stock price just before public announcement of the merger. The transaction received near-unanimous support, with 99% of unaffiliated public shareholders voting to approve the merger.

Purporting to represent those same shareholders, Plaintiffs here challenge the fairness of the merger price that their putative class members overwhelmingly approved. But their 77-page Consolidated Class Action Complaint (CCAC) is long on rhetoric and short on particularized facts. Plaintiffs accuse 16 Defendants of securities fraud by failing to disclose certain information that supposedly misled investors into approving the deal. That claim cannot withstand minimal scrutiny, much less clear the high pleading bars set by Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA).

Plaintiffs' Section 14(a) and 10(b) claims (Counts I and II) fail for multiple reasons, each of which is an independent ground for dismissal. First, Plaintiffs fail to adequately allege a materially false or misleading statement. Three of the four challenged statements are opinions, for which plaintiffs do not (and cannot) plead subjective falsity. But even setting that aside, ***all*** of the allegedly omitted information had already been disclosed in KnowBe4's SEC filings or is the product of rank speculation. Second, Plaintiffs do not adequately plead the requisite state of mind for their Exchange Act claims. They have ***not pled any*** facts, much less any with particularity, regarding the state of mind of any Defendant. And, even if a negligence standard applies to Plaintiffs' Section 14(a) claim, it still fails because Plaintiffs have pled no particularized facts about any specific Defendants' conduct, the applicable standard of care, or how any Defendant deviated from that standard of care. This is fatal. Third, Plaintiffs fail to adequately allege loss causation, another essential element of their claims. Instead of well-pled facts, they offer only

illogical conjecture. Each of these flaws is case-dispositive; when either thread is pulled, the complaint, in its entirety, unravels.

Plaintiffs' secondary Section 20(a) claim (Count III) fails because they fail to plead the requisite primary claim. The Section 20(a) claim also fails because Plaintiffs do not adequately allege either that the named defendants—each of whom was a ***minority*** shareholder or ***individual*** director—controlled KnowBe4, let alone that all of these distinct defendants formed an alleged control group. Accordingly, the Court should dismiss the complaint with prejudice.

## BACKGROUND

### A. KnowBe4 Finds Success As The World's Largest Security Awareness Training Platform

Defendant KnowBe4, Inc. was originally founded as a private company in 2010 by Defendant Stu Sjouwerman. ¶ 50.[1] Known for "pioneering an integrated approach to security awareness," KnowBe4 became the world's "leading security awareness platform enabling organizations to assess, monitor and minimize the ongoing cybersecurity threat of social engineering attacks." ¶ 50.

Institutional investors took notice of KnowBe4's success. Two of those investors were Defendants KKR[2] and Elephant Partners. ¶ 51. KKR is a global private equity and investment firm, and Elephant Partners is a venture capital management firm. ¶¶ 37–39, 42–44. Through separate investments, KKR and Elephant Partners each acquired minority stakes in KnowBe4 collectively amounting to less than a majority of the company's voting rights. ¶ 51.

Defendant Vista Equity Partners Management, LLC is a "global private equity and investment firm." ¶¶ 47, 54–55. In 2020, Vista purchased preferred shares in KnowBe4, amounting to only 10% of the Company's voting rights. ¶¶ 58, 144.

In 2021, KnowBe4 successfully completed an initial public offering. ¶ 52. The IPO resulted in KnowBe4 maintaining a dual-class stock structure, with Class A shares entitling holders to one vote per share and Class B shares carrying 10 votes per share. ¶ 52. The IPO helped jumpstart KnowBe4's expansion. ¶¶ 59–60. As a result, KnowBe4 "consistently reported

[1] References to "¶" are to the paragraphs of the CCAC [ECF 70].

[2] Unless otherwise noted, all references to "KKR" are to KKR Knowledge Investors, L.P. ("KKR Investor"), "an affiliate of Defendant KKR & Co. and the direct owner of shares of KnowBe4 common stock." ¶ 38.

impressive financial results" after its IPO. ¶ 62. Amid this impressive performance, Sjouwerman, then KnowBe4's CEO, and several analysts publicly opined that KnowBe4's public stock price was undervalued by the public markets. ¶¶ 61–63. But KnowBe4 was at the time "listed and actively traded on the NASDAQ, a highly efficient market," that took account of KnowBe4's communications with the market and analyst's reports on KnowBe4's stock. ¶ 197.

### B. The Board Forms A Special Committee And Selects Morgan Stanley As Its Financial Advisor

In June 2022, as part of its routine process for evaluating current investments, Vista representatives met with Sjouwerman and two other KnowBe4 Board members to discuss whether KnowBe4 was potentially interested in a sale transaction. *See* Ex. A (Proxy Statement) at 28–29.[3] After discussing the offer with its counsel, the KnowBe4 Board determined that a potential sale "could be attractive and merited further consideration." *Id.* at 29.

The Board elected to form a three-member Special Committee to evaluate a potential "strategic transaction, which could involve a sale of KnowBe4." *Id.* One of the purposes of the Special Committee was to "mitigat[e] or neutraliz[e]" any "potential conflicts of interest" involving KnowBe4 directors, some of whom worked for "the existing significant shareholders of KnowBe4" that had indicated possible interest in "'rolling' all or a part of their equity interests in KnowBe4" into the post-merger entity, rather than sell those shares. *Id.*; ¶ 76. At the time, KnowBe4's Board consisted of Defendants Sjouwerman, Jeremiah Daly, Stephen Shanley, Kara Wilson, Krish Venkataraman, Gerhard Watzinger, and Kevin Klausmeyer. ¶¶ 21–36. Daly is the co-founder and general partner of Elephant Partners, and Shanley and Wilson are affiliated with KKR & Co. ¶¶ 30, 32, 34.

After discussion with its legal advisors, the Board determined that three directors—Venkatraman, Watzinger, and Klausmeyer—"were independent and disinterested for purposes of a possible transaction with Vista." ¶ 77. Each of Venkataraman, Watzinger, and Klausmeyer, like Plaintiffs and the putative class held significant equity stakes in KnowBe4. For example, Venkataraman owned millions of dollars' worth of Class A common stock. Ex. A at 79. KnowBe4

[3] The merger proxy statement that Plaintiffs sue on, like the other publicly filed documents Plaintiffs quote in their complaint, is both incorporated by reference into the complaint, *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298–99 (11th Cir. 2024), and judicially noticeable, *In re January 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1176 n.11 (S.D. Fla. 2022) (Altonaga, C.J.). The Court therefore may consider such filings on a motion to dismiss.

compensated directors with awards of Restricted Stock Units (RSUs), or non-tradable shares of common stock that become saleable upon vesting. ¶ 166; Ex. A at v, 6. The RSUs were subject to a "time-based vesting schedule" that would accelerate upon the occurrence of certain events, including a merger. ¶ 166; Ex. A at 6, 80. Each Special Committee member also owned significant Performance Stock Units (PSUs) and options that increased in value along with the price of KnowBe4 stock. Ex. A at 79. Accordingly, the Board appointed Venkataraman, Watzinger, and Klausmeyer as the members of the Special Committee. ¶¶ 21–27.

To assess a potential transaction, the KnowBe4 Board unanimously adopted resolutions authorizing the Special Committee to evaluate and negotiate a potential transaction. Ex. A at 30. The resolutions made clear that that the Board would not recommend approval of any acquisition before receiving a favorable recommendation by the Committee. *Id.* Shortly after its appointment, the Special Committee and counsel from Wilson Sonsini vetted and retained external legal and financial advisors to assist with its evaluation of a potential transaction. *Id.* at 29. After review of a relationship disclosure memorandum submitted by Morgan Stanley, the Committee "determined that no conflicts had been disclosed … that would affect the ability of Morgan Stanley to fulfill its responsibilities as an independent financial advisor." *Id*. at 31. Accordingly, the Committee retained Morgan Stanley as its advisor. *Id.*

### C. Vista Agrees To Purchase KnowBe4 At A 44% Premium To The Public Stock Price

Morgan Stanley representatives met with Vista representatives to discuss a potential acquisition. *Id.* KKR's counsel also contacted KnowBe4's counsel to advise that KKR would likely support a potential deal and "would consider" keeping an equity interest in KnowBe4 after any transaction. *Id.* In parallel with its discussions with Vista, Morgan Stanley "contacted at least 18 parties to gauge their interest in a potential acquisition of KnowBe4." ¶ 104.

The Special Committee and Morgan Stanley then met to discuss, among other things, the status of the discussions with potential bidders and Morgan Stanley's preliminary financial analyses of KnowBe4's valuation. Ex. A at 36; ¶ 125. The Committee "discussed its views on valuation, including that it believed that a transaction with a value in the mid-to-high $20's per share range was appropriate . . . based upon, among other things," Morgan Stanley's analysis and the Special Committee's independent views of KnowBe4's business. ¶ 125.

Vista requested that Morgan Stanley contact KKR and Elephant Partners to seek their "views on a potential rollover of some or all of their equity in a potential acquisition of KnowBe4."

