**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22574-ALTONAGA/Reid**

In re:

**KNOWBE4, INC.**                             <u>ORAL ARGUMENT REQUESTED</u>
**SECURITIES LITIGATION**

_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR COMBINED MOTION TO DISMISS**
<u>**PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.      **PLAINTIFFS FAIL TO STATE A SECTION 14(A) OR 10(B) CLAIM** ....................2

      A.      **Plaintiffs Do Not Sufficiently Allege Any Materially False Or Misleading Statement Or Omission** ...................................................2

      B.      **Plaintiffs Do Not Adequately Allege Scienter** ....................................8

      C.      **Plaintiffs Do Not Adequately Allege Negligence** .................................9

      D.      **Plaintiffs Do Not Adequately Allege Causation** .................................10

      E.      **Plaintiffs' Section 10(b) Claim Should Be Dismissed As Time-Barred**..........12

II.      **PLAINTIFFS FAIL TO STATE A 20(A) CLAIM** .....................................12

      A.      **The Complaint Is An Improper Shotgun Pleading** .............................13

      B.      **Plaintiffs Fail To Plead Control By Any Defendant Individually** ..................13

      C.      **Plaintiffs Fail To Plead The Existence Of A Control Group** ..........................15

CONCLUSION..........................................................................................................................15

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

<u>Cases</u>

*A&M Mgmt. Inc. v. Deme,*
2019 WL 7344795 (S.D. Fla. Mar. 14, 2019) ............................................................. 8

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.,*
663 F. Supp. 3d 334 (S.D.N.Y. 2023), *reconsideration denied,* 2023 WL
4249356 (S.D.N.Y. June 29, 2023) ...................................................................... 10, 11

*In re Am. Apparel, Inc. S'holder Litig.,*
2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ............................................................. 14

*In re ArthroCare Corp. Sec. Litig.,*
726 F. Supp. 2d 696 (W.D. Tex. 2010) .................................................................... 15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................. 3

*Baum v. Harman International Industries, Inc.,*
408 F.Supp.3d 70 (D. Conn. 2019) ...................................................................... 4, 11

*Beck v. Dobrowski,*
559 F.3d 680 (7th Cir. 2009) ................................................................................... 11

*Bouchard-A v. N. Genesis Acquisition Corp.,*
2025 WL 1808469 (S.D.N.Y. July 1, 2025) ............................................................... 9

*Brown v. Enstar Grp., Inc.,*
84 F.3d 393 (11th Cir. 1996) ................................................................................... 15

*Carvelli v. Ocwen Fin. Corp.,*
934 F.3d 1307 (11th Cir. 2019) ................................................................................. 6

*City of Dearborn Police & Fire Revised Retirement Sys. v. Brookfield Asset Mgmt. Inc.,*
314 A.3d 1108 (Del. 2024) ......................................................................................... 5

*City of Sarasota Firefighters' Pension Fund v. Inovalon Holdings, Inc.,*
319 A.3d 271 (Del. 2024) ........................................................................................... 5

*In re Crimson Expl. Inc. S'holder Litig.,*
2014 WL 5449419 (Del. Ch. Oct. 24, 2014) .............................................................. 8

*Curry v. TD Ameritrade, Inc.,*
2015 WL 11251449 (N.D. Ga. June 30, 2015) .................................................... 13, 14

ii

*Delgado v. Rutledge*,
    2024 WL 3570258 (S.D. Fla. Mar. 29, 2024) ........................................................... 12

*In re Dell Techs. Inc. Class V Stockholders Litig.*,
    2020 WL 3096748 (Del. Ch. June 11, 2020) ............................................................... 3

*Doe v. Norwegian Cruise Lines, LTD*,
    744 F. Supp. 3d 1300 (S.D. Fla. 2024) .................................................................... 13

*Druskin v. Answerthink, Inc.*,
    299 F. Supp. 2d 1307 (S.D. Fla. 2004) .................................................................... 11

*In re E-House Sec. Litig.*,
    2021 WL 4461777 (S.D.N.Y. Sept. 29, 2021) ........................................................... 11

*Flannery v. Genomic Health, Inc.*,
    2021 WL 3615540 (Del. Ch. Aug. 16, 2021) .............................................................. 4

*Galapagos, LLC v. Vision Bank*,
    2010 WL 11468562 (N.D. Ala. July 20, 2010) ......................................................... 15

*In re Galectin Therapeutics, Inc. Secs. Litig.*,
    843 F.3d 1257 (11th Cir. 2016) ................................................................................. 8

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    68 F. Supp. 3d 530 (S.D.N.Y. 2014), *aff'd,* 639 F. App'x 664 (2d Cir. 2016) ....................... 12

*In re Global Crossing Secs. Litig.*,
    2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ............................................................ 14

*Gnanaraj v. Lilum N.V.*,
    2023 WL 9064669 (S.D. Fla. Dec. 18, 2023) ........................................................... 13

*In re Gupta Corp. Sec. Litig.*,
    900 F. Supp. 1217 (N.D. Cal. 1994) ....................................................................... 15

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ................................................................................. 15

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ............................................................................................ 7, 8

*Kas v. Fin. Gen. Bankshares, Inc.*,
    796 F.2d 508 (D.C. Cir. 1986) .................................................................................. 3

*Kinnett v. Strayer Educ., Inc.*,
    501 F. App'x 890 (11th Cir. 2012) .......................................................................... 12

*In re Kosmos Energy Ltd. Sec. Litig.*,
    955 F. Supp. 2d 658 (N.D. Tex. 2013) ........................................................................ 14

*Kuebler v. Vectren Corp.*,
    13 F.4th 631 (7th Cir. 2021) ........................................................................................ 11

*LC Capital Partners, LP v. Frontier Ins. Group, Inc.*,
    318 F.3d 148 (2d Cir. 2003) ........................................................................................ 12

*LLDVF, L.P. v. Dinicola*,
    2010 WL 3210613 (D.N.J. Aug. 12, 2010) .................................................................. 14

*In re Loral & Space Communications Inc.*,
    2008 WL 4293781 (Del. Ch. Sept. 19, 2008) ................................................................ 5

*In re Lottery.com, Inc. Sec. Litig.*,
    765 F. Supp. 3d 303 (S.D.N.Y. 2025) ......................................................................... 10

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ..................................................................................................... 12

*In re Micromet, Inc. Shareholders Litig.*,
    2012 WL 681785 (Del. Ch. Feb. 27, 2012) ................................................................... 5

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
    122 F.4th 28 (2d Cir. 2024) .......................................................................................... 2