Ex. A at 38. On September 13, Morgan Stanley met with Defendants Shanley and Daly to discuss KKR and Elephant Partners' "potential interest in an equity rollover" and "the potential quantum" of any such rollover. Ex. A at 38; ¶ 99. Morgan Stanley relayed to the Committee KKR's and Elephant Partners' "preliminary interest in a potential rollover in connection with a potential acquisition." Ex. A at 38. The possibility of a rollover was fully disclosed. *Id.*

The Special Committee and Morgan Stanley reconvened on September 15. They discussed, among other topics, "the possibility of receiving a proposal from Vista and strategies and tactics with respect to the negotiations with Vista." *Id.* Morgan Stanley "reviewed with the Special Committee Morgan Stanley's preliminary financial analyses of KnowBe4, including the valuation methodologies utilized and the value ranges produced under such valuation methodologies." *Id.* at 39. To guide that discussion, Morgan Stanley (not the Special Committee) presented a slideshow. ¶ 94. One of those slides, titled "Illustrative Response Framework For Potential Offer Prices," proposed potential responses to a prospective offer depending on offered price. ¶¶ 95-96. Next to the prospective prices of $23.00 to 24.00 per share—either of which would have represented a significant premium over the then-"current" stock price of $19.41, ¶ 95—the slide included a note that read, "Not the right zone for a transaction. Unless you can see your way into the mid- to upper-$20s, then it's not worth sending in a letter." *Id*. Next to the prospective price of $25, however, Morgan Stanley noted that the "Prior … Direction" was to "take it to the Committee." *Id.*

The next day, Vista verbally conveyed that it would submit an offer to buy all of KnowBe4's stock for $24 per share. Ex. A at 39. After the Special Committee submitted a counteroffer of $26.50 per share, further discussions ensued, with Vista ultimately accepting an offer to buy KnowBe4 for $24.90 per share. *Id*. at 42. The final price represented a ***44% premium*** over the closing price of KnowBe4 common stock ($17.30 per share) on the last full trading day before Vista publicly disclosed the acquisition proposal and a ***30% premium*** over the 30-day average closing stock price ($19.10 per share) ending that same day. *Id.* at 47.

Vista and KnowBe4 then entered into a merger agreement. The proposed merger required approval from a majority vote of four different categories of shareholders: (1) holders of a majority of the voting power of all outstanding shares of KnowBe4 common stock, (2) holders of a majority of the voting power of the outstanding shares of common stock held by unaffiliated shareholders (meaning all shareholders excluding shares held KnowBe4 directors or officers, Vista, KKR,

Elephant Partners, or their affiliates), (3) holders of a majority of the outstanding shares of Class A common stock, and (4) holders of a majority of the outstanding shares of Class B common stock. Ex. A at vi–vii, 19. Shareholders who did not vote in favor of the merger were entitled to have their shares appraised by the Delaware Court of Chancery and to receive payment in cash of the "fair value" of their shares. Del. Code Ann. tit. 8, § 262(g) (2023).

At the time of Vista's acceptance, each of KKR, Elephant Partners, and Sjouwerman remained ***minority*** holders of KnowBe4 stock. ¶¶ 151–53. Each decided to sell a majority of ***their shares*** for cash in the merger if approved. *Id.* For each share sold, they would receive a price of $24.90—the ***same price*** received by Plaintiffs and other public shareholders. ¶ 154.

KKR, Elephant Partners, and Sjouwerman also elected to roll over minority portions of their equity into the post-acquisition company. ¶ 154. KKR rolled over $300 million of its equity, less than half of its total stake in KnowBe4 and $50 million less than the value of the shares it elected to sell. ¶ 151.

Approval of the change in control to Vista would also accelerate the vesting of any RSUs that had previously been awarded to KnowBe4 Board members. ¶ 166. Consistent with KnowBe4's disclosures, upon approval of the merger, the RSUs would be canceled and converted into a right to receive a cash payment "equal to the product of (1) the Per Share Price [*i.e.*, $24.90] and (2) the total number of KnowBe4 Class A common stock" held by the recipient—the ***same price*** received by Plaintiffs and public shareholders for their shares. Ex. A at 6.

### D. The Special Committee Unanimously Recommends Accepting Vista's Bid As Fair To KnowBe4's Public Shareholders

On October 11, Morgan Stanley delivered its fairness opinion to the Special Committee and the Board, in which it concluded that the deal price of $24.90 per share "was fair, from a financial point of view, to . . . holders of shares of KnowBe4 Common Stock." Ex. A at 45. Morgan Stanley employed 11 valuation methodologies to assess a fair deal price range, including a discounted cash flow analysis, and concluded that the $24.90 deal price was at the high end of the range for 10 out of 11 methodologies. *Id*. at 56–62, 64. Morgan Stanley then confirmed that it had no material updates to the relationships disclosure it had submitted to the Special Committee. *Id.* at 45. After discussion, the Special Committee unanimously determined that the merger and other transactions contemplated by the merger were "advisable, fair to, and in the best interests of KnowBe4 and the [public shareholders]." *Id.*

Accordingly, the Committee recommended that the Board and KnowBe4 shareholders vote to approve the merger. *Id.* The Committee cited numerous factors for its recommendation, including the "[c]ertainty of value and immediate liquidity at an attractive price measured against the ongoing business and financial execution risks of KnowBe4's business plan," as well as Morgan Stanley's opinion, the Committee's own judgment, a pre-signing market check of 13 other financial sponsors, and the "procedural safeguards" present in the Committee's consideration of the transaction. *Id.* at 46–51. Consistent with its prior delegation to the Committee, the KnowBe4 Board unanimously adopted the Special Committee's view that the proposed merger was fair to and in the best interests of KnowBe4 and its shareholders, and recommended that shareholders vote to approve the merger. *Id.* at 52.

### E. KnowBe4 Issues A Press Release, Proxy Statement, And Other Disclosures Concerning The Proposed Merger

On October 12, 2022, KnowBe4 and Vista issued a press release to inform the market of the merger. The press release stated that "an independent Special Committee of KnowBe4's Board of Directors was formed to review" the proposed acquisition. ¶ 111. It also provided that "[i]n connection with Vista's initial acquisition proposal, KnowBe4, under the supervision of the Special Committee and its legal and financial advisors, engaged in a robust process, including evaluating transaction alternatives against KnowBe4's standalone plan and other strategic initiatives." ¶ 112. The press release relayed that the Special Committee and KnowBe4's Board had concluded that the merger was in the best interests of KnowBe4's shareholders. ¶ 114. After the announcement of the merger on October 12, KnowBe4's stock price increased to nearly $25, where it would remain until the merger closed on February 1, 2023. ¶ 184.

The day after the October 12 press release, KnowBe4 filed a Form 8-K with the SEC announcing the planned merger. ¶ 116. The Form 8-K reiterated the Company's determination that the Special Committee was "comprised solely of independent and disinterested directors" and reached its recommendation in part "with the assistance of its independent financial and legal advisors." ¶ 117. The Form 8-K also disclosed KKR's potential $300 million equity rollover and KnowBe4's planned treatment of outstanding RSUs. Ex. B at 2–3, 4–5.

Later, on December 22, 2022, KnowBe4 filed a definitive proxy statement on Schedule 14A with the SEC. ¶ 119; *see* Ex. A. The proxy statement was over 370 pages long and included copious disclosures about KnowBe4, the planned merger, and the negotiation process that preceded it. Among other things, it detailed the Special Committee's compensation and KnowBe4

stock holdings, Morgan Stanley's written fairness opinion, Ex. A at 5, the negotiation process beginning with Vista's initial expression of interest, the supporting and countervailing factors it considered in reaching its recommendation to approve the merger, and public shareholders' appraisal rights. The proxy statement further disclosed that before Vista had made its initial offer to purchase the Company, KKR and Elephant Funds held discussions with Morgan Stanley "regarding their preliminary interest in a potential rollover in connection with a potential acquisition of KnowBe4," *id.* at 38, and that, after the deal was consummated at $24.90 a share, KKR committed to making a $300 million equity rollover contribution, *id.* at 11, 89; ¶ 136.

The proxy statement conveyed the Special Committee's determinations that the merger was fair and in the best interests of the public shareholders. ¶¶ 121–22. It recounted the Special Committee's view "that a transaction with a value in the mid-to-high $20's per share range was appropriate," ¶ 125, Morgan Stanley's conclusion that the merger was fair, and the KnowBe4 Board's determination that the Special Committee members "were independent and disinterested for purposes of a possible transaction with Vista," ¶¶ 127–29. It noted the Special Committee's conclusion that Morgan Stanley was independent. ¶¶ 131–32. And it further disclosed that "Morgan Stanley, its affiliates, directors, and officers may at any time invest on a principal basis or manage funds that invest ... for their own account or the accounts of their customers, in debt or equity securities or loans of [Vista], the KKR Related Entities, Elephant Partners, Parent, KnowBe4 and their respective affiliates," and that "Morgan Stanley, its affiliates, directors or officers … may have committed and may commit in the future to invest in private equity funds managed by [Vista], the KKR Related Entities, [and] Elephant Partners." Ex. A at 64–65; ¶ 133.

The proxy statement included a section titled "Purchaser Filing Parties," defined as Oranje Holdco, LLC, Vista, Elephant Partners, KKR, Sjouwerman, and their affiliates. Ex. A at v–vi. Although the Purchaser Filing Parties expressed their view that "the Merger is substantively and procedurally fair," they noted that none of them "participated in the deliberation of the Special Committee or received advice from" the Committee's advisors in reaching that determination. *Id.* at 5. The Purchaser Filing Parties fully disclosed their interests in the merger, including their rollover interests, and their reasons for believing the transaction was fair. *Id.* at 65–68.