*In re NVIDIA Corp. Sec. Litig.*,
    2011 WL 4831192 (N.D. Cal. Oct. 12, 2011), *aff'd*, 768 F.3d 1046 (9th Cir.
    2014) ............................................................................................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*,
    575 U.S. 175 (2015) .................................................................................................. 3, 5

*In re Philip Morris Int'l Inc. Secs. Litig.*,
    89 F.4th 408 (2d Cir. 2023) .......................................................................................... 3

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of
    Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ........................................................................... 9

*In re Resolute Energy Corp. Sec. Litig.*,
    2022 WL 260059 (3d Cir. Jan. 27, 2022) ................................................................... 11

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) .......................................................................................... 9

*Siegmund v. Xuelian Bian*,
   2018 WL 1611847 (S.D. Fla. Apr. 2, 2018) .................................................... 3

*Silsby v. Icahn*,
   17 F. Supp. 3d 348 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F.
   App'x 448 (2d Cir. 2015) .................................................................................. 14

*Smykla v. Molinari*,
   85 F.4th 1228 (7th Cir. 2023) ........................................................................... 6

*Sulzer v. Associated Madison Cos., Inc.*,
   1985 WL 5856 (M.D. Fla. May 10, 1985) ......................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .......................................................................................... 9

*In re Unicapital Corp. Sec. Litig.*,
   149 F. Supp. 2d 1353 (S.D. Fla. 2001) ............................................................. 13

*Vargas v. Citrix Sys., Inc.*,
   716 F. Supp. 3d 1295 (S.D. Fla. 2024) .......................................................... 4, 11

*In re Villa*,
   261 F.3d 1148 (11th Cir. 2001) ........................................................................ 14

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ....................................................................................... 3, 6

*Wilson v. Great Am. Indus., Inc.*,
   855 F.2d 987 (2d Cir. 1988) .............................................................................. 9

*In re Worlds of Wonder Sec. Litig.*,
   721 F. Supp. 1140 (N.D. Cal. 1989) ................................................................. 15

*Zappia v. Myovant Scis. Ltd.*,
   708 F. Supp. 3d 486 (S.D.N.Y. 2023), *aff'd,* 2025 WL 338351 (2d Cir. Jan.
   30, 2025) ........................................................................................................ 9, 10

## Rules / Statutes

5 U.S.C. § 552(b) ..................................................................................................... 6

15 U.S.C. § 78 *et seq*. ............................................................................................... 3

15 U.S.C. § 78j ................................................................................................ 1, 2, 12, 13

15 U.S.C. § 78n(a) ........................................................................................... 2, 9, 10, 13

15 U.S.C. § 78u-4 ..............................................................................................1, 4, 5

17 C.F.R. § 200.80(c) .................................................................................................6

17 C.F.R. § 240.10b-5(b) ........................................................................................3, 7

Fed. R. Civ. P. 8 ...............................................................................................13, 15

Fed. R. Civ. P. 9 ...........................................................................................1, 3, 4

Fed. R. Civ. P. 9(b) ..................................................................................................4

Fed. R. Civ. P. 12(b)(6) ..........................................................................................12

## INTRODUCTION

Plaintiffs' opposition (ECF No. 96) does not cure the complaint's many deficiencies.  Most notably, Plaintiffs do not justify their core contention that Defendants made any materially misleading statement or omission about the merger.  Plaintiffs' argument hinges on recasting statements about "independence" as objectively verifiable and speculating that the Special Committee's and Morgan Stanley's purported associations with Vista, KKR, or Elephant Partners—no matter how conjectural or attenuated—made those statements untrue.  But statements about independence are not objectively verifiable, and Plaintiffs' speculation about illusory conflicts of interest cannot overcome either the general bar on liability for opinion statements or the heightened pleading standards imposed by Rule 9 and the PSLRA.  And Plaintiffs' claim that the Special Committee did not actually believe that the merger price was fair falls short for similar reasons.  The price was fair by any objective measure:  It represented a 44% premium over the publicly traded stock price, the Special Committee negotiated Vista's opening offer from $24.00 to $24.90, and the Committee received advice from Morgan Stanley that $24.90 was at the high end of the valuation range under 11 out of 12 methodologies.  Plaintiffs' only argument that the Committee subjectively disbelieved this objectively straightforward conclusion turns entirely on a single slide in a pre-negotiation deck that expressly ***endorsed*** the idea that a price in the mid-$20s was worth considering.  Finally, Plaintiffs' suggestion that Defendants were required to disclose the specific amount of KKR's concededly preliminary equity rollover estimate ignores that the estimated range of that rollover was disclosed.  Because falsity is the cornerstone of Plaintiffs' case and they fail to allege it, the complaint should be dismissed with prejudice.

Nor does Plaintiffs' scienter theory withstand scrutiny.  They posit that an "unfair" price necessarily benefitted rollover investors by giving them a direct incentive to depress the merger price and that everyone else was motivated to assist in that effort.  But Plaintiffs concede that KKR, Elephant Partners, and Sjouwerman sold a majority of their shares in the merger and thus would have been directly harmed by a discounted price. While rolling some equity may hedge exposure, Plaintiffs do not plausibly allege these parties had more to gain from an unfair price than they stood to lose.  The theory is even less coherent as to an individual like Krish Venkataraman, who held substantial KnowBe4 common stock and was aligned with other investors.

And while these are the complaint's most conspicuous defects, they are not its only ones. Plaintiffs' Section 10(b) claim is also untimely, their loss-causation theory is meritless, and their

control-person allegations are insufficient.  For any of these reasons or all of them, this Court should dismiss.[1]

## ARGUMENT

## I.  PLAINTIFFS FAIL TO STATE A SECTION 14(a) OR 10(b) CLAIM

### A.  Plaintiffs Do Not Sufficiently Allege Any Materially False Or Misleading Statement Or Omission

In lieu of justifying their omission claims under the governing pleading standards, Plaintiffs devote most of their opposition to parroting the complaint's allegations, but in doing so repeat its mistakes.  None of the four categories of omission claims that Plaintiffs allege is viable because Plaintiffs do not allege the falsity or materiality of those omissions with particularity or otherwise.[2] And with that their entire case collapses.  This Court should dismiss the complaint with prejudice.