The same day, KnowBe4, Vista, KKR, and Elephant Partners filed an amendment to a Schedule 13E-3 for the anticipated go-private merger. ¶ 140; *see* 17 C.F.R. § 240.13e-3 (2008); Ex. C. The Schedule 13E-3 amendment attached the proxy statement as an exhibit. *See* Ex. C at

4/25. While the amendment "acknowledge[d] that the Merger is a 'going private' transaction for purposes of Rule 13e-3 under the Exchange Act," it provided that its filing should "not be construed as an admission by any Filing Person … that [KnowBe4] is 'controlled' by any of the Filing Persons and/or their respective affiliates." Ex. C. Further, the amendment made clear that "[t]he information concerning [KnowBe4] contained in, or incorporated by reference into, this Schedule 13E-3 and the Proxy Statement was supplied by [KnowBe4]," while "all information concerning each other Filing Person contained in, or incorporated by reference into, this Schedule 13E-3 and the Proxy Statement was supplied by such Filing Person." *Id.*

### F. Public Shareholders Overwhelmingly Vote To Approve The Merger

On January 31, 2023, KnowBe4 shareholders nearly unanimously voted to approve the merger. *See* Ex. D (KnowBe4 Feb. 6, 2023 Form 8-K) at 5, 7. That included non-abstaining unaffiliated public shareholders, 99.0% of whose 132 million shares were voted in support. *Id.*; ¶ 190. Although KKR, Elephant Partners, and Sjouwerman down-converted their Class B shares into Class A shares before the vote, ¶ 176, their conversion of the shares did not affect the vote of the unaffiliated public shareholders. ¶ 174; *see* Ex. A at vi–vii, 19. KnowBe4 "continued to perform well" after shareholders' unanimous approval of the merger. ¶ 108.

### G. Plaintiffs Bring This Suit Following A Suit With Nearly Identical Allegations In The Delaware Court Of Chancery

Following the merger, a group of alleged KnowBe4 shareholders brought suit against substantially the same defendants in the Delaware Court of Chancery, asserting that they violated their fiduciary obligations under Delaware law. *See* Notice of Pending, Refiled, Related or Similar Actions [ECF No. 27] at 1–2. Although Plaintiffs do not mention the parallel Delaware action in their complaint and failed to disclose it as required under Local Rule 3.8 when filing this suit, *see* Aug. 20, 2025 Order [ECF No. 44] at 1–2, their allegations are nearly identical to the allegations in the Delaware action. Both actions make the same disclosure-related arguments—Plaintiffs here simply dub them "federal securities claims," rather than state-law claims. Notably, the Delaware plaintiffs have already received certification of a non-opt-out class.

In this case, Plaintiffs allege that they beneficially owned KnowBe4 common stock and were either entitled to vote on the merger "and/or" sold shares of KnowBe4 stock around the time of the merger. ¶ 18. After ordering repleading to address Plaintiffs' "shotgun" pleading once, *see* June 9, 2025 Order [ECF 5], the Court granted Plaintiffs' motion to appoint lead class counsel and ordered Plaintiffs to file a consolidated amended complaint. Plaintiffs' latest complaint asserts

three causes of action: (1) violation of Section 14(a) of the Exchange Act and Rule 14a-9 against all Defendants (Count I); (2) violation of Section 10(b) of the Exchange Act and Rule 10b-5 against all Defendants (Count II); and (3) violation of Section 20(a) of the Exchange Act against Vista, KKR, Elephant Partners, and seven "Director Defendants" (Count III).[4] ¶¶ 204–35.

In Counts I and II, Plaintiffs challenge the following four categories of public statements, made primarily in the proxy, about the merger. In each case, Plaintiffs contend that Defendants failed to disclose certain "facts" that rendered the challenged statements materially false or misleading when made. ¶¶ 7, 206.

1. Defendants' opinion that the Special Committee was comprised of "independent" directors. ¶¶ 111–13, 117–18, 127–30.
2. Defendants' opinion that the Special Committee's financial advisor (Morgan Stanley) was "independent." ¶¶ 117–18, 131–34.
3. Defendants' opinion that the merger (at $24.90 per share) was "fair" and in the "best interest" of the stockholders. ¶¶ 114–15, 121–23.
4. Defendants' statements about KKR's equity-rollover plans. ¶¶ 135–37.

In Count III, Plaintiffs allege that the seven Director Defendants, and minority shareholders KKR, Elephant Partners, and Vista "controlled" KnowBe4 within the meaning of Section 20(a) of the Exchange Act. ¶¶ 229–35.

Without any adequately pled allegations in support of their claims, Plaintiffs—representing a class of ***sellers***—insist that Defendants' ostensibly misleading statements and omissions "artificially devalued the market price." ¶ 179. They baldly allege that if KnowBe4 had disclosed the information they allege was material, Plaintiffs and other public shareholders "would have obtained a higher per share price," either in a merger or in a statutory appraisal. ¶ 183. Plaintiffs' theory is that, but for the alleged misstatements and omissions, KnowBe4's stock price would have traded ***even higher***. This makes no sense. In other words, under Plaintiffs' theory, if the proxy was not misleading–that is, if it disclosed that the Special Committee was purportedly conflicted and that the deal was somehow unfair, then KnowBe4's stock price would ***risen*** even more than it actually did. Alternatively, Plaintiffs implausibly suggest that the Company's shareholders—each

[4] Plaintiffs define the "Director Defendants" as the three Special Committee members and Sjouwerman, Daly, Shanley, and Wilson. ¶ 36.

of whom received a ***significant premium*** from this transaction—would have voted down the merger. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs must clear three hurdles. ***First***, the complaint must satisfy Rule 8(a), meaning it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). ***Second***, because Plaintiffs are alleging fraud, they must satisfy Rule 9(b)'s heightened pleading requirements, which require a complaint "to state with particularity the circumstances constituting fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Under that standard, the complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (citations omitted).

***Third***, Plaintiffs must comply with the heightened pleading standard imposed by the PSLRA. 15 U.S.C. § 78u-4(b). Under that standard, a complaint must set forth "each statement alleged to have been misleading," "the reason or reasons why the statement is misleading," and, "if an allegation regarding the statement or omission is made on information and belief," then "all facts on which that belief is formed." *Id.* § 78u-4(b)(1)(B). Additionally, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). This is a "stringent test." *Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1291 (S.D. Fla. 2008). For Section 10(b) claims, even where a plaintiff adequately alleges "negligence . . . [that] is not enough to establish scienter." *Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1306 (11th Cir. 2015).

On a Rule 12(b)(6) motion, the court may consider documents incorporated in the complaint by reference. *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). The court need not accept as true allegations contradicted by facts that are judicially noticed or supported by exhibits incorporated by reference. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.") (quotation omitted).

## ARGUMENT

## II. PLAINTIFFS' SECTION 10(B) AND 14(A) CLAIMS FAIL

### A. Plaintiffs Do Not Adequately Allege Falsity

This action should be dismissed, first and foremost, because Plaintiffs do not adequately allege falsity, a necessary element of Plaintiffs' Section 14(a) and 10(b) claims.

To be entitled to relief under either Rule 14a-9 or Rule 10b-5, a plaintiff must adequately allege a materially false or misleading statement. 17 C.F.R. §§ 240.14a-9, 240.10b-5. And where, as here, a plaintiff alleges falsity by omission, the undisclosed information must be material. *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988). That means there must be "a substantial likelihood that a reasonable investor would consider it important in deciding how to vote" and "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448–49 (1976); *see Basic*, 485 U.S. at 231–33, 233 n.8 (explaining that Rules 14a-9 and 10b-5 incorporate the same materiality standard). Otherwise, investors would likely be buried in "an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking." *Basic*, 485 U.S. at 231. But "[w]hen it comes to omissions specifically, … silence, absent a duty to disclose, is not misleading," so even "material information needn't be disclosed unless its omission would render misleading other information that an issuer *has* disclosed." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019) (alteration adopted) (quoting *Basic*, 485 U.S. at 239 n.17).

Challenges to statements of opinion are subject to even more stringent requirements. A reasonable investor "understands[] … the difference … between a statement of fact and one of opinion," and thus would not "understand such [a] statement[] as [a] guarantee." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 187–88 (2015). Accordingly, a statement of opinion is not misleading even if "external facts show the opinion to be incorrect" or "an investor can ultimately prove the belief wrong." *Id.* at 186, 188. Expressions of opinion are actionable only in two scenarios: (1) if the speaker makes "an untrue statement of fact[] as to what [she] ***actually*** believes … (assuming the misrepresentation were material)," *Carvelli*, 934 F.3d at 1322 (citation omitted) (emphasis added), or (2), if the expression of opinion "omits material facts about the [speaker]'s inquiry into or knowledge concerning" the statement, and "those facts conflict with what a reasonable investor would take from the statement," *Omnicare*, 575 U.S. at 189.