### 1.  Plaintiffs Fail To Allege That Defendants Omitted Material Facts About The Special Committee's Independence

Plaintiffs claim that the Special Committee was not independent, so Defendants' statements that it was independent were misleading.  But these statements were plainly subjective and expressed an inherently evaluative judgment—in other words, an opinion—that the Special Committee members were not beholden to an interested party or otherwise incapable of independent judgment with respect to the merger.  Plaintiffs do not dispute that their claim fails if these statements are deemed opinions.  Opp. 7–11.  Their opposition thus attempts to resist the straightforward characterization of those statements as opinion.  *Id.* at 7–9.  That is wrong. Plaintiffs primarily suggest that the independence statements were actionable because Defendants did not incant qualifying phrases like, "We believe" or "We think" in expressing their views to investors.  *Id.* at 7–8.  "But not all statements of opinion include such qualifying language," because "[c]ertain statements address issues so plainly subjective … that the statement is one of opinion not just by virtue of the words used but also because of the nature of the information conveyed."  *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122

---

[1] All emphasis is added and internal citations omitted unless otherwise noted.

[2] Plaintiffs contend that Defendants waived their challenge to individual statements on the ground that the Motion is "silent" on those statements.  Opp. 2, 7 n.2.  Not so.  Defendants challenged each of the four categories of allegedly misleading statements—categories Plaintiffs themselves created, ¶7—because the statements within each are materially identical.

F.4th 28, 41 (2d Cir. 2024); *accord In re Philip Morris Int'l Inc. Secs. Litig.*, 89 F.4th 408, 418–20 (2d Cir. 2023) (holding that statements representing compliance with clinical-trial standards were inherently subjective and thus opinions).  That reasoning applies here.  Assessing a director's independence is an inherently context-specific and evaluative inquiry—precisely the kind that *Omnicare* warned courts not to "second-guess."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*, 575 U.S. 175, 186 (2015).

None of the cases Plaintiffs cite suggests otherwise.  Plaintiffs rely heavily on a single district court order that did not even cite or consider *Omnicare*—let alone assess its application to statements like those at issue here—and that in any event was not even a misrepresentation case under Rule 10b-5.  *See Siegmund v. Xuelian Bian*, 2018 WL 1611847, at *10 (S.D. Fla. Apr. 2, 2018).  Plaintiffs' remaining cases similarly did not cite *Omnicare*.  *See, e.g.*, *Kas v. Fin. Gen. Bankshares, Inc.*, 796 F.2d 508, 513 (D.C. Cir. 1986) (not addressing the fact-opinion distinction in case that predated both *Omnicare* and *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991)); *In re Dell Techs. Inc. Class V Stockholders Litig.*, 2020 WL 3096748, at *35–38 (Del. Ch. June 11, 2020) (addressing applicability of state-law safe-harbor provision, not *Omnicare* or the Exchange Act).  Plaintiffs cannot resist *Omnicare*'s preclusive effect by ignoring it.  And because not even Plaintiffs contend that their independence-centered claims fit the narrow exceptions permitting Exchange Act challenges to statements of opinion (Opp. 7–11), dismissal is warranted for that reason alone.

In any event, even setting *Omnicare* aside, Plaintiffs fail to allege that any member of the Special Committee lacked independence.  Although Plaintiffs attempt to speculate their way to "a sheer possibility" of a conflict, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that is not enough:  As Plaintiffs rightly concede (Opp. 7), their allegations of material conflicts must satisfy Rule 9 and the PSLRA's exacting requirements.  They fall short of that high bar.

***Krish Venkataraman.***   Plaintiffs abandon their allegation that Venkataraman was conflicted because of his compensation as CFO of KnowBe4.  ¶79; Opp. 10.  They also do not dispute—and therefore concede—that Venkataraman was a significant holder of Class A common stock (just like Plaintiffs) and that he would have been motivated to maximize the value of that investment (just like Plaintiffs).  Opp. 10.  With those avenues foreclosed, Plaintiffs seek to impeach Venkataraman's independence by suggesting he invested in unidentified funds affiliated with … KKR and Elephant Partners" and referencing his wife's employment at Morgan Stanley,

¶¶80–81, 83, speculating that Venkataraman's investments were "likely substantial," that KKR and Elephant Partners stood to benefit from a low merger price, and that, in turn, Venkataraman might have benefitted (Opp. 10). But that chain of speculative inferences need not be accepted as true under Rule 9 and the PSLRA. *See Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1303 (S.D. Fla. 2024) (under Rule 9(b), a plaintiff must plead with particularity "what the defendant received as a result of the fraud"). While Plaintiffs cite *Baum v. Harman International Industries, Inc.*, 408 F. Supp. 3d 70, 91 (D. Conn. 2019) to suggest in passing that companies must disclose even "potential conflicts of interest," *Baum* did not endorse the sort of speculative pleading that Plaintiffs attempt. In *Baum*, the plaintiff concretely alleged an undisclosed concurrent relationship between the seller's financial advisor and acquiror that raised a "potential conflict[]," not the undescribed investments and flimsy relational ties that Plaintiffs rely on here. *Id.*

**Gerhard Watzinger.** Similar problems plague Plaintiffs' allegations about Watzinger. Plaintiffs allege only that Watzinger had investments in unidentified "KKR-affiliated funds" and unidentified "personal and professional relationships" of unexplained significance "with individuals affiliated with Vista." Opp. 10. But Plaintiffs allege no "supporting facts that would put [his] loyalty at issue" and nothing—certainly nothing with particularity—about "what [he] received as a result" of these supposed conflicts. *Vargas*, 716 F. Supp. 3d at 1308, 1303.

**Kevin Klausmeyer.** There are likewise no well-pleaded allegations that Klausmeyer was beholden to anyone involved in the merger. Plaintiffs argue that Klausmeyer was necessarily conflicted because had served as a director of Jamf, a "Vista-controlled entity" and at Ivalua, a company where "KKR invested." ¶85. Plaintiffs claim that Klausmeyer's positions at these companies "were due to his connections with Vista and KKR." *Id.* But "a director's independence is not compromised simply by virtue of being nominated to a board by an interested stockholder." *Flannery v. Genomic Health, Inc.*, 2021 WL 3615540, at *15 (Del. Ch. Aug. 16, 2021) ("That the Baker Brothers Entities may have participated in Fuchs' placement on the boards of various entities, including Genomic … does not support a reasonable inference that Fuchs was beholden to the Baker Brothers Entities."). Plaintiffs likewise do not explain how Klausmeyer's compensation at Jamf was material. Far more significant was Klausmeyer's undisputed multimillion-dollar equity stake in KnowBe4—a stake tied to the price of the same stock held by Plaintiffs. ECF No. 80-1, Ex. A (December 22, 2022 Proxy Statement) at 79. And as Plaintiffs' own allegations imply, Klausmeyer is a former senior executive who received compensation from

4

other boards and evidently did not need other "regular employment." ¶85. Plaintiffs' reliance on *In re Loral & Space Communications Inc.*, 2008 WL 4293781 (Del. Ch. Sept. 19, 2008) is misplaced. In *Loral*, unlike here, there was reason to question the independence of the Special Committee's chair. He was a close friend of the controlling stockholder, served on three boards at the instance of that controller, and was touted by the controller as one of its investment advisors. *Loral*, 2008 WL 4293781, at *20. He also solicited investments in both his own company and another potential transaction from the controller while negotiating the challenged transaction with the controller. *Id.* Plaintiffs allege no remotely comparable facts about Klausmeyer.