These principles foreclose this suit entirely. Three of the four buckets of challenged statements were inactionable opinions. And the ostensible facts that Plaintiffs insist should have been disclosed either were disclosed, or are the product of speculation that is impermissible under both the Federal Rules and the PSLRA's heightened pleading standards.

Nor do Plaintiffs adequately allege that Defendants, aside from KnowBe4 itself and Sjouwerman, were "makers" of the challenged statements. "[F]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it," so even one who "prepares or publishes a statement on behalf of another is not its maker." *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1271–72 (11th Cir. 2016) (citing *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)). Nor can anyone who supplies the information be liable. *See, e.g.*, *A&M Mgmt. Inc. v. Deme*, 2019 WL 7344795, at *3 (S.D. Fla. Mar. 14, 2019) (rejecting argument that defendants are liable as makers because they "endorsed" misleading statements as "meritless").

Because Plaintiffs fail to adequately allege any allegedly material omissions, both of their primary Exchange Act claims fail, as does their derivative Section 20(a) claim.

**1. Plaintiffs Do Not Adequately Allege That Defendants' Opinion About The Special Committee's Independence Was Materially False Or Misleading**

Plaintiffs contend that the challenged statements about the Special Committee's independence were false because they failed to disclose certain material facts. ¶¶113, 118, 130. Plaintiffs are wrong.

As a threshold matter, the only affirmative statement Plaintiffs challenge is Defendants' belief that the Special Committee was independent, which is plainly an opinion that Plaintiffs never allege that was insincerely held. *See In re Focus Financial Partners*, 2025 WL 961488, at *10 (D. Del. Mar. 31, 2025) (statement that committee did not believe financial advisor had conflict of interest was opinion); *Smykla v. Molinaroli*, 85 F.4th 1228, 1234-37 (7th Cir. 2023) (holding that statements that transaction was "fair" and in the "best interests" of shareholders were nonactionable opinion and rejecting omission claim that directors who approved the transaction required to disclose their alleged "conflicts of interest"); *Mills v. Esmark, Inc.*, 544 F. Supp. 1275, 1295 (N.D. Ill. 1982) ("It is well established that representations concerning the purported independence of a corporate committee are not generally actionable under the securities laws.").

Because the only affirmative statements challenged by Plaintiffs are opinions about the Special Committee's independence, Plaintiffs instead attempt to manufacture an omission claim with factual allegations (¶¶ 72-85, 127–30) directed entirely toward "prov[ing] [Defendants'] belief [in the Special Committee's independence] wrong." *Omnicare*, 575 U.S. at 186. But the Exchange Act imposes liability only for misleading statements of "material *fact*," 7 C.F.R. §§ 240.14a-9, 240.10b-5 (emphasis added)—not for investor quibbles on matters of opinion. An "opinion statement … is not misleading simply because the issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 189. So the relevant question is not whether the Special Committee was actually independent, nor even whether KnowBe4's affirmative statements omitted facts that cut against Defendants' opinion. The question is only whether Defendants "omit[ted] material facts about [their] inquiry into or knowledge concerning" that opinion. *Id.* And Plaintiffs do not allege any such omission, so the Exchange Act forecloses their claim. *Id.*; *see also IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 856 (11th Cir. 2016) (mem.) (allegations that defendants "misled investors by having one motive, while offering up another," were insufficient because "'[w]hen the nature and scope of a transaction are clear,' it is unnecessary for a company to disclose the purpose of the transaction" (citation omitted)).

Plaintiffs' reliance on that impermissible theory alone is reason enough to dismiss, and the Court need not proceed further. Alternatively, the Court may dismiss because Plaintiffs fail to accomplish even their desired task: As outlined below, the allegedly omitted facts were either disclosed to investors or the result of their own speculation, neither of which suffices.

***Krish Venkataraman.*** Venkataraman held millions' worth of Class A common stock at the time of the merger and would himself be a member of Plaintiffs' putative class, if not for Plaintiffs' exclusion of persons "affiliated with" Defendants from the class definition. ¶ 188. Few public shareholders would have been more motivated to obtain a higher price for their Class A shares than Venkataraman. Still, Plaintiffs offer several theories for why Defendants' belief that Venkataraman was not independent was misleading. Each fails.

*First*, Plaintiffs contend that Venkataraman was not independent because he and his wife allegedly had investments in "investment vehicles managed by KKR and Elephant Partners." ¶¶ 80, 113, 118, 130. But Plaintiffs do not allege what those vehicles were or whether or how they stood to benefit from the merger. Instead, they offer speculation and guesswork: that

Venkataraman's alleged investment in an alleged KKR vehicle was "likely significant," and, "on information and belief," that his investment in an Elephant Partners vehicle was "material and significant." ¶¶ 80–81. Those barren allegations do not suffice. *See* 15 U.S.C. § 78u-4(b)(1) (when an allegation regarding an "omission is made on information and belief, the complaint [must] state with particularity all ***facts*** on which that belief is formed") (emphasis added). In place of particularized facts about ***Venkataraman's*** investments, Plaintiffs offer only vague generalizations about the "average investment" in Elephant Partners (not KKR), assuming their way to the conclusions that Venkataraman both made investments comparable to the average and invested in a "vehicle" that would benefit from the merger at shareholders' expense. ¶¶ 80–81. In essence, Plaintiffs allege that Venkataraman might (or might not) have made a significant investment in a KKR or Elephant Partners vehicle that might (or might not) have had some connection to the merger. Such allegations do not even satisfy Rule 8, much less Rule 9(b) and the PSLRA. *Turner v. Williams*, 65 F.4th 564, 587–88 (11th Cir. 2023) (allegations that are merely "consistent with" liability but "just as consistent with" lawful behavior are insufficient); *see also Twombly*, 550 U.S. at 555 n.3 (Rule 8 requires a "'showing,' rather than a blanket assertion, of entitlement to relief"). Indeed, there is no more reason to believe that Venkataraman's supposed investments created a conflict of interest than there is to infer that they aligned him even further with public shareholders; after all, Plaintiffs admit that KKR and Elephant Partners cashed out the majority of their shares for the same price that Plaintiffs received.

*Second*, Plaintiffs allege that Venkataraman's wife is a long-time employee of Morgan Stanley. ¶¶ 83, 113, 118, 130. While Plaintiffs declare her employment *ipse dixit* a "significant conflict of interest," *id.*, they do not explain—and certainly do not "show[]" under Rule 8(a), Rule 9(b), or the PSLRA—how a spouse's employment creates a *de facto* conflict, let alone one relevant to the proposed transaction. *See Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1308 (S.D. Fla. 2024) (dismissing Section 14(a) claim predicated on alleged conflict because plaintiffs "fail[ed] to advance supporting facts that would put a director's loyalty at issue, such as the form of reward").

*Third*, Plaintiffs suggest that Venkataraman was not independent because he previously served as KnowBe4's CFO and was compensated for his service. ¶ 79. But Plaintiffs do not allege that Defendants failed to disclose anything about Venkataraman's tenure with KnowBe4 or his compensation, *id.*—indeed, investors were already well aware of both facts, so they could not have been material. *See, e.g.*, *Schmitt v. China XD Plastics Co., Ltd.*, 698 F. Supp. 3d 474, 488

(E.D.N.Y. 2023) (explaining that when "shareholders (and the general market) already knew information" from separate filings, its omission is not material (citations omitted)). And although Plaintiffs selectively quote a prior SEC filing stating the Board's prior statement that Venkataraman was not independent under NASDAQ's rules, ¶ 79, Ex. E (Apr. 5, 2022 Annual Meeting Proxy Statement) at 21/61, that fact had also long been disclosed. Moreover, it is beside the point; the Board's made a determination that Venkataraman was "independent and disinterested ***for purposes of a possible transaction with Vista***." ¶ 77 (emphasis added).[5]

***Gerhard Watzinger.*** Plaintiffs similarly speculate about Watzinger's supposed conflicts, alleging with no supporting facts that Watzinger "had investments" in unspecified "KKR funds" and "had relationships with several Vista partners." ¶¶ 84, 113, 118, 130. Neither of those unsupported allegations adequately suggests that Watzinger had a material undisclosed conflict. *See Vargas*, 716 F. Supp. 3d at 1308 (dismissing Section 14(a) claims and explaining that personal relationships alone do not suffice); *In re Focus*, 2025 WL 961488, at *7 (personal relationships with an interested party, without more, "do not amount to material conflicts worthy of disclosure").

***Kevin Klausmeyer.*** Finally, Plaintiffs insist that the Special Committee's opinion that Klausmeyer was independent was materially misleading because he was a director at non-party companies, Jamf and Ivalua. ¶¶ 85, 113, 118, 130. Plaintiffs acknowledge that the relevant statements disclosed Klausmeyer's affiliation with both boards. *Id.* Their only contention is that Defendants were also required to specifically disclose those companies' alleged affiliations with Vista and KKR. *Id.* But that argument is far from compelling. Plaintiffs do not adequately allege that either directorship would have affected Klausmeyer's role in the KnowBe4 merger. *Id.*; *see Vargas*, 716 F. Supp. 3d at 1308 ("overlapping board memberships and board memberships that were at some point affiliated with Elliot/Vista" insufficient to state claim).