### 2. Plaintiffs Fail To Allege That Defendants Omitted Material Facts About Morgan Stanley's Independence

Plaintiffs also incorrectly maintain that Defendants' statements that Morgan Stanley was independent are actionable statements of fact rather than protected opinion. Opp. 11–12. For reasons already explained, that is wrong. *See supra*, pp. 2–3. Plaintiffs' alternative contention that the statements are actionable as opinion (Opp. 12 n.7) is similarly unpersuasive: Plaintiffs allege nothing about Defendants' "inquiry into or knowledge concerning" Morgan Stanley's supposed conflicts, which precludes relief. *Omnicare*, 575 U.S. at 189.

Regardless, Plaintiffs fail to muster a credible omission claim predicated on Morgan Stanley's alleged investments in KKR. Plaintiffs concede the indisputable premise that funds invested on behalf of Morgan Stanley's ***clients*** present no conflict. Opp. 11–13; *e.g.*, *In re Micromet, Inc. Shareholders Litig.*, 2012 WL 681785, at *11–12 (Del. Ch. Feb. 27, 2012). And while Plaintiffs repeat their allegation that Morgan Stanley "held over $550 million … in KKR-affiliated funds," (Opp. 12), they do not allege with particularity or otherwise that Morgan Stanley invested a single dollar of that amount on its own behalf—only that an undescribed portion of it "appears to be" held in Morgan Stanley's own account. ¶91. That allegation is too speculative to be assumed true under even general pleading standards, and certainly under the PSLRA. And Plaintiffs' failure to allege an actual conflict readily distinguishes the two state-law cases on which they rely. In one, the plaintiff had shown that a financial advisor had material amounts invested in a counterparty "for its own benefit," not just for its clients. *City of Dearborn Police & Fire Revised Retirement Sys. v. Brookfield Asset Mgmt. Inc.*, 314 A.3d 1108, 1132–33 (Del. 2024). In the other, the defendants failed to disclose the advisor's receipt of fees from the transaction at issue. *City of Sarasota Firefighters' Pension Fund v. Inovalon Holdings, Inc.*, 319 A.3d 271, 297–98 (Del. 2024). But the flaws in Plaintiffs' theory do not end there. Plaintiffs still have not

explained how unidentified funds Morgan Stanley supposedly invested in *at KKR* stood to benefit from a lower merger price with Vista, *its counterparty*. Plaintiffs' theory is wholly implausible.

### 3. Plaintiffs Fail To Show That The Special Committee's Belief That The Merger Was Fair Is Actionable Opinion

While Plaintiffs admit the Special Committee's fairness determination was an opinion, they nonetheless contend that it is actionable. Opp. 13–14. Not so.

Unable to avoid the Seventh Circuit's well-reasoned rule in *Smykla v. Molinari,* 85 F.4th 1228 (7th Cir. 2023) that a statement by directors that a transaction is "fair" and in the "best interests" of stockholders is generally not actionable "even if the directors personally disbelieve it," *id.* at 1237, Plaintiffs attempt to manufacture a conflict between *Smykla* and the Eleventh Circuit's recitation of the general rule that opinions can be actionable when they "falsely describe the speaker's own state of mind." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1322 (11th Cir. 2019). But as the Supreme Court explained in *Omnicare*, that general rule is "qualifie[d]" by exactly the scenario that *Smykla* and this case present, *Omnicare*, 575 U.S. at 185 n.2—namely, an undisclosed subjective belief in the unfairness of the transaction when every other relevant detail of the transaction is fully disclosed, *Smykla*, 85 F.4th at 1237–38; *see Va. Bankshares*, 501 U.S. at 1095–96.

In any event, Plaintiffs do not adequately allege that Defendants lacked a genuine belief in the fairness of the merger price. The "Illustrative Response Framework For Potential Offer Prices" slide that Plaintiffs rely on only confirms this point: It expressly endorses the Special Committee's later-reached conclusion that negotiations were worth pursuing if the Committee could "see [its] way into the mid-to-upper $20s." ¶95. It defies normal usage of the English language to suggest, as Plaintiffs do (Opp. 14, n.9), that an ultimate price of $24.90—ten cents below the midpoint of the "$25"—is not within the mid-$20s.[3] Regardless, the "Illustrative Response Framework" slide can only be construed as just that—a suggested approach to negotiations, early in the potential acquisition process.[4] Crafted before Vista even made its opening offer (and before it became clear

---

[3] For this reason, it is not reasonable to infer, as Plaintiffs suggest, that the slide's reference to "$24.00" depicted "a range of $23.00 to $25.00 per share." Opp. 14, n.8.

[4] Because the redacted information on Slide 18 reflected proprietary negotiation tactics before bidding began—and before it became clear that no bidder other than Vista would make an offer—it was immaterial to investors (who were tasked with voting on the merger in its final form) and qualified for partial redaction under federal law. *See* 5 U.S.C. § 552(b); 17 C.F.R. § 200.80(c).

that no other bidders would pursue a transaction with KnowBe4), the slide drew no firm conclusion about the fairness of the ultimate deal price, which came only after Morgan Stanley's formal analysis concluded that $24.90 was at the "high end" of the permissible price range.  Ex. A at 56–62, 64.  Nor can Plaintiffs salvage their claim with the circular argument (Opp. 13–14) that the Committee's fairness conclusion was misleading on the ground that Plaintiffs' **other** omission claims are meritorious—which they are not.