---

[5] For similar reasons, Plaintiffs cannot sustain their claim based on the Special Committee's compensation through RSUs. KnowBe4 had long disclosed their directors' compensation with RSUs to the market, and Plaintiffs do not allege otherwise. ¶¶ 163–66. If anything, the RSUs aligned the Special Committee even more closely with public shareholders because the RSUs likewise were paid out at $24.90 per share. Ex. A at vi, 6.

**2. Plaintiffs Do Not Adequately Allege That The Special Committee's Opinion About Morgan Stanley's Independence Was Materially False Or Misleading**

Plaintiffs next claim that Defendants' expression of their belief that Morgan Stanley was independent was materially misleading because Defendants did not disclose that Morgan Stanley had invested more than $550 million "in KKR and its affiliates." ¶¶ 131–34. But that contention runs into familiar problems. Defendants' alleged expression of the belief in Morgan Stanley's independence was an opinion. ¶ 90. And Plaintiffs do not contest that Defendants honestly held the view that Morgan Stanley was independent. ¶¶ 88–91. Nor do they assert that Defendants omitted material facts about the Special Committee's knowledge of Morgan Stanley's independence. Thus, Plaintiffs' claim concerning Morgan Stanley's independence fails for the same reasons that their claim challenging the Special Committee's independence fails: It is not an "untrue statement of material *fact*." *Carvelli*, 934 F.3d at 1322 (quotation omitted).

Moreover, the proxy was not misleading. It expressly disclosed that Morgan Stanley "may have committed" and "may commit in the future" to invest in private equity funds managed by Vista, KKR, or Elephant Partners, whether in its "own account or the accounts of [its] customers." Ex. A at 64–65. And Plaintiffs do not sufficiently allege facts that would have "significantly alter[ed]" that disclosure. *Kosowsky v. Icahn Enters.*, 748 F. Supp. 3d 1303, 1313 (S.D. Fla. 2024) (citation omitted). As Plaintiffs concede, there is nothing untoward about a global financial services firm investing funds on its clients' behalf. Plaintiffs premise their claim entirely on speculation that "[m]uch" (they do not indicate how much) of Morgan Stanley's investments in unspecified KKR affiliates—possibly none of whom have any connection to the merger—"appear[] to be held in Morgan Stanley's own account." ¶ 91. But speculation does not suffice. And even if true, it is not reasonably conceivable that Morgan Stanley's investment in ***KKR*** affiliates incentivized it not to negotiate with counterparty ***Vista*** in good faith, especially given that KKR sold a sizable portion of its shares at the same per-share price as the public shareholders.

**3. Plaintiffs Do Not Adequately Allege The Special Committee's Opinion About The Fairness Of The Merger Was Materially False Or Misleading**

Plaintiffs likewise fail to state an omission claim as to the Special Committee's opinion that the merger was fair and in the best interests of KnowBe4's stockholders. ¶¶ 114, 121, 122. Not even Plaintiffs contest that the Special Committee's view on the fairness of the merger price is an opinion. ¶¶ 92–96. Instead, they contend that the Committee's opinion was materially

misleading because its members allegedly "did not have a good faith belief in the fairness of the transaction or the adequacy of the merger price." ¶¶ 96, 121–26, 141. That theory fails too.

It is well-settled that "a statement by directors that a transaction is 'fair' and in the 'best interests' of shareholders is not actionable, even if the directors personally disbelieve it, when there is no objective evidence 'that the statement also expressly or impliedly asserted something false or misleading about its subject matter.'" *Smykla*, 85 F.4th at 1237 (quoting *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095–96 (1991)). And Plaintiffs make unmistakably plain that their theory of liability is Defendants' alleged "subjective belief or hidden motivation in [their] stated opinion"—effectively, an impermissible attempt to "bootstrap" the parallel fiduciary claim in Delaware "into a federal securities action." *Id.* at 1237–38. But Defendants' supposedly improper motives "are not enough to create liability" under the Exchange Act, especially in a case like this one, where "the proxy statement not only disclosed the terms of the merger in detail, [but] also disclosed the facts used to form directors' opinions and the scope of the inquiry they conducted." *Id.*; *IBEW Local 595*, 660 F. App'x at 856 (same rule in Eleventh Circuit); *see* Ex. A at 46–51.

Plaintiffs' omission claim based on the Special Committee's fairness opinion thus fails as a matter of law. The slide Plaintiffs reproduce in their complaint does not alter this conclusion. Even putting aside that the Committee's fairness determination is nonactionable opinion, the slide was prepared by Morgan Stanley, and it merely suggests a "Response Framework" for negotiations, not an ultimate conclusion on a fair final price. ¶ 96. The slide stated that while, at that time, $24.00 per share was "[n]ot the right zone for a transaction," a deal could still be worth pursuing if "you can see your way into the mid-to-upper $20s," *id.*, a target range that was no different from the one the proxy conveyed to investors and that the ultimate price fell within, ¶ 93.

#### 4. Plaintiffs Do Not Adequately Allege That The Proxy Omitted Material Facts About KKR's Preliminary Rollover Estimates

Plaintiffs' final contention is that the proxy and other challenged statements omitted mention that KKR expressed preliminary interest in rolling over between $150 to $200 million of its equity into the post-acquisition company before it knew the final merger price. ¶¶ 97–100, 135–39. This theory also fails. Indeed, Plaintiffs appear to concede that KKR's earlier, estimated rollover amounts were contingent on other factors that changed throughout the negotiations—namely, the deal price agreed to between the Special Committee and Vista. Any early rollover estimates by KKR prior to Vista submitting a formal offer were preliminary, at best, and not required to be disclosed. *See Sulzer v. Associated Madison Cos., Inc.*, 1985 WL 5856, at *3 (M.D.

Fla. May 10, 1985) (rejecting omission claim regarding "'preliminary discussions' of a price exceeding fifteen dollars" as "[t]here is no duty … to disclose inquiries or preliminary discussions which are not firm offers"). There was no material omission either. The proxy disclosed in detail the negotiating process that led to KKR's final rollover amount, including that KKR had considered "'rolling' ***all or a part*** of [its] equity interests in KnowBe4" and expressed "***preliminary*** interest in a potential rollover in connection with a potential acquisition" before Vista ever made a price proposal. Ex. A at 29, 38 (emphases added). The proxy also disclosed the final rollover amount and attached a copy of KKR's rollover agreement. *Id.* at 11, 89, Annex D. From these disclosures, a reasonable investor would have understood that the amount of KKR's potential rollover was fluid throughout negotiations and that KKR could potentially roll over its ***entire*** equity stake—even though the proxy made clear that it ultimately committed to only selling "about 54%" of its shares into the merger. ¶ 151; *see In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1276 (S.D. Fla. 2017) (allegedly misleading statements must be considered in context).

Because Plaintiffs do not allege an actionable statement or omission in Counts I or II, their Count III necessarily fails. *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1294 n.9 (11th Cir. 2011) (holding that primary Exchange Act violation is an element of a Section 20(a) claim). The Court thus may dispose of this case entirely on falsity and materiality grounds.

### B. Plaintiffs Do Not Adequately Allege Scienter or Negligence

Plaintiffs' claims under Sections 10(b) and 14(a) must be dismissed for failing to adequately plead scienter or negligence under the PSLRA and Rule 9(b). Their Section 10(b) claim fails because Plaintiffs offer only vague, group-based allegations that do not identify what each Defendant knew or how their conduct was fraudulent—an approach the Eleventh Circuit has repeatedly rejected. And their Section 14(a) claim fails for the same reason. Even assuming negligence applies to their Section 14(a) claim, Plaintiffs must plead with particularity how each Defendant breached a duty of care. The Complaint does not allege any specific conduct, applicable standard, or deviation from it. These deficiencies are fatal under either standard.

#### 1. Plaintiffs' Non-Existent Allegations Of Scienter Requires Dismissal

As this Court has noted, "[t]he PSLRA pleading requirement, combined with the scienter case law, is [] a stringent standard: to survive a motion to dismiss, a plaintiff must 'plead with particularity facts giving rise to a strong inference that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete

statements.'" *Pinkney v. Minecore Int'l, Inc.*, 2009 WL 10668198, at *4–5 (S.D. Fla. Sept. 30, 2009) (Altonaga, C.J.) (quoting *Mizzaro*, 544 F.3d at 1238); *Brophy*, 781 F.3d at 1308 ("[T]he PSLRA imposes a high bar . . . [to] survive a motion[] to dismiss."). Thus, the alleged facts must support an inference of fraudulent intent that is "more than merely 'reasonable' or 'permissible;'" it must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Plaintiffs cannot rely on group pleading. Instead, they "must allege facts sufficiently demonstrating ***each defendant's state of mind*** regarding his or her alleged violations." *Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1017–18 (11th Cir. 2004) (emphasis added) (noting that "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute"); *id*. at 1018 n.4.

Plaintiffs do not even attempt to meet this heightened pleading standard. They supply only conclusory allegations regarding groups of Defendants' purported intent and knowledge (*see, e.g.*, ¶¶ 168–69, 171, 177, 224, 123, 142), "instead of clearly distinguishing how each defendant acted purposefully or with severe recklessness." *Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1359 (S.D. Fla. 2015). This is not enough. *See id*. (dismissing complaint where Plaintiffs fail to "allege what each Defendant knew, how the Defendant knew that information and when each Defendant knew or should have known that information.") (collecting cases); *Durham v. Whitney Info. Network, Inc.,* 2009 WL 3783375, at *17 (M.D. Fla. Nov. 10, 2009) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (internal quotation marks and citation omitted).