### 4. Plaintiffs Fail To Allege That Defendants Omitted Material Facts About KKR's Preliminary Rollover Estimates

Plaintiffs likewise fail to justify their omission claim concerning KKR's preliminary rollover estimate.  Plaintiffs' argument relies on a fundamental flaw; "the expected transaction price" (Opp. 14) **before** Vista submitted an offer was entirely speculative, thus so too were KKR's preliminary, estimated rollover amounts.  Plaintiffs' attempt to distinguish *Sulzer* makes no sense (Opp. 15 n.10); it is precisely because KKR's preliminary rollover estimate was speculative that it was *not* material and need not be disclosed.  *See Sulzer v. Associated Madison Cos., Inc.*, 1985 WL 5856, at *3 (M.D. Fla. May 10, 1985).  Most pointedly, Plaintiffs fail to rebut the proxy's disclosure of KKR's long-declared intent to rollover "**all or a part**" of its equity.  Opp. 14–15. Given the plain language of that disclosure, no reasonable investor would have been surprised to learn that KKR ultimately rolled over **less than half** its stake.  ¶151.  The proxy also disclosed—repeatedly—that the quantum of any potential rollover was in flux throughout the negotiations. Ex. A at 38-41.

Plaintiffs resist that conclusion with the nonsensical argument that the proxy admitted the materiality of KKR's preliminary rollover estimate.  Opp. 15.  It did not.  The proxy merely acknowledged that announcing a firm rollover amount before receiving an opening offer from Vista could negatively influence Vista's opening offer and the ultimate price public stockholders received.  ¶99.  Once again, Plaintiffs ignore the reality that KKR and Plaintiffs were aligned in their goal to maximize the price per share.

### 5. Plaintiffs Fail To Allege That Defendants Were "Makers" Of The Relevant Statements

Finally, Plaintiffs mischaracterize *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) by arguing that "attribution within a statement" transforms all Director Defendants, Vista, Elephant Partners, and KKR into "makers" of the challenged statements.  Opp. 15–16.  That misstates the law.  "[F]or purposes of Rule 10b-5, the maker of a statement is the

7

person or entity with ultimate authority over the statement, including its content and whether and how to communicate it," so even one who "prepares or publishes a statement on behalf of another is not its maker." *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1271–72 (11th Cir. 2016) (citing *Janus*, 564 U.S. at 142). Nor can anyone who supplies the information be liable. Plaintiffs have not—and cannot—plead any facts indicating that Defendants, other than KnowBe4 and Sjouwerman, had "ultimate authority over the statement[s]" at issue. *A&M Mgmt. Inc. v. Deme*, 2019 WL 7344795, at *3 (S.D. Fla. Mar. 14, 2019) (rejecting "meritless" argument that defendants could be liable as makers because they "endorsed" misleading statements).

### B.    Plaintiffs Do Not Adequately Allege Scienter

Plaintiffs gloss over several of Defendants' scienter arguments. In so doing, Plaintiffs merely reiterate the same deficient arguments they rely on to support falsity. And, in any event, even assuming falsity, mere knowledge of allegedly undisclosed information is insufficient to plead a strong inference of scienter. *See In re NVIDIA Corp. Sec. Litig.*, 2011 WL 4831192, at *11 (N.D. Cal. Oct. 12, 2011), *aff'd,* 768 F.3d 1046 (9th Cir. 2014) ("Knowledge of the problem, however, is insufficient to infer that [defendant] acted with the intent to defraud or with deliberate recklessness in not reporting the issue publicly.") Plaintiffs have not—and cannot—point to any facts showing that any defendant acted with intent to defraud or deliberate recklessness.

Nor do Plaintiffs' allegations support a strong inference of scienter based on allegations of motive and opportunity to commit fraud. Plaintiffs bemoan disparate treatment of Defendants as compared to the Public Stockholders but continue to ignore that both constituents were similarly aligned in selling shares and were incentivized to seek the highest price for those shares. For example, KKR and Elephant Partners were aligned with stockholders in seeking to obtain the highest transaction price for the millions of shares they sold into the merger. *See In re Crimson Expl. Inc. S'holder Litig.*, 2014 WL 5449419, at *17 (Del. Ch. Oct. 24, 2014) ("Stockholders generally are presumed to have an incentive to seek the highest price for their shares. ***That inference or presumption is even stronger in the case of large stockholders***.")

Indeed, Defendants had every incentive to maximize—not depress—the Company's share price. Nearly every Defendant beneficially owned equity in the Company and, as a result, their interests were aligned with those of Plaintiffs and the other stockholders. Ex. A at 130. And Defendants KKR, Elephant Partners, and Sjouwerman each sold more than half of their respective shares into the merger. ¶¶151–53. Thus, Plaintiffs' theory of motive is not "cogent and at least as

8

compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "It is nonsensical to impute dishonest motives to . . . Defendants when each of them [would also] suffer[] significant losses in their stock holdings." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010); *see Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (no motive where "defendants were among [the] largest shareholders" and were harmed by the action taken). Instead, the only plausible inference is that Defendants believed the merger price was fair.

### C. Plaintiffs Do Not Adequately Allege Negligence

The complaint fails to adequately allege facts supporting its Section 14(a) claim for negligence. Even assuming that Plaintiffs adequately alleged a false statement (they did not) and even assuming that negligence, not scienter, applies to a Section 14(a) claim—an open question in the Eleventh Circuit (*see* Mot., ECF No. 79, at 22)—the law requires more than a conclusory allegation of negligence to survive a motion to dismiss. *See, e.g.*, *Bouchard-A v. N. Genesis Acquisition Corp.*, 2025 WL 1808469, at *9 (S.D.N.Y. July 1, 2025) (dismissing Section 14(a) claims and holding that "something more than the cursory allegations asserted here is needed")). By Plaintiffs' own admission, nothing more is alleged in the complaint.

Plaintiffs construe Section 14(a) as a strict liability statute—contending that if they plausibly allege a false or misleading statement, negligence is presumed. Opp. 17. But that is not the law. *Zappia v. Myovant Scis. Ltd.*, 708 F. Supp. 3d 486, 494 (S.D.N.Y. 2023), *aff'd,* 2025 WL 338351 (2d Cir. Jan. 30, 2025) (holding that Section 14(a) "is not a strict liability provision") (citing *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988)). Plaintiffs' reliance on dicta from the Second Circuit's 1988 decision in *Wilson* does not support their argument that "the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient [to show negligence]." Opp. 17 (citing *Wilson*, 855 F.2d at 995). That is because decisions affirmed by the Second Circuit in the last quarter century have consistently applied a higher bar and noted that *Wilson*'s holding was narrower than its dicta. *See, e.g.*, *Zappia*, 708 F. Supp. 3d at 494.