The Eleventh Circuit's decision in *Brophy*, 781 F.3d 1296, is squarely on point. There, the court affirmed the district court's dismissal of Section 10(b) claims that failed to allege ***particularized allegations*** that the CFO of a company "plagued with serious fraud" acted with scienter, despite the fact that the CFO overstated cash balances and failed to manage internal control problems amidst an ongoing SEC investigation. 781 F.3d at 1304. The Eleventh Circuit affirmed that dismissal was appropriate because the investors failed to allege "particularized facts that directly show [the CFO] intended to deceive shareholders or knew about or was severely reckless with respect to deficiencies in reporting" and had failed to allege "any specific misconduct apart from confirming incorrect cash balances within filings and on conference calls" because "the

investors' theory is essentially that [the CFO] must have been aware of the misrepresentations in [the company's] filings given (1) her role as CFO in a company plagued with serious fraud and (2) her suspicious actions during [the company's] rapid decline." *Id*. at 1303. The court determined that the CFO's "proximity to those errors at most imply negligence, which is not enough to establish scienter." *Id*. at 1306 (citation omitted).

Plaintiffs here offer far less detail than the allegations rejected as conclusory in *Brophy*. Plaintiffs allege ***no specific*** facts as to the state of mind of any particular Defendant, other than alleging that "Vista had access to valuable non-public information regarding KnowBe4's business, innerworkings, and strategic options" because it "ent[ered] into a non-disclosure agreement" with KnowBe4 and thus had "knowledge that Vista itself would have (and did have) an unfair timing and informational advantage over other potential acquirors in connection with any process to sell KnowBe4." ¶ 145. But these conclusory allegations fail as a matter of law because they contain no details regarding what Vista purportedly knew, let alone how one could infer (from that knowledge) a strong inference to deceive investors. Indeed, as the Eleventh Circuit made clear in *Brophy*, Plaintiffs' broad overtures alleging negligence based on Defendants' "mere proximity" to the transaction at issue simply do not cut it. 781 F.3d at 1306.

And Plaintiffs have failed to plead with particularity facts rising to any inference—let alone a strong one—that Defendants intended to defraud investors or were severely reckless when making their statements. Plaintiffs fail to adequately allege recklessness, much less severe recklessness sufficient to establish that "a reasonable person would infer that there was at least a fifty-fifty chance that the [D]efendants knew about the alleged fraud or were severely reckless in not knowing about it . . . ." *Douglas v. Norwegian Cruise Lines*, 2021 WL 1378296, at *9 (S.D. Fla. Apr. 12, 2021) ("In short, no."). Plaintiffs' 10(b) claims thus fail as a matter of law.

Plaintiffs' allegations also do not support a strong inference of scienter based on allegations of motive and opportunity to commit fraud. That is because Defendants had every incentive to maximize—not depress—the Company's share price. Nearly every Defendant beneficially owned equity in the Company and, as a result, their interests were aligned with those of Plaintiffs and the other stockholders. Ex. A at 130. And Defendants KKR, Elephant, and Sjouwerman each sold more than half of its or his shares into the Merger. ¶¶ 151–53. Plaintiffs cannot seriously dispute that Defendants would be significantly harmed by a purported scheme that artificially depress the

stock price and sell the Company on the cheap. *Accord Henningsen v. ADT Corp.*, 161 F. Supp. 3d 1161, 1183–84 (S.D. Fla. 2015), *aff'd sub nom. IBEW Loc. 595*, 660 F. App'x at 850.[6]

Thus, Plaintiffs' theory of motive is not "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. "It is nonsensical to impute dishonest motives to . . . Defendants when each of them [would also] suffer[] significant losses in their stock holdings." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010); *see Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (no motive where "defendants were among [the] largest shareholders" and were harmed by the action taken). Instead, the only plausible inference is that Defendants believed the merger price was fair and that the sale to Vista was in the best interest of the shareholders, including Defendants themselves.

Dismissal is appropriate where, as here, "Plaintiffs have failed to state with particularity facts giving rise to a strong inference that Defendants intended to defraud them." *Pinkney*, 2009 WL 10668198, at *5.

**2. Plaintiffs Fail to Plead a Strong Inference of Negligence**

Under a scienter standard, Plaintiffs' Section 14(a) claim fails for the same reasons as the Section 10(b) claim fails. Although the Eleventh Circuit has yet to weigh in on the culpability requirement is for Section 14(a) claims, some district courts within this circuit have applied the negligence standard. *See, e.g.*, *Craig v. Target Corp.*, 2024 WL 4979234, at *15 (M.D. Fla. Dec. 4, 2024) (negligence); *Harvey M. Jasper Ret. Trust v. Ivax Corp.*, 920 F. Supp. 1260, 1266 (S.D. Fla. 1995) (same); *but see SEC v. Shanahan*, 646 F.3d 536, 547 (8th Cir. 2011) (scienter), *and Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 428 (6th Cir. 1980) (same).

---

[6] Defendants' stock sales are akin to involvement in a stock repurchase program, which "rebuts a finding of scienter, since it is illogical that [a defendant] would have been repurchasing its shares had it been aware of facts that would indicate the price would fall." *In re Tibco Software Sec. Litig.,* 2006 WL 1469654, *21 (N.D. Cal. May 25, 2006); *see also In re NVIDIA Corp. Sec. Litig.,* 2010 WL 4117561, *11 (N.D. Cal. Oct. 19, 2010) (finding that an inference of scienter is undermined by facts showing that the defendant company "actually repurchased shares during the Class Period"); *accord Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 606 (5th Cir. 1979) (defendants' motives in entering into stock repurchase program is "not actionable under Rule 10b-5" even where such conduct could constitute "a breach of fiduciary duty by corporate officers . . . under state law" because "the failure of a corporate official to disclose his motives in entering a transaction is not actionable").

Plaintiffs' Section 14(a) claim fails regardless of whether negligence or scienter applies. Plaintiffs' Section 14(a) claim fails under a negligence standard because it sounds in fraud and is, therefore, "subject to the requirements of section 78u-4(b)(2) and Rule 9(b)." *Lee v. Frost*, 2021 WL 3912651, at *4 (S.D. Fla. Sept. 1, 2021) (quoting *In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019)); *California Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004) ("The particularity requirements of the PSLRA [] govern … [S]ection 14(a) claims because they sound in fraud.").

Here, the Complaint merely alleges that Defendants generally failed "to exercise reasonable care to ensure the Proxy did not contain the material misstatements and omissions." ¶ 210. Conspicuously absent are any particularized facts about any specific defendant's conduct, what the standard of care is, or how such conduct purportedly fell short of that standard. This is fatal. *See Karp v. First Connecticut Bancorp, Inc.*, 69 F.4th 223, 229 (4th Cir. 2023) (affirming dismissal of Section 14(a) claim where, "even assuming negligence was the correct standard," plaintiff had "provided no evidence that the Board of Directors failed to exercise reasonable care, nor [ ] alleged what the applicable standard of care in this case would be").

### C. Plaintiffs Do Not Adequately Allege Loss Causation

Alternatively, or in addition, the Court should dismiss the Complaint in its entirety because Plaintiffs do not adequately allege loss causation, a necessary element of both of Plaintiffs' primary Exchange Act claims.

To state a Section 14(a) or Section 10(b) claim, a plaintiff must allege that the alleged misstatements or omissions caused the economic harm they suffered. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 388–89 (1970) (requiring causation for Section 14(a) claims); *see also MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1240–42 (11th Cir. 2023) (same for Section 10(b)). Under well-settled Eleventh Circuit law, pleading loss causation requires specific allegations that a revelation of the truth caused the loss—typically through a stock price drop following a corrective disclosure. *See, e.g.*, *FindWhat*, 658 F.3d at 1309–10. The complaint fails to meet that bedrock principle.

Plaintiffs' allegations of loss causation are entirely speculative and untethered to any concrete event or market reaction showing that the alleged misstatements caused their purported harm. Plaintiffs assert that their loss is the difference between the $24.90 merger price and KnowBe4's "true" value, based on internal valuations and KKR's rollover increase. ¶¶ 180–81,

186. But there was no market revelation of the alleged "truth" that impacted stock price; the stock price ***rose*** to the merger price after announcement and remained stable until closing. ¶ 184 (chart showing price "tethered" to $24.90). Without a corrective disclosure or other event linking the misstatements to a tangible loss, Plaintiffs' theory that additional disclosures would have affected the deal price is pure speculation. Courts routinely dismiss Section 14(a) claims in merger contexts where, as here, plaintiffs fail to connect misstatements to economic harm beyond hypothetical "fair value" arguments. *In re Ocera Therapeutics Secs. Litig.*, 806 F. App'x 603, 605 (9th Cir. 2020) (mem.) (holding that allegations that market analysts' pre-merger "price target" for a stock was too speculative to support inference of loss attributable to alleged omission); *Beck v. Dobrowski*, 559 F.3d 680, 684 (7th Cir. 2009) (rejecting the argument that "had it not been for misleading proxy solicitations," shareholders would have rejected the merger and "reaped the economic benefits of continuing to own" their shares).