Plaintiffs instead continue to rely on generalities, contending that "each Defendant not only failed to exercise reasonable care, but also had actual knowledge and/or acted with severe recklessness." Opp. 18. Plaintiffs point to no facts supporting those threadbare claims. This pleading deficiency is fatal even under a negligence standard, because Plaintiffs cannot plead the

requisite state of mind by merely reiterating their conclusory position that Defendants' statements were "materially false or misleading" and thus that Defendants were "aware or were severely reckless in disregarding" such facts. Opp. 17, 21–22; *In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 362 (S.D.N.Y. 2025) (dismissing Section 14(a) claim where plaintiffs made "only the conclusory assertion that [defendants] solicited proxies by means of a proxy statement that 'through [d]efendants' negligence' contained material misrepresentations"); *Zappia*, 708 F. Supp. 3d at 494 (dismissing Section 14(a) claim "where allegation pertaining to negligence is the conclusory statement that [d]efendants were at least negligent in filing the [p]roxy with these material misrepresentations and omissions" because a "threadbare recital of an essential element of a … claim does not suffice"). Plaintiffs have not—and cannot—plead particularized facts about any Defendant's conduct, or how such conduct purportedly fell short of the standard of care.

>           **D.    Plaintiffs Do Not Adequately Allege Causation**

Plaintiffs argue that but for the allegedly material misrepresentations and omissions in the proxy, KnowBe4's shareholders would not have voted for the merger and cashed out their shares, or Plaintiffs would have exercised their appraisal rights. That argument strains credulity as the merger was approved by 99% of unaffiliated stockholders and delivered those stockholders a 44% premium on their shares. Plaintiffs fail to allege that they even read the proxy statements, voted on the merger, or investigated or attempted to comply with the procedures for perfecting their appraisal rights, as explained in the proxy materials. More importantly, regardless of whether the merger went forward or whether stockholders exercised their appraisal rights, there is no support for the allegation that Plaintiffs lost money.

The complaint "relies on a chain of inferences far too speculative and distended to support a plausible theory of loss and loss causation[.]" *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 368 (S.D.N.Y. 2023), *reconsideration denied,* 2023 WL 4249356 (S.D.N.Y. June 29, 2023). Plaintiffs claim that if investors had known the "truth," the merger might not have happened. ¶8. But that is inconsistent with their own allegations, as Plaintiffs insist that the merger's approval was "***ensured*** by KKR, Elephant Partners, Sjouwerman, and Vista 'down-converting 90% of their Class B shares to Class A shares to control the Class A vote.'" Opp. 14 (quoting ¶¶173–176). Thus, even in Plaintiffs' ***hypothetical world***, Plaintiffs cannot show that, "the exchange of shares … through the [m]erger, would not have occurred[.]" *Altimeo Asset Mgmt.*, 663 F. Supp. 3d at 366.

Plaintiffs also claim that the merger price was "depressed" and below the securities' "true value." Opp. 14, 34. However, the allegations reflect the opposite: the market valued the stock at *less* than the merger consideration before the alleged misrepresentations and the price *went up* following the alleged misrepresentations.[5] Plaintiffs further accuse Defendants of concealing largely *negative* information—*e.g.*, the Special Committee's supposed lack of independence. The implication that the stock would have traded at *higher* prices absent these alleged misstatements has no basis in fact or common sense, and the Court is not required to accept such allegations true. *See ODS Cap. LLC*, 2020 WL 7028639, at *15 ("Plaintiffs' allegations that [defendants] depressed the price of [company's stock] during the class period are bel[]ied by the fact that [the] stock price rose or remained roughly the same during the … period."); *In re E-House Sec. Litig.*, 2021 WL 4461777, at *16 (S.D.N.Y. Sept. 29, 2021) ("The [stock] price … and the fact that the prices rose upon completion of the [m]erger—show that Plaintiffs are unable to allege loss causation.").[6]

Plaintiffs do not dispute that Morgan Stanley contacted at least 18 parties to gauge their interest in a potential acquisition, and only Vista bid. Plaintiffs nevertheless speculate that the market (or some non-existent acquiror) would have adopted their view that the shares were undervalued and offered to pay more. "[C]ase law, to say the least, has not looked kindly on similarly attenuated theories of economic loss when articulated in securities fraud lawsuits." *Altimeo Asset Mgmt.*, 663 F. Supp. 3d at 366 (collecting cases); *see also In re Resolute Energy Corp. Sec. Litig.*, 2022 WL 260059, at *2–3 (3d Cir. Jan. 27, 2022) (no economic loss where appellant offered only speculative allegations that true market value was higher than merger consideration, let alone higher than the 15% premium on market value offered as merger consideration); *Beck v. Dobrowski*, 559 F.3d 680, 684 (7th Cir. 2009) (dismissing complaint where plaintiffs alleged that, but for misleading proxy solicitation, shareholders would have rejected buyout and thereafter reaped unspecified economic benefits of continuing to own shares); *Kuebler*

---

[5] The Court may take judicial notice of KnowBe4's share price history, provided in the same Schedule 13E-13 SEC filing on which Plaintiffs rely. ECF No. 80-3, Ex. C at 17 (December 22, 2022 Amendment to Schedule 13E-13); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1280 (11th Cir. 1999) (a district court is authorized at the motion to dismiss stage to take judicial notice of relevant public documents required to be filed with the SEC, and actually filed with the SEC).

[6] As Plaintiffs concede, this is not a "typical" case. Opp. 25. In the cases they cite, the defendants allegedly concealed or downplayed *positive* financial information to depress the acquisition price. *See Vargas*, 716 F. Supp. 3d at 1309 (positive trends); *Baum*, 408 F. Supp. 3d at 87 (positive projections). That is not the case here.

*v. Vectren Corp.*, 13 F.4th 631, 646 (7th Cir. 2021) (no economic loss where "plaintiffs' allegations amount—at most—to speculation that if the omitted [information] had been disclosed, they would have been able to determine that the value of their shares exceeded [the merger price]"). Because loss causation cannot rest on hypothetical scenarios, these pleading defects are fatal. *Kinnett v. Strayer Educ., Inc.*, 501 F. App'x 890, 894 (11th Cir. 2012) ("[T]he Supreme Court has expressly demanded a complaint to allege something beyond the mere possibility of loss causation.'").

### E.    Plaintiffs' Section 10(b) Claim Should Be Dismissed As Time-Barred

In their opposition, Plaintiffs attempt to backtrack on their ***own (twice amended) pleadings, which include critical admissions*** that, beginning in October 2022, they were concerned about "serious red flags" regarding the Defendants' purportedly "preferential treatment of insiders." ¶¶66–67.  Accepting that allegation as true, Plaintiffs' Section 10(b) claim is time-barred.