Plaintiffs attempt to dodge these requirements by alleging that members of the class sold their shares at "artificially devalued" prices due to the misstatements concealing the merger's unfairness. ¶¶ 179–83. But that is exactly the theory that the Eleventh Circuit and the Supreme Court have rejected. *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (rejecting loss-causation theory based solely on "inflated" prices without a causal link to an economic harm); *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013) (affirming dismissal where no corrective disclosure tied the fraud to a price decline); *Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855, 861 (11th Cir. 2015) (mem.) (affirming dismissal for lack of loss causation where alleged disclosures did not reveal new information causing loss). Plaintiffs' speculation that the price "would have traded at higher prices" absent the misstatements, ¶ 182, is insufficient for the same reasons, as loss causation cannot rest on hypothetical scenarios. *See Kinnett v. Strayer Educ., Inc.*, 501 F. App'x 890, 894 (11th Cir. 2012) (mem.) ("[T]he Supreme Court has expressly demanded a complaint to allege something beyond the mere possibility of loss causation.'" (citation omitted)). Likewise, Plaintiffs' purported reliance on internal valuations and KKR's rollover, ¶ 180, does not substitute for pleading an ***actual market event*** linking the fraud to harm. Plaintiffs identify no later disclosure where the market supposedly learned the "truth." Because Plaintiffs fail to plead a non-speculative causal connection between the alleged misstatements or omissions and any economic loss, the Complaint should be dismissed in its entirety.

### D. Plaintiffs' Section 10(b) Claim Is Time-Barred

Plaintiffs' Section 10(b) claim must also be dismissed as time-barred. Plaintiffs' Section 10(b) claim is subject to a two-year statute of limitations. 28 U.S.C. § 1658(b)(1); *see also Happy Tax Franchising LLC v. Hill*, 2023 WL 2664261, at *14 (S.D. Fla. Jan. 25, 2023). Here, Plaintiffs admit that, at the time of the October 12, 2022 announcement, they and the other "Public Stockholders" were aware of "serious red flags" in connection with the merger. ¶ 67. Thus, Plaintiffs were on inquiry notice of any alleged misstatements and omissions at that time, which started the clock on their Section 10(b) claim. *See 100079 Canada, Inc. v. Stiefel Lab'ys, Inc.*, 596 F. App'x 744, 748 (11th Cir. 2014) (mem.). Plaintiffs, however, did not file their Complaint until June 2025, well past the two-year statute of limitations. This alone warrants the dismissal of Plaintiffs' Section 10(b) claim (Count II) with prejudice. *See Muhammad v. Citimortgage, Inc.*, 598 F. App'x 636, 639 (11th Cir. 2015) (mem.).

## III. PLAINTIFFS' SECTION 20(A) CLAIM FAILS

Section 20(a) of the Exchange Act imposes liability on controlling persons of companies that violate the securities laws. *See* 15 U.S.C. § 78t(a). "To state a Section 20(a) claim, Plaintiffs must allege: (1) the corporate entity committed a primary violation of the securities laws; (2) the Individual Defendants had the power to control the general business affairs of the corporate entity; and (3) the Individual Defendants had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." *City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*, 746 F. Supp. 3d 1395, 1405–06 (S.D. Fla. 2024) (Altonaga, C.J.) (quoting *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d at 1274 (brackets omitted). Here, Plaintiffs' Section 20(a) claim fails because they fail to plead a primary violation and fail to adequately plead control as a matter of law.

### A. Plaintiffs Fail To Plead A Primary Violation Of The Securities Laws

Because Plaintiffs fail to sufficiently allege Section 10(b) and Section 14(a) violations, and because Plaintiffs' Section 10(b) claim is time-barred, Count III also fails to state a claim. It is well-established that where, as here, Plaintiffs have failed to plead a primary violation under Section 10(b) or 14(a) of the Exchange Act, their Section 20(a) control persons claim must also be dismissed. *Henningsen*, 161 F. Supp. 3d at 1209, *aff'd sub nom. IBEW Loc. 595*, 660 F. App'x 850 (11th Cir. 2016) (mem.) (citing *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001)).

### B. Plaintiffs Fail To Plead Control

Plaintiffs' Section 20(a) claim fails for the additional and independent reason that Plaintiffs fail to plead facts establishing control.[7] *See Curry v. TD Ameritrade, Inc.*, 662 F. App'x 769, 772 (11th Cir. 2016) (mem.) (affirming dismissal of 20(a) claim where primary violation was established but complaint was "deficient with respect to the second and third elements of the control test").

To state a claim under Section 20(a), a plaintiff must allege facts that establish both "that the defendant 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws' ***and*** that the [d]efendant 'had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.'" *In re BitConnect Sec. Litig.*, 2019 WL 9104318, at *11 (S.D. Fla. Aug. 23, 2019) (emphasis in original) (quoting *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)). Allegations that a defendant controlled or influenced the transaction giving rise to the alleged misstatements or omissions do not suffice; a plaintiff must also plead facts explaining "how each Defendant had the power to control the business affairs of the controlled person." *Galapagos, LLC v. Vision Bank*, 2010 WL 11468562, at *15 (N.D. Ala. July 20, 2010) (finding plaintiffs failed to plead Section 20(a) violation notwithstanding allegations that defendants "were involved in interlocking relationships with one another" and "that they all played roles in the development project") (internal quotation marks omitted); *see also Brown v. Mendel*, 864 F. Supp. 1138, 1146 (M.D. Ala. 1994) (notwithstanding fact that defendant "may have had some power of indirect control or influence over the contents of the Prospectus," plaintiffs failed to establish a genuine issue of material fact about defendant's "liability as a 'controlling person' because he lacked the requisite control over the general affairs of [the controlled party] when it issued the Prospectus"), *aff'd sub nom. Enstar*, 84 F.3d 393 (11th Cir. 1996).

"The term control (including the terms controlling, controlled by and under common

---

[7] Plaintiffs' Section 20(a) claim against KKR & Co. fails for another reason—it is not alleged to be an owner of KnowBe4 common stock. *See Peltz v. Polyphase Corp.*, 36 F. App'x 316, 321 (9th Cir. 2002) ("Because [fund defendant] has never had an ownership interest in [company], it cannot be liable as a control person."). Rather, Plaintiffs allege that KKR Investor "was an affiliate of Defendant KKR & Co. and the direct owner of shares" (¶ 38) and collapse these distinct entities into a single defined "KKR" (¶ 39) to avoid case law making clear that corporate separateness must be respected, absent allegations, not made here, that warrant corporate-veil piercing. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

control with) means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Theoharous*, 256 F.3d at 1227 (quoting 17 C.F.R. § 230.405), *abrogated on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010); *see also* 17 C.F.R. § 240.12b-2 (providing same definition of "control" under the Securities Exchange Act). Control must be evaluated "at the time of the alleged violation; activities and events that occur later cannot support a claim of liability." *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 723 n.10 (11th Cir. 2008) (quoting *Schlifke v. Seafirst Corp.,* 866 F.2d 935, 949 (7th Cir. 1989)). "[A] complaint that merely restates the legal standard for control person liability, without providing facts in support of the allegation, does not adequately plead control person liability." *Tippens v. Round Island Plantation L.L.C.*, 2009 WL 2365347, at *10 (S.D. Fla. July 31, 2009).

Plaintiffs bring Section 20(a) claims against KnowBe4, Elephant Partners, KKR, Vista, and each of the Director Defendants (together, the "20(a) Defendants"). But they fail to plead facts sufficient to establish control as to any of these defendants individually or as a group.

**1. Plaintiffs Fail To Plead Control By Any Defendant Individually**

Plaintiffs fail to plead any facts that would establish that the 20(a) Defendants "could influence generally the corporate policies of [KnowBe4]" on their own. *Mendel*, 864 F. Supp. at 1145. Plaintiffs first allege that "[t]he Director Defendants, KKR, Elephant Partners, and Vista each had the ability to control, and did control, KnowBe4 at all relevant times through their majority equity stake and voting power and by appointing a majority of its directors." ¶ 229. But as the Complaint acknowledges, not one of those Defendants held a majority voting power in KnowBe4 pre-Merger. *See* ¶ 40 (alleging KKR had 26.4% total voting power pre-Merger); ¶ 45 (alleging Elephant Partners had 37.5% total voting power pre-Merger); ¶¶ 47, 144 (alleging Vista had 13.5% total voting power pre-Merger); ¶ 28 (alleging Sjouwerman had 4.0% total voting power pre-Merger). Even a substantial minority interest does not establish control under Section 20(a). *See Theoharous*, 256 F.3d at 1227–28 (control not established where "plaintiffs relied primarily on the facts that Metromedia owned 39% of Roadmaster's stock and was a party to an agreement that guaranteed the election of Metromedia designees to four of Roadmaster's nine directorships"). Nor does a right or ability to appoint directors establish control. *Tippens*, 2009 WL 2365347, at *10 (status as director or officer does not establish control person liability).