In Plaintiffs' telling, the October 12, 2022 press release "raised serious red flags" that "the Company's most powerful and informed shareholders … received fundamentally different treatment that was unavailable to the Public Stockholders.  While Public Stockholders faced forced liquidation of their entire holdings, these insider investors would strategically retain a portion of their equity positions …"  ¶67.  This is precisely the kind of "'storm warning[]'" that "[c]ourts must [] consider" in assessing signs that "would have prompted a reasonably diligent plaintiff to begin investigating in order to determine when a reasonable plaintiff would have discovered the necessary facts."  *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 535–36 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016) (quoting *Merck & Co. v. Reynolds,* 559 U.S. 633, 653 (2010)).  At minimum, Plaintiffs' purported ***serious concerns*** in October 2022 establishes that a reasonably diligent plaintiff would have begun investigating at that time.[7]

## II.    PLAINTIFFS FAIL TO STATE A 20(A) CLAIM

Plaintiffs' Section 20(a) claim must be dismissed because it relies on shotgun pleading that fails to give Defendants notice of the basis for the claim, Plaintiffs fail to plead a primary violation

---

[7]  Plaintiffs' reliance on *Delgado v. Rutledge*, 2024 WL 3570258 (S.D. Fla. Mar. 29, 2024) confirms that their Section 10(b) claim is time-barred. There, the court noted that dismissal under Rule 12(b)(6) is proper where a plaintiff has "actual or constructive notice" of fraud.  2024 WL 3570258, at *3.  Plaintiffs concede in their pleadings they observed "red flags" and "warning signs" in October 2022.  Courts "***often make this determination on a motion to dismiss***," *D'Arnaud-Taylor*, 68 F. Supp. 3d at 536, where, as here, the relevant facts "***can be gleaned from the complaint*** and papers ... integral to the complaint[.]"  *LC Capital Partners, LP v. Frontier Ins. Group, Inc.,* 318 F.3d 148, 156 (2d Cir. 2003).

under either Section 10(b) or 14(a) of the Exchange Act (*see* Mot. 25), and Plaintiffs fail to establish control for each Defendant individually or as a group.

### A.  The Complaint Is An Improper Shotgun Pleading

Plaintiffs incorrectly claim that *Gnanaraj v. Lilum N.V.*, 2023 WL 9064669 (S.D. Fla. Dec. 18, 2023) is distinguishable because here, "none of the counts incorporate the other counts, and each cause of action is alleged in separate counts." Opp. 30.  But in *Gnanaraj*, the court took issue with the complaint's failure to "specify the precise primary violation" behind the plaintiff's 20(a) claims and its reference to "at least 20 separate SEC filings or public statements" containing "multiple alleged . . . material misrepresentations," all of which "we[re] incorporated into each Count, without differentiating [between various] misrepresentations or omissions."  2023 WL 9064669, at *7.  Plaintiffs' complaint commits the same errors, regardless of whether Count III literally "incorporates by reference Counts I and II."  *Id.*  By "incorporat[ing] by reference all of the factual allegations" (¶227) and indiscriminately lumping together numerous statements by multiple defendants from across three filings (¶228), the complaint similarly leaves Defendants unable "to know which Rule and which specific conduct is alleged to support Section 20(a) liability."  2023 WL 9064669, at *7.  Because the Court has "previously given [Plaintiffs] an opportunity to amend the complaint to correct th[is] defect," dismissal without leave to amend is proper.  *Doe v. Norwegian Cruise Lines, LTD*, 744 F. Supp. 3d 1300, 1312 (S.D. Fla. 2024).

### B.  Plaintiffs Fail To Plead Control By Any Defendant Individually

Plaintiffs falsely claim they have pled control for each Defendant (Opp. 28–29), but fail to meet even the Rule 8 pleading standard.

***Vista***.  Plaintiffs cite no authority to support their position that a minority shareholder can control ***its counterparty***, and other courts have reached the opposite conclusion.  *See, e.g.*, *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1368 (S.D. Fla. 2001) (president of acquired company "could not have exercised control over" acquiror because he was "associated with . . . the targeted compan[y]" and "not part of [acquiror's] management" at relevant time).  Although Plaintiffs baldly allege that "[t]he [m]erger process was rigged" (¶102), in fact, the "Complaint shows the opposite."  *Curry v. TD Ameritrade, Inc.*, 2015 WL 11251449, at *19 (N.D. Ga. June 30, 2015).  Plaintiffs' allegations that Vista "exploited" KKR's interest in a deal (¶103), deployed its typical "high-speed, high-pressure acquisition strategy" (¶146), and "***[l]ike in any merger transaction***," attempted to "***negotiate***" the lowest per share merger price possible (¶147) show that

Vista "competed for [KnowBe4's] business," "did not have the power to control" how KnowBe4 ran its bid process, and did not prevent KnowBe4 from "tak[ing] [its] business elsewhere." *Id.* (finding no § 20(a) liability).[8]

**KKR and Elephant Partners.** Plaintiffs assert that KKR and Elephant Partners' "control[]" of KnowBe4 board members Shanley, Wilson, and Daly makes KKR and Elephant liable for the primary violations of each of their respective "Board designees" (Opp. 28, 30) and KnowBe4 (Opp. 29). But outside directors acting as such "ha[ve] fiduciary duties to act on behalf of the shareholders . . . , not on behalf of their employers who appointed them to the board," and thus "the 'mere fact' that certain outside directors held high positions with certain allegedly controlling corporations and were appointed to the primary violator's board by those corporations, 'cannot, standing alone, establish that they . . . acted under the control,' of those defendants.'" *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 675–76 (N.D. Tex. 2013) (quoting *In re Global Crossing Secs. Litig.*, 2005 WL 1907005, *4 (S.D.N.Y. Aug. 8, 2005)); *see Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x 448 (2d Cir. 2015) (allegation that defendant "employed the two individuals that he nominated to Dynegy's Board of Directors" did not support control claim); *LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *13 (D.N.J. Aug. 12, 2010) ("conclusory allegation" that minority shareholders "controlled their respective directors" did not establish control); *see also In re Villa*, 261 F.3d 1148, 1152 (11th Cir. 2001) ("[L]iability under § 20(a) is not equivalent to liability under the common law of agency.").