Plaintiffs next allege that "the Director Defendants, KKR, Elephant Partners and Vista

were entitled to exercise control over significant transactions" (¶ 230) without explaining on what basis or defining "significant transactions." Similarly, the allegations that the 20(a) Defendants "had direct and supervisory involvement in the day-to-day operations of KnowBe4" (¶ 231) and "had the ability to exercise control over and did control a person(s) who has violated Sections 10(b) and 14(a)" (¶ 234) "merely restate[] the legal standard for control person liability." *Tippens*, 2009 WL 2365347, at *10.

Plaintiffs' theory of control liability as to Vista is particularly implausible because it requires one to believe that Vista—a minority shareholder and KnowBe4's ***counterparty***—reached across the proverbial negotiating table to control not only the take-private transaction, but also "the general affairs of" KnowBe4. While the Complaint states in conclusory fashion that "Vista controlled the sale process by appointing its own conflicted banker, Morgan Stanley" and that "Vista refused to allow the Special Committee to solicit offers for anything other than a minority investment in KnowBe4" (¶ 230)—assertions that ostensibly go to Vista's alleged control over KnowBe4's "general affairs" and the "policy" leading to the alleged misstatements—the Complaint alleges no facts to support these assertions. Control cannot be inferred simply through the fact that the parties ultimately struck a deal. *Cf. Garbutt v. S. Clays, Inc.*, 894 F. Supp. 456, 462 (M.D. Ga. 1995) (declining to view alleged inadequacy of consideration as evidence of fraud, because "the law does not prohibit persons from getting a good deal").

With respect to the Director Defendants, Plaintiffs allege in conclusory fashion that "as directors of the company and/or significant shareholders, each Defendant named in this count had direct and supervisory involvement in the day-to-day operations of KnowBe4," ¶ 231. However, "[a] defendant is not subject to control person liability simply because he is an officer or director of a corporation. Rather, the plaintiff must show that the defendant 'had power, directly or indirectly, to influence the policy and decision making process of the one who violated the act, such as through ownership of voting stock, by contract or through managerial power.'" *Tippens*, 2009 WL 2365347, at *10 (quoting *In re Sahlen & Assocs., Inc. Secs. Litig.*, 773 F. Supp. 342, 362–63 (S.D. Fla. 1991)); *see also Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 194–95 (5th Cir. 1979), *on reh'g*, 611 F.2d 105 (5th Cir. 1980) (chairman of board not liable under Section 20(a) notwithstanding status as director, because he lacked "effective day-to-day control" and "knowledge"). Plaintiffs thus fail to allege how any one of the 20(a) Defendants had "the power to control the general affairs of [KnowBe4]." *Enstar*, 84 F.3d at 396 (quotations omitted).

### 2. Plaintiffs Fail To Plead The Existence Of A Control Group

Further, Plaintiffs fail to plead the existence of a group that had the general power to control KnowBe4's corporate affairs. "[E]ach defendant's control must be evaluated separately unless there is some basis on which to consider their collective action," because otherwise "any shareholder, no matter how small, could be grouped with others to form a majority control group, even absent any allegations or facts supporting that shareholder's actual control." *LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010). Thus, Plaintiffs' allegations that, together, the 20(a) Defendants held more than 50% of the pre-Merger voting power in KnowBe4, appointed four of its seven board directors (¶ 229), and entered into support agreements, do not establish control without allegations that they acted collectively to exercise control over the Company's affairs. *See In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 663–73 (N.D. Tex. 2013) (allegations that defendants held combined 82% interest in company and had right to appoint four of nine directors to board did not show control group because there was no indication that defendants "were somehow involved in [company's] operations (day-to-day or long-term), decision-making, or planning"); *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *35 (C.D. Cal. Aug. 8, 2013) ("The mere fact that such a voting agreement exists is insufficient to demonstrate control."); *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) ("Without additional allegations that the [three] venture capital firms acted together to control [the company], these allegations of control by virtue of collective ownership are conclusory and unconvincing."); *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1145 (N.D. Cal. 1989) ("Although plaintiffs group these defendants together … plaintiffs have alleged nothing which would at all suggest that these defendants acted 'collectively' with each other.").

### 3. Plaintiffs' 20(a) Claim Continues to Rely On Improper Shotgun Pleading[8]

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" where "doing so would promote clarity," Fed. R. Civ. P. 10(b). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings'" because they fail to "separat[e] into a different count each cause of action or claim for relief" and "assert[] multiple claims against multiple

[8] The Court already ordered Plaintiffs to cure this deficiency once. *See* [ECF No. 5].

defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320, 1322–23 (11th Cir. 2015). "The Eleventh Circuit has repeatedly instructed lower courts to dismiss shotgun pleadings." *Gnanaraj v. Lilium N.V.*, 2023 WL 9064669, at *2 (S.D. Fla. Dec. 18, 2023) (collecting cases), *report and recommendation adopted*, 2024 WL 36165 (S.D. Fla. Jan. 3, 2024).

Here, Plaintiffs assert their Section 20(a) claim against "KnowBe4, Elephant Partners, KKR, Vista and each of the Director Defendants" for statements in the "October 12, 2022 Merger Press Release, October 13, 2022 Form 8-K, Proxy and/or Schedule 13-E" allegedly made "in violation of Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5 and 14a-9" without distinguishing between defendants, solicitation materials, alleged misstatements or omissions, or predicate violations. ¶ 228; ¶ 334 (alleging all 20(a) Defendants controlled "a person(s) who has violated Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5 and 14a-9" without specifying whom). The court in *Gnanaraj* dismissed Section 20(a) claims because the plaintiffs had "allege[d] secondary liability under Section 20(a)" without "specify[ing] the precise primary violation." 2023 WL 9064669, at *7. Because the complaint incorporated by reference multiple counts which collectively alleged three separate causes of action, defendants had "no way to know which Rule and which specific conduct is alleged to support Section 20(a) liability." *Id.* So too here. Plaintiffs indiscriminately claim 20(a) liability based on multiple predicate violations by "a person(s)" without specifying whom or the precise primary violation over which each 20(a) Defendant had control. The Complaint thus fails to give Defendants "adequate notice" of "the grounds upon which [Plaintiffs' 20(a)] claim rests," *id.* at *2, and does not remedy the problems identified in the Court's June 9, 2025 Order [ECF No. 5].

**CONCLUSION AND REQUEST FOR ORAL ARGUMENT**

The Court should dismiss the Complaint [ECF No. 70] with prejudice. Given the complexity of the arguments advanced by both Plaintiffs and Defendants and the significance of the issues presented, Defendants respectfully request oral argument on its Motion to Dismiss. Pursuant to Local Rule 7.1(b), Defendants estimate a total oral argument time of approximately 90 minutes.

October 7, 2025

Respectfully submitted,

*/s/ Samuel G. Williamson*
Samuel G. Williamson
Florida Bar No. 1033817
David A. Nabors
Florida Bar No. 1024722
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
2601 S Bayshore Drive
Suite 1550
Miami, Florida 33133-5417
(305) 402-4880
samwilliamson@quinnemanuel.com
davidnabors@quinnemanuel.com

Andrew J. Rossman (*pro hac vice)*
Courtney C. Whang (*pro hac vice)*
Marielle Paloma Greenblatt (*pro hac vice)*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
295 Fifth Avenue
New York, NY 10016
(212) 446-4800
andrewrossman@quinnemanuel.com
courtneywhang@quinnemanuel.com
mariellegreenblatt@quinnemanuel.com

*Counsel for Defendants KnowBe4, Inc., Sjoerd Sjouwerman, and Vista Equity Partners Management, LLC*

*/s/ Martin B. Goldberg*
Martin B. Goldberg
Florida Bar No. 0827029
Benjamin R. Shiekman
Florida Bar No. 113114
mgoldberg@lashgoldberg.com
bshiekman@lashgoldberg.com
**LASHGOLDBERG**
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
(305) 347-4040

Colleen Smith *(pro hac vice)*
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, California 92130
(858) 523-5400
colleen.smith@lw.com

Stephen Nasko *(pro hac vice)*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 654-7130
stephen.nasko@lw.com

*Counsel for Defendants Jeremiah Daly, Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P., and Elephant Partners II-B, L.P.*

*/s/ Michael Holecek*
Michael Holecek
Florida Bar No. 1035950
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7018
MHolecek@gibsondunn.com

*/s/ Adam M. Schachter*
Adam M. Schachter (Florida Bar No. 647101)
Joan Silverstein (Florida Bar No. 997330)
**GELBER SCHACHTER & GREENBERG, P.A.**
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
(305) 728-0950
aschachter@gsgpa.com

Brian M. Lutz (*pro hac vice*)
Colin Davis (*pro hac vice)*
Jeff Lombard (*pro hac vice)*
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center
Suite 2600
San Francisco, California 94111
(415) 393-8200

*Counsel for Defendants KKR & Co. Inc., KKR Knowledge Investors L.P., Stephen Shanley, and Kara Wilson*

jsilverstein@gsgpa.com

Koji Fukumura (*pro hac vice)*
Peter Adams (*pro hac vice)*
Heather Speers (*pro hac vice)*
**COOLEY LLP**
10265 Science Center Drive
San Diego, California 92121
(858) 550-6000
kfukumura@cooley.com
padams@cooley.com
hspeers@cooley.com

*Counsel for Defendants Kevin Klausmeyer, Shrikrishna Venkataraman, and Gerhard Watzinger*