**Director Defendants.** In support of their assertion that the Director Defendants controlled KnowBe4, Plaintiffs point to allegations that "the [p]roxy was issued 'By Order of the Board'" (¶233) and the Director Defendants evaluated the take-private transaction and merger agreement (¶¶230–31). Opp. 28. But allegations that a director "reviewed and approved" financial statements do not establish control absent additional indicia that the director was "active in the day-to-day affairs" of the company or "exercised any specific control over the preparation and release of the

---

[8] Plaintiffs' allegations that Vista **had the right to review the Proxy** (Opp. 29) are of no help. *See In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *35 (C.D. Cal. Jan. 16, 2013) (conclusory allegations that "directors 'had access to' [] filings and 'had the ability' to correct any material misrepresentations contained therein" did not support control); *Curry*, 2015 WL 11251449, at *19 ("Plaintiffs' contention that Defendants had the power to prevent the fraudulent scheme by 'maintain[ing] appropriate internal controls' does not equate to the power to control [company's] general business.").

financial statements." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 n.13 (9th Cir. 2000) (affirming dismissal of 20(a) claim). Similarly, a director "cannot be held liable as a control person simply due to his involvement in the underlying activities about which the Individual Defendants are alleged to have misled investors." *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 731 (W.D. Tex. 2010); *see Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 397 (11th Cir. 1996) (chairman of violating company's board not liable on control theory where he participated in related restructuring but did not direct specific policy resulting in fraudulent prospectus). Plaintiffs' remaining allegations (*e.g.*, ¶¶231–232 (alleging Director Defendants' "direct and supervisory involvement in the day-to-day operations of KnowBe4" and "the ability to prevent the issuance of the statements or cause the statements to be corrected"), are too conclusory to satisfy even Rule 8. *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) (allegations that outside directors "controlled the contents of [primary violator's] financial reports and press releases" and "could have prevented the issuance of false statements" did not establish control).

### C.       Plaintiffs Fail To Plead The Existence Of A Control Group

Majority voting power by a group of defendants does not establish control absent allegations—missing here—that those defendants acted in concert. Mot. 29. Though Plaintiffs suggest they have pled concerted action by alleging that Defendants "acted collectively to take KnowBe4 private at a price unfair to Public Stockholders and jointly issued the false and misleading [p]roxy and Schedule 13E-3" (Opp. 29–30), this argument fails because mere involvement in the transaction to "take KnowBe4 private" does not demonstrate control over KnowBe4 itself, *see supra*, pp. 13–14; *Galapagos, LLC v. Vision Bank*, 2010 WL 11468562, at *15 (N.D. Ala. July 20, 2010) (no control liability notwithstanding allegations that defendants "were involved in interlocking relationships with one another" and "all played roles in the development project"); and allegations that Defendants "jointly issued" the proxy and Schedule 13E-3 cannot support control liability given that most of the Defendants "issued" neither document, *see supra*, pp. 7–8; Mot. 13; *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1149 (N.D. Cal. 1989) (no control liability where defendants were "not part of the 'group' responsible for the dissemination of 'group-published information'").

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' motion, Defendants respectfully seek dismissal of the complaint (ECF No. 70) with prejudice.

November 4, 2025

Respectfully submitted,

| | |
|---|---|
| /s/   Samuel G. Williamson | /s/  Martin B. Goldberg |
| Samuel G. Williamson | Martin B. Goldberg |
| Florida Bar No. 1033817 | Florida Bar No. 0827029 |
| David A. Nabors | Benjamin R. Shiekman |
| Florida Bar No. 1024722 | Florida Bar No. 113114 |
| **QUINN EMANUEL URQUHART &** | mgoldberg@lashgoldberg.com |
| **SULLIVAN LLP** | bshiekman@lashgoldberg.com |
| 2601 S Bayshore Drive | **LASHGOLDBERG** |
| Suite 1550 | 100 S.E. 2nd Street, Suite 1200 |
| Miami, Florida 33133-5417 | Miami, FL 33131 |
| (305) 402-4880 | (305) 347-4040 |
| samwilliamson@quinnemanuel.com | |
| davidnabors@quinnemanuel.com | Colleen Smith *(pro hac vice)* |
| | **LATHAM & WATKINS LLP** |
| Andrew J. Rossman *(pro hac vice)* | 12670 High Bluff Drive |
| Courtney C. Whang *(pro hac vice)* | San Diego, California 92130 |
| Marielle Paloma Greenblatt *(pro hac vice)* | (858) 523-5400 |
| **QUINN EMANUEL URQUHART &** | colleen.smith@lw.com |
| **SULLIVAN LLP** | |
| 295 Fifth Avenue | Stephen Nasko *(pro hac vice)* |
| New York, NY 10016 | **LATHAM & WATKINS LLP** |
| (212) 446-4800 | 555 Eleventh Street, NW, Suite 1000 |
| andrewrossman@quinnemanuel.com | Washington, D.C. 20004 |
| courtneywhang@quinnemanuel.com | (202) 654-7130 |
| mariellegreenblatt@quinnemanuel.com | stephen.nasko@lw.com |
| | |
| *Counsel for Defendants KnowBe4, Inc.,* | *Counsel for Defendants Jeremiah Daly, Elephant* |
| *Sjoerd Sjouwerman, and Vista Equity* | *Partners, Elephant Partners I, L.P., Elephant* |
| *Partners Management, LLC* | *Partners II, L.P., Elephant Partners 2019 SPV-A,* |
| | *L.P., and Elephant Partners II-B, L.P.* |
| | |
| /s/  Michael Holecek | /s/  Adam M. Schachter |
| Michael Holecek | Adam M. Schachter (Florida Bar No. 647101) |
| Florida Bar No. 1035950 | Joan Silverstein (Florida Bar No. 997330) |
| **GIBSON, DUNN & CRUTCHER LLP** | **GELBER SCHACHTER &** |
| 333 South Grand Avenue | **GREENBERG, P.A.** |
| Los Angeles, CA 90071-3197 | One Southeast Third Avenue, Suite 2600 |
| (213) 229-7018 | Miami, Florida 33131 |
| MHolecek@gibsondunn.com | (305) 728-0950 |
| | aschachter@gsgpa.com |
| Brian M. Lutz *(pro hac vice)* | jsilverstein@gsgpa.com |

16

Colin Davis (*pro hac vice*)
Jeff Lombard (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center
Suite 2600
San Francisco, California 94111
(415) 393-8200

*Counsel for Defendants KKR & Co. Inc.,*
*KKR Knowledge Investors L.P., Stephen*
*Shanley, and Kara Wilson*

Koji Fukumura (*pro hac vice*)
Peter Adams (*pro hac vice*)
Heather Speers (*pro hac vice*)
**COOLEY LLP**
10265 Science Center Drive
San Diego, California 92121
(858) 550-6000
kfukumura@cooley.com
padams@cooley.com
hspeers@cooley.com

*Counsel for Defendants Kevin Klausmeyer,*
*Shrikrishna Venkataraman, and Gerhard*
*Watzinger*

17