UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22574-CIV-ALTONAGA/Reid

In re:

KNOWBE4, Inc.
SECURITIES LITIGATION
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants'[1] Motion to Dismiss [ECF No. 79]. Lead Plaintiffs[2] filed a Response [ECF No. 96]; to which Defendants filed a Reply [ECF No. 99]. The Court has reviewed the Consolidated Amended Class Action Complaint ("ACAC") [ECF No. 70], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part.

## I. BACKGROUND

This is a putative securities class action arising from Defendants' alleged misstatements and omissions between October 12, 2022 and December 22, 2022. (*See* ACAC ¶¶ 111–40). Plaintiffs define the "Class Period" as October 12, 2022 to February 1, 2023; the later date being when the relevant merger closed. (*See id.* 5).[3]

---

[1] Defendants are Shrikrishna Venkataraman, Kevin Klausmeyer, Gerhard Watzinger (collectively, "Special Committee Defendants"); Sjoerd Sjouwerman, Jeremiah Daly, Stephen Shanley, Kara Wilson (collectively, "Board Defendants" and together with the Special Committee Defendants, "Individual Defendants"); KKR & Co. Inc., KKR Knowledge Investors L.P. (collectively, "KKR"); Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P., Elephant Partners II-B, L.P. (collectively, "Elephant Partners"); Vista Equity Partners Management, LLC ("Vista"), and KnowBe4.

[2] Lead Plaintiffs ("Plaintiffs") are Water Island Event-Driven Fund, AltShares Event-Driven ETF, The Arbitrage Fund, and Hilary L. Shane Revocable Trust.

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

KnowBe4 is a widely used cybersecurity awareness training platform.  (*See id.* ¶ 50). Defendant, Sjoerd Sjouwerman founded KnowBe4 in 2010, and the company attracted significant private equity investment in the ensuing years, including from Defendants KKR, Elephant Partners, and Vista.  (*See id.* ¶¶ 50–51, 54, 58).  In April 2021, KnowBe4 went public through an initial public offering ("IPO") that created two classes of common stock: publicly traded Class A shares and privately held Class B shares.  (*See id.* ¶ 52).  KnowBe4's charter provided that Class A and Class B shares carried equal weight in any merger vote.  (*See id.* ¶ 53 (citation omitted)).

According to Plaintiffs, KnowBe4 grew rapidly and reported impressive financial results during the 18 months following its IPO, garnering generally positive investor reception.  (*See id.* ¶¶ 59–63; *but see id.* ¶ 61).  On October 12, 2022, KnowBe4 announced an agreement with Vista that, if approved by KnowBe4 stockholders, would take the company private and compensate public stockholders at $24.90 per share (the "Merger").  (*See id.* ¶¶ 65–66).  Under the proposed transaction, certain investors — including Sjouwerman, KKR, and Elephant Partners — could roll over portions of their existing equity into the post-Merger entity.  (*See id.* ¶¶ 66–67, 73).  A supposedly independent, disinterested Special Committee ("Special Committee" or "Committee") of KnowBe4's Board of Directors ("Board") negotiated and approved the Merger, with the assistance of non-party Morgan Stanley as its financial advisor.  (*See id.* ¶ 68).

On December 22, 2022, KnowBe4 filed a proxy statement ("Proxy") with the Securities & Exchange Commission ("SEC"), soliciting stockholder approval of the Merger, which required majority approval by KnowBe4's public stockholders along with other stockholder constituencies. (*See id.* ¶¶ 71–72).  The Proxy stated that the Special Committee, Vista, KKR, Elephant Partners, and Sjouwerman determined the $24.90 per share Merger price was fair.  (*See id.* ¶ 92).  In support of that representation, the Proxy described an August 19, 2022 meeting at which the Special

Committee stated it believed "a transaction with a value in the mid-to-high $20[]s per share range was appropriate[.]"   (*Id.* ¶ 93 (alterations added; quotation marks omitted)).   A related, contemporaneous securities filing included a partially redacted slide titled "Illustrative Response Framework for Potential Offer Prices," containing additional Merger pricing information.  (*Id.* ¶ 94; *see also id.* 37 (displaying the unredacted slide)).

On January 31, 2023, KnowBe4 held a stockholder vote and obtained all four requisite majorities.  (*See id.* ¶ 107).  The Merger closed the following day; public stockholders cashed out at $24.90 per share, and the company went private.  (*See id.*).  Plaintiffs allege that KnowBe4 performed well in late 2022 and early 2023 — around the time of the Merger — but that former public stockholders "were denied the opportunity to participate in the [c]ompany's future success." (*Id.* ¶ 108 (alteration added)).

Lead Plaintiffs assert three claims under the Securities Exchange Act of 1934 ("Exchange Act") based on 14 alleged misstatements or omissions across four publications: the October 12, 2022 Merger press release; the October 13, 2022 Form 8-K; the December 22, 2022 Proxy; and the December 22, 2022 Schedule 13E-3 ("13E-3").  (*See id.* ¶¶ 111–41).[4]  In Count I of the ACAC, Plaintiffs allege all Defendants disseminated a proxy statement containing material misrepresentations, in violation of Section 14(a) of the Exchange Act, 15 U.S.C. section 78n(a) and SEC Rule 14a–9, 17 C.F.R. section 240.14a–9.  (*See id.* ¶¶ 204–14).  In Count II, Plaintiffs allege all Defendants made material misrepresentations and omissions, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. section 78j(b) and SEC Rule 10b–5, 17 C.F.R. section 240.10b–5.  (*See id.* ¶¶ 215–26).  And in Count III, Plaintiffs allege Vista, KKR, Elephant Partners,

---

[4] Lead Plaintiffs allege violations of Sections 14(a) and 20(a) of the Exchange Act on behalf of all public KnowBe4 stockholders who held shares on December 7, 2022 and were entitled to vote on the Merger; and violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of sellers of KnowBe4 common stock during the Class Period.  (*See* ACAC 5).

and the Individual Defendants were controlling persons of the company whose conduct also violated Section 20(a) of the Exchange Act, 15 U.S.C. section 78t(a). (*See id.* ¶¶ 227–35).

Defendants move to dismiss the ACAC with prejudice for failure to state claims upon which relief can be granted. (*See generally* Mot.; Reply).

## II.  LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *id.* (alteration added; quoting *Twombly*, 550 U.S. at 555), or "a formulaic recitation of the elements of a cause of action[,]" *Twombly*, 550 U.S. at 555 (alteration added).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

Securities claims are subject to heightened pleading requirements not applicable to most complaints.  Federal Rule of Civil Procedure 9(b) requires that securities fraud claims state "with particularity the circumstances constituting fraud[.]"  *Id.* (alteration added); *see also Edward J.*

*Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 789 (11th Cir. 2010) (citations omitted).

To satisfy Rule 9(b), a complaint must include:

> (1) precisely what statements were made in what documents or oral representations
> or what omissions were made, and (2) the time and place of each such statement
> and the person responsible for making (or, in the case of omissions, not making)
> same, and (3) the content of such statements and the manner in which they misled
> the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quotation marks and citation

omitted).  "[U]nder Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the

allegedly false statements and then allege generally that those statements were made with the

requisite intent." *Id.* (alteration added).

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109

Stat. 737 (1995) (codified as amended in scattered sections of 15 U.S.C.), imposes additional

requirements.  Under the PSLRA, a complaint must "specify each statement alleged to have been

misleading" and "the reason or reasons why the statement is misleading[.]"  15 U.S.C. § 78u-

4(b)(1)(B) (alteration added).  "[W]ith respect to each act or omission alleged[,]" the complaint

must also "state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind." *Id.* § 78u-4(b)(2)(A) (alterations added).

A "'strong inference' is one that is 'cogent and at least as compelling as any opposing

inference one could draw from the facts alleged.'" *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307,

1318 (11th Cir. 2019) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324

(2007)).  The required state of mind, or scienter, "is an 'intent to defraud or severe recklessness on

the part of the defendant.'" *Id.* (citation omitted).  "Although scienter may be inferred from an

aggregate of factual allegations, it must be alleged with respect to each alleged violation of the

statute." *Id.* (citation omitted).

### III. DISCUSSION

**A.      <u>Introduction</u>**

Regarding Count I, to state a claim under Section 14(a) and SEC Rule 14a–9, Plaintiffs must allege that (1) Defendants prepared a proxy statement containing a material misstatement or omission that (2) caused Plaintiffs' injury; and (3) "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Jabil Cir., Inc.*, 594 F.3d at 796 (quotation marks and citation omitted); *see also Murdeshwar v. Search Media Holdings Ltd.*, No. 11-Civ-20549, 2011 WL 7704347, at *19 (S.D. Fla. Aug. 8, 2011) (citation omitted); *Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1302 (S.D. Fla. 2024) (noting the Eleventh Circuit has not yet set forth the full pleading standard for Section 14(a) claims).   Further, Plaintiffs must allege that Defendants negligently drafted the proxy statement. *See Biver v. Nicholas Fin., Inc.*, No. 14-cv-250, 2014 WL 2441891, at *4 (M.D. Fla. May 30, 2014).

As to Count II, to state a claim under Section 10(b) and Rule 10b–5, Plaintiffs must sufficiently allege "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, commonly called 'loss causation.'" *Carvelli*, 934 F.3d at 1317 (quotation marks and citation omitted).

Regarding Count III, Section 20(a) imposes liability on control persons of companies that violate the securities laws. *See* 15 U.S.C. § 78t(a).  To state a Section 20(a) claim, Plaintiffs must allege:

> (1) [the corporate entity] committed a primary violation of the securities laws; (2) the Individual Defendants had the power to control the general business affairs of

[the corporate entity]; and (3) the Individual Defendants had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability.

*In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1274 (S.D. Fla. 2017) (alterations added; quotation marks omitted; quoting *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001), *abrogated on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010)).  If a plaintiff does not adequately plead that the corporate defendant committed a primary securities law violation, a Section 20(a) claim necessarily fails.  *See id.* (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

Defendants insist that Plaintiffs' claims should be dismissed with prejudice for several reasons.  As to Counts I and II, Defendants contend Plaintiffs (1) have not pleaded an actionable misrepresentation or omission (*see* Mot. 22–29); (2) fail to plead negligence and scienter, respectively, for Counts I and II (*see id.* 29–33); and (3) do not sufficiently allege causation for either claim (*see id.* 33–34).[5]  As to Count III, Defendants contend that because Plaintiffs fail to sufficiently allege a Section 10(b) or 14(a) violation, they fail to state a Section 20(a) claim; and that even if Plaintiffs adequately allege a primary violation, Count III fails because Plaintiffs fail to adequately allege control.  (*See id.* 35–40).  Plaintiffs dispute each argument.  (*See generally* Resp.).

---

[5] Defendants also assert Count II is time-barred by Section 10(b)'s two-year statute of limitations.  (*See* Mot. 35 (citing 28 U.S.C. § 1658(b)(1)); *see also* Resp. 34–35).  A court may dismiss a complaint based on the applicable statute of limitations "only if it appears beyond a doubt that [p]laintiffs can prove no set of facts that toll the statute."  *Conley v. Vacanti*, No. 23-60384-Civ, 2024 WL 3791910, at *3 (S.D. Fla. Jan. 3, 2024) (alteration added; quotation marks omitted; quoting *Keira v. U.S. Postal Inspection Serv.*, 157 F. App'x 135, 136 (11th Cir. 2005)).  A securities fraud cause of action accrues when the plaintiff discovered, or a reasonably diligent plaintiff would have discovered, the facts constituting the alleged violation, including scienter.  *See Merck*, 559 U.S. at 653.  Defendants' argument — based on one statement in the ACAC alleging public stockholders saw "serious red flags" in the proposed Merger's structure more than two years before this action was filed (*see* Mot. 35 (citing ACAC ¶ 67)) — fails to persuade.  This allegation alone does not make it apparent on the face of the pleading that Count II is time-barred, *see Merck*, 559 U.S. at 653, so the Court declines to dismiss Count II on this basis, *see La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

**B.      Section 14(a) and 10(b) Claims (Counts I and II)**

First, the Court clarifies the pleading standard applicable to Count I.  Then, the Court addresses each of Defendants' arguments for dismissal of Counts I and II in turn.

**1.      Count I: Pleading Standard**

If a Section 14(a) claim is based solely on negligence, Rule 9(b)'s heightened pleading standards do not apply.  *See In re Grab Holdings Ltd. Sec. Litig.*, No. 22-cv-02189, 2024 WL 1076277, at *11, *13 (S.D.N.Y. Mar. 12, 2024).  If the claim sounds in fraud, Rule 9(b) applies. *See Vargas*, 716 F. Supp. 3d at 1302 n.2 (citation omitted).

Count I sounds in negligence, not fraud.  Plaintiffs emphasize that their Section 14(a) claim does not allege fraud (*see* ACAC ¶¶ 204, 210), and carefully distinguish the allegations supporting the fraud and negligence claims.  The ACAC's allegations relevant only to Count II are grouped beneath the heading "Additional Allegations of Scienter[.]" (*Id.* 52 (alteration added; capitalization altered; emphases omitted); *see also id.* ¶¶ 142–77; *id.* ¶ 142 ("For the purposes of Count II below, . . . .")).  While Count II incorporates these allegations, Count I does not.  (*See id.* ¶¶ 204, 215). The portion incorporated into Count I (*see id.* ¶¶ 109–41) lacks the language sounding in fraud found in the portion devoted to fraud allegations (*see id.* ¶¶ 142–77); *contra Lee v. Frost*, No. 21-20885-Civ, 2021 WL 3912651, at *4 n.3 (S.D. Fla. Sep. 1, 2021).  Thus, Plaintiffs have "done more than disclaim fraud;" they have "specifically pled alternate theories of fraud and negligence." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632–33 (S.D.N.Y. 2007).

Courts have generally concluded that even a Section 14(a) claim sounding in negligence must satisfy the PSLRA's requirement to identify misleading statements or omissions with precision.  *See In re Grab Holdings*, 2024 WL 1076277, at *11 n.2 (citing *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 557 (S.D.N.Y. 2017)); *Little Gem Life Scis.,*

*LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916–17 (8th Cir. 2008) (holding the PSLRA's pleading requirements for actionability apply to Section 14(a) claims based solely in negligence); *Beck v. Dobrowski*, 559 F.3d 680, 681–82 (7th Cir. 2009) (same). The Court therefore applies the PSLRA's requirement to identify misleading statements or omissions with precision to Plaintiffs' Section 14(a) claim. *See* 15 U.S.C. § 78u-4(b)(1).

Regarding the PSLRA's state of mind particularity requirement, courts generally hold it does not apply to Section 14(a) claims based on negligence. *See comScore, Inc.*, 268 F. Supp. 3d at 559 (citing *Beck*, 559 F.3d at 682); *In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 538 (D. Del. 2012) ("This court has declined to apply the PSLRA's heightened pleading requirements [under section 78u-4(b)(2)] to claims brought under [Section] 14(a)." (alterations added; footnote call number omitted)); *In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 360 n.21 (S.D.N.Y. 2025) (collecting cases and concluding the PSLRA does not require negligence be pleaded with particularity); *In re Willis Towers Watson Plc Proxy Litig.*, 439 F. Supp. 3d 704, 714–15 (E.D. Va. 2020) (same). The Court consequently declines to apply the PSLRA's state of mind particularity requirement to Plaintiffs' Section 14(a) claim. *See* 15 U.S.C. § 78u-4(b)(2).

In sum, because Plaintiffs' Section 14(a) claim does not sound in fraud, the Court will not apply Rule 9(b)'s heightened pleading standard to Count I. While Count I is subject to the PSLRA's requirement to identify misleading statements or omissions with precision, it is not subject to the PSLRA's state of mind particularity requirement.

### 2.    Actionable Misrepresentations and Omissions

Only "material" misrepresentations or omissions are actionable under the securities laws.[6] 17 C.F.R. § 240.10b–5(b). "A misrepresentation or omission is material if, in the light of the facts

---

[6] Section 10(b) and 14(a) claims have somewhat different elements, but "the Supreme Court has expressly adopted the same [materiality] standard in the context of claims arising under [Section] 10(b)" as that for

existing at the time, a reasonable investor, in the exercise of due care, would have been misled by it." *Carvelli*, 934 F.3d at 1317 (quotation marks and citation omitted). Put differently, "materiality depends on whether a substantial likelihood exists that a reasonable investor would have viewed a misrepresentation or omission as significantly alter[ing] the total mix of information made available." *Id.* (alteration in original; quotation marks, citation, and footnote call number omitted).

"Materiality, though, is a question of fact that may rarely be resolved at the motion to dismiss stage." *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1364 (S.D. Fla. 2001) (citing *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 201 (E.D.N.Y. 2000)). Further, "[a] court may not dismiss a securities fraud complaint on the basis of materiality unless the alleged misrepresentations are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 924 (11th Cir. 2020) (alteration added; quotation marks and citation omitted).

Regarding omissions, "'silence, absent a duty to disclose, is not misleading under Rule 10b–5.'" *Carvelli*, 934 F.3d at 1317 (alteration adopted; quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)). "Disclosure is required . . . only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024) (alteration added; other alteration adopted; quotation marks and citation omitted).

Plaintiffs allege Defendants violated Sections 10(b) and 14(a), and Rules 10b–5 and 14a– 9, by making 14 misrepresentations and omissions across four categories: (1) the Special Committee's independence; (2) Morgan Stanley's independence; (3) the Merger's fairness; and

---

claims arising under Section 14(a). *In re Mirant Corp. Sec. Litig.*, No. 02-cv-1467, 2003 WL 24027927, at *17 n.9 (N.D. Ga. July 14, 2003) (alterations added; citing *Basic, Inc. v. Levinson,* 485 U.S. 224, 232 (1988)).

(4) KKR's rollover. (*See* ACAC ¶¶ 71–100, 111–38).[7]  Defendants dispute the actionability of all statements. (*See generally* Mot.; Reply).

### a. *Independence of Special Committee*

Plaintiffs allege Defendants made six misrepresentations or omissions regarding the independence of the Special Committee during the Class Period. (*See* ACAC ¶¶ 111–12, 117, 127–29). These statements generally expressed that the Special Committee was independent and/ or disinterested with respect to the Merger it considered and approved. (*See id.*).[8]

Plaintiffs premise liability for these statements on a duty-to-disclose theory. They allege that each statement was false and misleading because it omitted facts about the Special Committee Defendants' alleged conflicts with respect to the Merger. (*See id.* ¶ 113). Specifically, Plaintiffs allege that

> (i) Defendant Venkataraman and his wife invested in KKR- and Elephant Partners-affiliated funds, and his wife had a decades-long tenure with the Special Committee's financial advisor Morgan Stanley; (ii) Defendant Watzinger invested in KKR-affiliated funds and maintained friendships with several KKR- and Vista-affiliated individuals; and (iii) Defendant Klausmeyer served as a director for a company (Jamf Holding Corp.) affiliated with Vista, and served as director for another company (Ivalua Inc.) affiliated with KKR.

(*Id.* ¶¶ 113, 118, 130).

Defendants contend that the statements about the Special Committee's independence are statements of opinion (*see* Mot. 23–24), and the alleged undisclosed conflicts fail to meet

---

[7] Some alleged misstatements fall into more than one category. (*See, e.g.*, ACAC ¶ 117 (referencing the Special Committee's independence and that of Morgan Stanley); *id.* ¶ 121 (referencing the Merger's fairness; the Special Committee's independence; and that of Morgan Stanley)). Where necessary, the Court analyzes such statements under multiple categories.

[8] The statement at ACAC ¶ 112 also states in part that KnowBe4, under the Special Committee's supervision, "engaged in a robust process, including evaluating transaction alternatives against KnowBe4's standalone plan and other strategic alternatives." (*Id.* ¶ 112 (emphasis omitted)). Plaintiffs do not explain whether or how this portion of the statement is actionable (*see id.* ¶ 113; *compare with id.* ¶¶ 118, 130), so the Court does not address it.

applicable pleading and materiality standards (*see id.* 24–26).  The Court finds that the statements regarding the Special Committee's independence are not statements of opinion but agrees that Plaintiffs fail to plead actionable omissions with respect to the alleged conflicts.

A statement of opinion is a belief, view, or sentiment that does not express certainty, while a statement of fact "expresses certainty about a thing[.]"  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (alteration added; citations omitted).[9]  An opinion typically has "wishy-washy, subjective framing," *Carvelli*, 934 F.3d at 1322, and often contains qualifying phrases alerting a listener or reader of the statement's basis in opinion, *see Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1227–28 (11th Cir. 2022) (Lagoa, J., concurring) (citations omitted).

Defendants' characterizations of the Special Committee's independence bear none of these markers and are instead fact statements.  (*See* ACAC ¶¶ 111–12 (referencing "an independent Special Committee of KnowBe4's Board of Directors" (emphasis omitted)); *id.* ¶¶ 117, 127 (characterizing the Special Committee as "comprised solely of independent and disinterested directors" (emphasis omitted)); *id.* ¶¶ 128–29 (characterizing the Special Committee in nearly identical terms)).  And Defendants cite no authority categorizing such representations as opinion. (*See* Mot. 23 (citations omitted)).

Disclosure of the Special Committee Defendants' alleged conflicts of interest was then only required if such information was necessary to make the statements about the Committee's independence "not misleading."  *Macquarie*, 601 U.S. at 264 (quotation marks omitted); *see also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011) (citation omitted).

---

[9] *See also Carvelli*, 934 F.3d at 1322 n.7 (concluding that *Omnicare*'s analysis of statements of opinion under section 11 of the Securities Act of 1933 controls analysis of statements of opinion under Section 10(b) of the Exchange Act).

Plaintiffs assert that a series of undisclosed conflicts of interest of the Special Committee Defendants rendered these statements misleading. (*See* ACAC ¶ 113). But Plaintiffs fail to allege with particularity why that is so. The Court addresses each Special Committee Defendant's alleged conflicts of interest below.

*Venkataraman.* Plaintiffs first point to Venkataraman and his wife's investments in funds "affiliated" with KKR and Elephant Partners; and his wife's "decades-long tenure" at Morgan Stanley. (*See id.* ¶¶ 113, 118, 130). Then, Plaintiffs allege on information and belief that the couple's investments were "material and significant" (*id.* ¶ 80); that Elephant Partners is purportedly secretive (*see id.*); and that Elephant Partners often raises large sums from relatively few investors (*see id.* ¶ 81). Yet, Plaintiffs do not explain how these allegations generate conflicts of interest with respect to the Merger by describing, for example, in which KKR and Elephant Partners-affiliated funds the couple held investments, the impact (if any) of the Merger on those investments, or the relevance of Venkataraman's wife's role at Morgan Stanley. (*See generally id.*).

Plaintiffs' allegations about Venkataraman's conflicts lack particularity, *see* Fed. R. Civ. P. 9(b), and without more, "Plaintiffs fail to advance supporting facts that would put [Venkataraman]'s loyalty at issue, such as the form of reward[.]" *Vargas*, 716 F. Supp. 3d at 1308 (alterations added; citations omitted); *see also In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 215 (S.D.N.Y. 2020) (plaintiffs "failed to plead with particularity any significant connection . . . omitted from the proxy" (alteration added)). Plaintiffs thus fail to adequately plead that Venkataraman was not an independent member of the Special Committee.

*Watzinger.* Plaintiffs next allege that Watzinger invested in "KKR-affiliated funds" and "maintained friendships with several KKR- and Vista-affiliated individuals[.]" (ACAC ¶¶ 113,

118, 130 (alteration added)).  Plaintiffs supply even less detail about Watzinger's supposed conflicts than about Venkataraman's.  (*Compare id.* ¶¶ 79–83 *with id.* ¶ 84).  This lack of detail is similarly fatal — as with Venkataraman, Plaintiffs do not allege, for example, in which KKR-affiliated funds Watzinger held investments; how the Merger may have impacted those investments; information about the individuals with whom Watzinger maintained friendships; or those individuals' connections to the Merger.  (*See generally id.*).

The pleading's minimal allegations lack the requisite particularity to state a claim for securities fraud.  Further, bald, unsubstantiated allegations about a director's personal relationships do not on their own call into question his independence.  *See Vargas*, 716 F. Supp. 3d at 1308 (citing *Orman v. Cullman*, 794 A.2d 5, 27 n.55 (Del. Ch. 2002)); *see also In re Focus Fin. Partners*, No. 23-1466, 2025 WL 961488, at *7 (D. Del. Mar. 31, 2025) (holding even detailed allegations of business and personal ties, standing alone, are insufficient).  Plaintiffs fail to adequately plead that Watzinger, too, was not an independent member of the Special Committee.

*Klausmeyer.*  Lastly, Plaintiffs reference Klausmeyer's directorships on the boards of two companies — one affiliated with Vista, another with KKR.  (*See* ACAC ¶¶ 113, 118, 130).  Plaintiffs concede that Klausmeyer's service on the two boards was publicly disclosed but assert the Proxy omitted "those companies' connections to Vista and KKR" and "that Klausmeyer's positions were due to his connections[.]"  (*Id.* ¶¶ 85 (alteration added)).  Plaintiffs do not state with particularity how these alleged omissions — whose exact content is unclear — render assertions of Klausmeyer's independence misleading.  And Plaintiffs do not plead enough to infer Klausmeyer lacked independence by simply alleging board membership in outside companies.  *Cf. Staehr v. Alm*, 269 F. App'x 888, 892 (11th Cir. 2008) (plaintiff must allege "particularized facts

showing that there was any actual bias because of" the outside board positions); *McDowell v. Bracken*, 794 F. App'x 910, 915 (11th Cir. 2019).

At bottom, the allegations about the Special Committee Defendants' alleged conflicts do not "rise to the requisite level of materiality." *Vargas*, 716 F. Supp. 3d at 1308; *see also In re Mindbody*, 489 F. Supp. 3d at 215 (plaintiff must "explain *how* [a] relationship could have caused . . . divided loyalties" in the transaction (alterations and emphasis added)). As pleaded, the ACAC fails to "state with particularity" how Defendants' statements regarding the Special Committee's independence were misleading. *Carvelli*, 934 F.3d at 1318 (quotation marks and citation omitted).

Therefore, the Court finds that the statements at ACAC ¶¶ 111–12, 117, and 127–29 are not actionable.[10]

### b. *Independence of Morgan Stanley*

Plaintiffs allege Defendants made four misrepresentations or omissions regarding the independence of Morgan Stanley, the Special Committee's financial advisor. (*See id.* ¶¶ 117, 131–33). The statements at ACAC ¶¶ 117 and 131–32 describe either Morgan Stanley, or the Special Committee's financial advisors generally, as independent with respect to the engagement. (*See id.* ¶¶ 117, 131–32). The statement at ACAC ¶ 133, by contrast, is that Morgan Stanley may have invested — and may later invest — in funds managed by Vista, KKR, and Elephant Partners. (*See id.* ¶ 133).

---

[10] The same outcome is warranted for this category of allegations with respect to both Counts. Although Count I is not subject to Rule 9(b), it is subject to 15 U.S.C. section 78u-4(b)(1), which similarly requires Plaintiffs to plead actionable misstatements or omissions with particularity. *See Theoharous*, 256 F.3d at 1226 ("Because the plaintiffs failed to plead any particular facts indicating whether or how any of these statements were false or misleading, these paragraphs failed to state a claim under the PSLRA[.]" (alteration added; footnote call number omitted)). As explained, Plaintiffs' allegations regarding the Special Committee's independence are insufficiently particular — in contravention of both Rule 9(b) and the PSLRA.

Plaintiffs appear to assert liability on a duty-to-disclose theory, alleging that the Proxy omitted that Morgan Stanley "held over $550 million of investments in KKR and its affiliates." (*Id.* ¶ 118; *see also id.* ¶ 134).   Defendants contend the statements about Morgan Stanley's independence are statements of opinion and not misleading.  (*See id.* ¶¶ 117, 131–33; Mot. 27). The Court finds the statements are factual, not opinion, but agrees that Plaintiffs fail to plead actionable misstatements or omissions for this category.   The Court analyzes the statement at ACAC ¶ 133 separately, as it raises different considerations.

*ACAC ¶ 133.*  The statement at ACAC ¶ 133 is one of fact, not opinion.  It lacks "wishy-washy, subjective framing," *Carvelli*, 934 F.3d at 1322, and does not contain opinion-based qualifying language, *see Einhorn*, 42 F.4th at 1227–28 (Lagoa, J., concurring) (citations omitted); (*see* ACAC ¶ 133 ("Morgan Stanley . . . may have committed and may commit in the future to invest in private equity funds managed by Vista, the Vista Related Entities, KKR, the KKR Related Entities, [or] Elephant Partners[.]" (alterations added; emphasis omitted))).   Defendants cite no basis for a different conclusion.  (*See* Mot. 27).

The fact statement at ACAC ¶ 133 thus triggered a duty to disclose information necessary to make it "not misleading."  *Macquarie*, 601 U.S. at 264 (quotation marks omitted).  Although the statement at ACAC ¶ 133 differs in substance from the other statements in this category, Plaintiffs posit that the same omitted fact renders all the statements misleading: Morgan Stanley's $550 million in alleged investments in KKR and its affiliates.  (*See* ACAC ¶ 134; *see also id.* ¶ 118).

Yet, that alleged investment is consistent with the statement at ACAC ¶ 133, which merely discloses that Morgan Stanley may have invested — and may invest in the future — in funds managed by KKR and related entities.  Disclosure of such an investment would not contradict or

undermine the statement as made and would surely not render it misleading. Consequently, Plaintiffs fail to plead an actionable misstatement or omission with respect to the statement at ACAC ¶ 133.

*Remaining Morgan Stanley Statements.* The statements at ACAC ¶¶ 117 and 131–32 are statements of fact, not opinion. Each statement "expresses certainty about" Morgan Stanley's independence with respect to the Merger, rather than a belief, view, or sentiment. *Omnicare*, 575 U.S. at 183 (citation omitted); (*see* ACAC ¶¶ 117, 131 (referencing the Committee's "independent financial and legal advisors" (emphasis omitted)); *id.* ¶ 132 (referring to Morgan Stanley as "an independent financial advisor to the Special Committee" (emphasis omitted)); *see also* Mot. 27 (not explaining why the statements are opinion)).[11]

Plaintiffs therefore must adequately plead that disclosure of the allegedly omitted information was necessary to make these statements "not misleading[,]" *Macquarie*, 601 U.S. at 264 (alteration added; quotation marks omitted); for which they cite Defendants' failure to disclose Morgan Stanley's alleged $550 million investments in KKR and its affiliates (*see* ACAC ¶¶ 118, 134). Plaintiffs also state that "over $200 million" of the $550 million were invested "directly . . . in the KKR parent company" and "[m]uch of that investment appears to be held in Morgan Stanley's own account." (*Id.* ¶ 91 (alterations added)).[12]

___

[11] The statement at ACAC ¶ 132 contains another statement of fact, explaining that "the Special Committee determined that no conflicts had been disclosed in Morgan Stanley's relationship disclosure memorandum that would affect . . . its responsibilities as an independent financial advisor[.]" (ACAC ¶ 132 (alterations added; emphasis omitted)). Beyond emphasizing its text, Plaintiffs do not appear to allege that this portion of the statement was false or misleading or to substantiate why that would be so. (*See id.* ¶¶ 132, 134; *see also generally id.*; Resp.). So, the Court does not engage with the portion of the statement at ACAC ¶ 132 pertaining to Morgan Stanley's relationship disclosure memorandum.

[12] Plaintiffs throw in an allegation that omission of Venkataraman's wife's job at Morgan Stanley also rendered the statements at ACAC ¶¶ 131–33 misleading (*see* ACAC ¶ 134), but Plaintiffs fail to explain why that fact rendered the statements misleading (*see* Resp. 19–21). Consequently, this allegation does not adequately show Defendants' statements regarding Morgan Stanley's independence were misleading. *See* 15 U.S.C. § 78u-4(b)(1)(B).

Plaintiffs do not, however, allege how these investments caused Morgan Stanley to benefit from the Merger or otherwise create divided loyalties. *Cf. In re Mindbody*, 489 F. Supp. 3d at 215 (plaintiff must "explain *how* [a] relationship could have caused . . . divided loyalties" in the transaction (alterations and emphasis added)).  For example, Plaintiffs do not allege that Morgan Stanley invested in KKR Knowledge Investors L.P., the KKR affiliate Plaintiffs identify as "the direct owner of shares of KnowBe4 common stock."  (ACAC ¶ 38; *see also* Aff. in Support [of] Mot. to Dismiss [ECF No. 80], Ex. A, Dec. 22, 2022 Proxy Statement ("Proxy Statement") [ECF No. 80-1] 146 ("KKR & Co. Inc. . . . expressly disclaim[s] beneficial ownership of the shares held by KKR Knowledge Investors L.P." (alterations added))).[13]  Without additional facts, the ACAC lacks the particularity required to adequately plead a potential conflict of interest.  Plaintiffs' reliance on Delaware cases recognizing the materiality of conflicts of interest (*see* Resp. 20 (citations omitted)) does not cure this deficiency, because the allegations here fail, at the threshold, to satisfy applicable pleading standards.

Moreover, allegations that Morgan Stanley invested in KKR are conceptually distinct from those typically recognized to sufficiently plead a conflict of interest, which often involve nondisclosure of related engagements.  *See Baum v. Harman Int'l Indus., Inc.*, 408 F. Supp. 3d 70, 91 (D. Conn. Oct. 3, 2019) (complaint pleaded potential conflict of interest with sufficient particularity where it alleged that financial advisor to one merger party contemporaneously served as investment manager to counterparty's affiliate); *cf. Wilson v. Great Am. Indus., Inc.*, 855 F.2d

---

[13] Generally, a court limits its consideration of a motion to dismiss to the complaint and its attached exhibits. *See Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) (citation omitted).  The two exceptions are the incorporation-by-reference doctrine and judicial notice.  *See id.* (citation omitted).  Under the incorporation-by-reference doctrine, courts may consider evidence attached to a motion to dismiss if (1) the evidence is referenced in the complaint; (2) the evidence is central to the plaintiff's claim; and (3) the document's contents are undisputed — meaning its authenticity is unchallenged.  *See id.* (citations omitted). The Court considers the Proxy, attached to the Motion to Dismiss, as it satisfies all three elements.

987, 993–94 (2d Cir. 1988) (duty to disclose that one merger party's counsel had extensively represented directors of the merger counterparty).

In sum, Plaintiffs fail to adequately plead that the alleged omissions rendered Defendants' statements regarding Morgan Stanley's independence misleading.  *See Carvelli*, 934 F.3d at 1318 (discussing the Rule 9(b) and PSLRA standards (citations omitted)).  The Court thus finds that the statements at ACAC ¶¶ 117, 131–33 are not actionable.[14]

### c.  *Merger Fairness*

Plaintiffs next allege Defendants made four misrepresentations or omissions regarding the Merger's fairness to public stockholders during the Class Period.  (*See* ACAC ¶¶ 114, 121–22, 125).  Three statements represented that the Merger was fair to, and in the best interests of, KnowBe4's public stockholders.  (*See id.* ¶¶ 114, 121–22).  A fourth represented that the Special Committee believed a "value in the mid-to-high $20[]s per share range was appropriate[.]"  (*Id.* ¶ 125 (alterations added; emphasis omitted)).

Plaintiffs allege that all four statements were misleading because they failed to disclose that the Special Committee had determined that a per-share price below $25 was "[n]ot in the right zone for a transaction[,]" and that $25 to $27 per share were the "[l]ow end of guidance" and "will need some work."  (*Id.* ¶¶ 115, 124, 126 (alterations adopted; other alteration added)).[15]  According

---

[14] Although Count I is not subject to Rule 9(b), it similarly fails as to this class of statements under the PSLRA.  *See Theoharous*, 256 F.3d at 1226–27 (citing 15 U.S.C. § 78u-4(b)(1)).

[15] Plaintiffs also allege that the statements at ACAC ¶¶ 121–22 were misleading for the same reasons alleged regarding the other categories of statements: the Special Committee's conflicts; Morgan Stanley's conflicts; and KKR's increased rollover.  (*See* ACAC ¶¶ 123–24; Resp. 21–22 (suggesting all statements in the category, not just those at ¶¶ 121–22, are actionable on all four bases); Reply 14 (referencing Plaintiffs' argument "that the Committee's fairness conclusion was misleading on the ground that Plaintiffs' other omission claims are meritorious" (emphasis omitted))).  Plaintiffs vaguely attempt to connect the Committee's and Morgan Stanley's alleged conflicts to the assertion that the Individual Defendants, KKR, Vista, and Elephant Partners did not believe the Merger was in the public stockholders' best interest (*see* ACAC ¶ 123), and allege, without elaboration, that all Defendants were aware of KKR's increased rollover

to Defendants, the statements are nonactionable opinions regarding the fairness of a transaction. (*See* Mot. 27–28).  The Court disagrees.

Plaintiffs concede that the Merger fairness statements are opinions.  (*See* Resp. 21–22).  An opinion is actionable under the securities laws if (1) the speaker did not sincerely hold the opinion or (2) the statement included an embedded untrue statement of fact.  *See Carvelli*, 934 F.3d at 1322 (citing *Omnicare*, 575 U.S. at 183–86).  In addition, to plead that an opinion was misleading by omission, a plaintiff "must identify particular (and material) facts going to the basis for the issuer's opinion[ — ]facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have[ — ]whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 194 (alterations added). "That is no small task for an investor."  *Id.*

Plaintiffs allege that considering the Special Committee's undisclosed internal valuation determinations, the Special Committee could not have sincerely believed the Merger price was fair; and omission of those determinations rendered the fairness representations misleading.  (*See* ACAC ¶¶ 115, 123–24; Resp. 21).  Defendants insist that Plaintiffs merely contest the omission of "Defendants' supposedly improper motives" in structuring the transaction, which does not give rise to liability.  (Mot. 28 (citation omitted)).

---

(*see id.* ¶ 124).  Plaintiffs similarly seek to tie the statement at ACAC ¶ 114 to their conflicts theories.  (*See id.* ¶ 115 (referencing the Individual Defendants' "knowledge of the conflicted and unfair sales process")).

 But where it is unclear why Plaintiffs allege certain statements to be misleading, it is not for the Court to "pair[]" each statement to the same repeated "list of deficiencies."  *City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l Inc.*, 806 F. Supp. 2d 1267, 1293 (N.D. Ga. 2011) (alteration added); *see also In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005).  Consequently, the Court construes the ACAC to allege that the statements at ¶¶ 114, 121–22 are misleading only for failure to disclose the Board's pricing conclusions.  Even if Plaintiffs had classified the portions of the statement at ACAC ¶ 121 referencing the Committee's and Morgan Stanley's independence into those respective categories, those statements would not be actionable, as explained above.

The Proxy stated that the Special Committee believed a per-share value in the "mid-to-high $20[]s" was "appropriate" (ACAC ¶ 125 (alteration added; emphasis omitted)); and the Merger was fair to public stockholders (*see id.* ¶¶ 114, 121–22). Simultaneously, however, the Special Committee internally regarded values below $25 as "[n]ot the right zone," and values between $25 and $27 as at the "[l]ow end of guidance[,]" requiring "some work." (*Id.* ¶ 126 (alterations adopted; other alteration added); *see also id.* ¶ 95). These allegations support a reasonable inference that the Special Committee believed prices below $27 per share were inadequate — values under $25 being unacceptable and values between $25 and $27 representing an undervaluation requiring further negotiation — and that a $24.90 per-share valuation fell outside the "right zone[.]" (*Id.* ¶¶ 115, 124 (alteration added)).

Because this omitted valuation framework "conflict[ed] with what a reasonable investor would take from the statement[s,]" *Omnicare*, 575 U.S. at 189 (alterations added), Plaintiffs adequately allege that it was misleading to represent the Special Committee believed the entire mid-to-high $20s range was appropriate and that the Merger was fair to public stockholders, *see also Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 177 (2d Cir. 2020) ("When omitted contrary facts substantially undermine the conclusion a reasonable investor would reach from a statement of opinion, that statement is misleading and actionable."). On these allegations, Plaintiffs plead actionable omissions as to the statements at ACAC ¶¶ 114, 121–22, and 125.[16]

Defendants devote most of their briefing to the proposition that a board's opinion regarding transaction fairness is not actionable unless "the statement also expressly or impliedly asserted something false or misleading about its subject matter." (Mot. 28 (quotation marks omitted; citing

---

[16] Because the statements at ACAC ¶¶ 114, 121–22 are actionable due to the omission of material information, the Court does not reach Plaintiffs' argument that the Special Committee did not sincerely hold the belief it expressed regarding the Merger's fairness. (*See* ACAC ¶¶ 115, 123–24).

*Smykla v. Molinaroli*, 85 F.4th 1228, 1237 (7th Cir. 2023)); *see also* Reply 13–14). Defendants insist that Plaintiffs' theory hinges on the Special Committee's "hidden motivation[,]" which does not create an actionable omission. (*See* Mot. 28 (alteration added; citing *Smykla*, 85 F.4th at 1238)). Defendants misconstrue both Plaintiffs' argument and *Smykla*'s reasoning.

Here, Plaintiffs allege omission of the Special Committee's internal valuation framework, not undisclosed motives for structuring the transaction. (*See* ACAC ¶¶ 115, 123–24; Resp. 21). Certainly, that omission is akin to the hypothetical *Smykla* itself proffered as actionable — where "advisors had advised [the] directors that the . . . price was unfairly low, . . . [which] would be a material fact a reasonable shareholder would want to know." *Smykla*, 85 F.4th at 1238–39 (alterations added; citing *Omnicare*, 575 U.S. at 188–89); *see also generally IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850 (11th Cir. 2016).

For these reasons, the Court finds that the statements at ACAC ¶¶ 114, 121–22, and 125 are actionable.

### d. *KKR's Rollover*

Finally, Plaintiffs allege that Defendants made one misrepresentation or omission regarding KKR's decision to increase its rollover after learning the Merger price. (*See* ACAC ¶ 136; *see also id.* ¶¶ 97–100, 137–139). The Proxy states that on September 13, 2022, Morgan Stanley met with KKR to discuss "the potential quantum" of the KKR rollover, and Morgan Stanley then "conveyed such interest and potential quantum to" Vista. (*Id.* ¶ 136 (emphasis omitted)). The Proxy later specifies that KKR was rolling over $300 million. (*See id.*).

Plaintiffs assert the statement in ACAC ¶ 136 was misleading because it omitted that on September 13, 2022, KKR communicated to Morgan Stanley an intention to roll over only $200 million into the post-Merger entity (*see id.* ¶ 138), meaning that KKR later "increased its planned

rollover amount after learning of the final agreed deal price" (*id.* ¶ 137).  Defendants assert that omission of any rollover estimates made before Vista submitted a formal offer was not misleading because the estimates were preliminary and not required to be disclosed.  (*See* Mot. 28–29 (citation omitted)).  Defendants fail to persuade.

As stated, "'silence, absent a duty to disclose, is not misleading under Rule 10b–5.'" *Carvelli*, 934 F.3d at 1317 (alteration adopted; quoting *Basic Inc.*, 485 U.S. at 239 n.17).  A duty to disclose arises only "when 'an omitted fact was necessary to render a preexisting statement not misleading, or because securities law otherwise required its disclosure.'"  *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d at 1276 (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 681 (11th Cir. 2010)).  Such statements "must be read in the context of all available information." *Id.* at 1277.

In the context of all information disclosed in the Proxy, Plaintiffs plead an actionable omission based on this statement.  The Proxy disclosed that on September 8, 2022, Morgan Stanley discussed with the Special Committee "certain signaling effects of a significant rollover of KKR's, Elephant Funds'[,] and Mr. Sjouwerman's equity in a potential acquisition . . . and how conveying this information in advance of Vista's proposal or an agreement on price may impact the pricing for the transaction."  (Proxy Statement 53; *see also* ACAC ¶ 99).  The Proxy also disclosed the discussions regarding KKR's potential rollover on September 13, 2022 and the final KKR rollover of $300 million.  (*See* ACAC ¶¶ 136–37).  Plaintiffs further allege that, at the time, Morgan Stanley and the Special Committee were expecting a per-share valuation in the mid-to-upper $20s.  (*See id.* ¶ 137).

By choosing to speak on the discussions regarding KKR's potential rollover, the signaling effects of a significant rollover, and the potential of the rollover amount to affect the transaction's

value, Defendants triggered a duty to disclose facts necessary to make the information they volunteered about the rollover discussions (*see id.* ¶ 136) not misleading.  There is no general duty to disclose the existence of preliminary negotiations regarding a transaction, but "a duty to disclose financial negotiations arises when . . . secret information renders prior statements about those negotiations misleading." *Zeller v. N. Biomedical Rsch., Inc.*, No. 22-cv-1103, 2024 WL 5344463, at *5 (W.D. Mich. Oct. 31, 2024) (alteration added; citations omitted).  Plaintiffs adequately allege that Defendants contravened that duty by omitting KKR's decision to significantly depart from the rollover discussed previously — implying that KKR increased its rollover because it believed KnowBe4's ultimate valuation was relatively low.  *Cf. Bacon v. Stiefel Lab'ys, Inc.*, 677 F. Supp. 2d 1331, 1343–44 (S.D. Fla. 2010) (finding the decision to communicate stock price to buyers triggers a duty to disclose negotiations that might indicate the disclosed price is an undervaluation).

Defendants further argue this omission was immaterial.  (*See* Mot. 29).  "Materiality, though, is a question of fact that may rarely be resolved at the motion to dismiss stage."  *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d at 1364 (citing *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d at 201).  And courts "may not dismiss a securities fraud complaint on the basis of materiality unless the alleged misrepresentations are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Luczak*, 812 F. App'x at 924 (quotation marks and citation omitted).  On these facts, the Court does not find Defendants' omission "so obviously unimportant" as to be inactionable as a matter of law.

Consequently, the Court finds that the statements in ACAC ¶ 136 are actionable.

### 3.    Scienter & Negligence

Having concluded Plaintiffs have adequately pleaded actionable misstatements and omissions, the Court turns to Defendants' next argument for dismissal: that Plaintiffs fail to plead

negligence and scienter for their Section 14(a) and Section 10(b) claims, respectively.  (*See* Mot. 29–33).  The Court considers this issue only with respect to the surviving statements.

Recall that the PSLRA requires Plaintiffs to state with particularity facts giving rise to a "strong inference" of scienter that "must be more than merely plausible or reasonable[.]"  *Tellabs*, 551 U.S. at 314 (alteration added).  Like materiality, scienter presents a "mixed question[] of law and fact that must typically be resolved by the factfinder."  *Luczak*, 812 F. App'x at 924 (alteration added; citation omitted).  A complaint adequately alleges scienter "only if a reasonable person would — not merely could — deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged[.]"  *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d at 1281 (alteration added; quotation marks and citation omitted).  This inquiry demands a "comparative evaluation" of the inferences urged by Plaintiffs and any "competing inferences rationally drawn from the facts alleged."  *Tellabs*, 551 U.S. at 314.

Although the parties do not point to an Eleventh Circuit case that has explicitly decided whether "group pleading" — that is, "a presumption of group responsibility for statements and omissions" — satisfies the PSLRA's scienter requirement, *Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1018–19 (11th Cir. 2004),[17] Plaintiffs may still "aggregate facts to imply scienter as to each Defendant" *Stevens v. GlobeTel Commc'ns Corp.*, No. 06-21071-Civ, 2007 WL 9701197, at *10 n.4 (S.D. Fla. Apr. 4, 2007*)* (citation omitted).  *See also Tellabs*, 551 U.S. at 310 (urging courts to "assess all the allegations holistically"); *Bush v. Blink Charging Co.*, No. 20-23527-Civ, 2023 WL 8263037, at *9 (S.D. Fla. Nov. 27, 2023) (holding courts need not "infer scienter from individual facts alone" and may do so "from an aggregation of particularized facts" (citation omitted)).

---

[17] Many courts in this Circuit have held that it does not.  *See, e.g.*, *Metro. Transp. Auth. Defined Benefit Pension Plan Master Tr. v. Welbilt, Inc.*, No. 18-cv-3007, 2020 WL 905591, at *4 (M.D. Fla. Feb. 6, 2020); *In re Health Ins. Innovations Sec. Litig.*, No. 17-cv-2186, 2019 WL 3940842, at *22 n.10 (M.D. Fla. June 28, 2019); *Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1359–60 (S.D. Fla. 2015).

CASE NO. 25-22574-CIV-ALTONAGA/Reid

*Analysis of Plaintiffs' Scienter Allegations.*   Plaintiffs allege that seven grounds establish scienter: (1) Vista was motivated to buy out KnowBe4 cheaply; (2) KKR, Elephant Partners, and Sjouwerman rolled over about half their equity into post-Merger KnowBe4, creating motivations that conflicted with those of public stockholders; (3) KKR increased its rollover after learning of the Merger valuation; (4) the Individual Defendants were conflicted with respect to the Merger; (5) the Special Committee Defendants knew the Merger process favored Vista; (6) the Special Committee knew the Merger consideration was too low; and (7) Vista, KKR, Elephant Partners, and Sjouwerman down-converted their shares to manipulate the vote.  (*See* ACAC ¶¶ 142–77). While some of these bases are insufficient to show scienter, Plaintiffs plead enough facts to raise a compelling inference of scienter as to the surviving statements.   The Court addresses each contention in turn.

First, Plaintiffs advance a theory that Vista was motivated to buy out KnowBe4 cheaply. (*See id.* ¶¶ 143–49; Resp. 27–28).   Second and relatedly, Plaintiffs assert that KKR, Elephant Partners, and Sjouwerman rolled over roughly half of their KnowBe4 holdings, incentivizing them to favor a lower per-share price.  (*See* ACAC ¶¶ 150–55).   While "personal financial gain may weigh heavily in favor of a scienter inference," *Tellabs*, 551 U.S. at 325, "the Eleventh Circuit has rejected the notion that 'allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter[,]'" *Jackson Inv. Grp., LLC v. Thomas*, 325 F. Supp. 3d 1334, 1349 (N.D. Ga. 2017) (alterations added; quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir. 1999)); *see also Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 428–29 (S.D.N.Y. 2010) (holding a generalized motive to earn profits insufficient to allege scienter (citations omitted)).

Here, Plaintiffs allege more than motive and opportunity alone: they allege that existing KnowBe4 stockholders — Vista, KKR, Elephant Partners, and Sjouwerman — sought to depress KnowBe4's value to obtain equity in the post-Merger entity at a favorable price.  This supports an inference of scienter.  *See In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 52 (2d Cir. 2025) ("[A]lleging the artificial deflation of stock can be sufficient.  The desire of an acquiring entity to save money by acquiring a target company at a lower price is not a motive that every corporate insider has and gives rise to concrete financial gain." (alteration added; citations omitted)); *Staehr v. Miller*, No. 08-20990-Civ, 2010 WL 11030716, at *7 (S.D. Fla. Mar. 31, 2010) ("[T]he typical motive for a corporation to repurchase its own stock [is that] the corporation believes that the stock is undervalued." (alterations added)).[18]

Third, Plaintiffs allege that KKR increased its rollover after learning of the per-share Merger price, indicating KKR believed the per-share price was low.  The timing of KKR's increased rollover further bolsters an inference that KKR believed KnowBe4's public stockholders were being bought out at a low price.  *Cf. Mizzaro*, 544 F.3d at 1253 ("[T]he timing of stock trades by insiders also may be relevant to inferring scienter." (alteration added)); *In re Ocwen Fin. Corp. Sec. Litig.*, No. 14-81057-Civ, 2015 WL 12780960 (S.D. Fla. Sep. 4, 2015) (noting the lack of suspicious stock purchases weighed against an inference of scienter).

Fourth, Plaintiffs allege that the Individual Defendants' conflicts of interest with respect to the Merger create an inference of scienter.  (*See* ACAC ¶¶ 159–67).  Plaintiffs assert that Daly, Shanley, and Wilson were conflicted because beyond being Board members of KnowBe4, they

---

[18] Despite Defendants' contentions to the contrary (*see, e.g.*, Mot. 31–32; Reply 15), a motive to depress KnowBe4's share price is not incompatible with Defendants' decisions to cash out significant percentages of their KnowBe4 holdings in the Merger.  An investor rolling over a significant portion of its equity in the company might not mind selling some equity at a low price if that meant it could remain invested in the company at a low valuation and watch the rolled-over investment grow over time.

were co-founder and general partner of Elephant Partners, partner at KKR, and senior advisor at KKR, respectively. (*See id.* ¶ 160). According to Plaintiffs, because these Defendants were employed by entities rolling over their equity and therefore motivated to undervalue KnowBe4, so, too, were they. (*See id.* ¶ 161).

While not perfectly clear, Plaintiffs' attempt to allege scienter for Daly, Shanley, and Wilson is unpersuasive. Alleging that these Defendants were agents of entities motivated to undervalue KnowBe4 does not, without more, bolster an inference of scienter. *See In re Ocwen*, 2015 WL 12780960, at *10 ("Merely holding a high level position is not a compelling indicia of scienter." (citations omitted)); *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00-Civ-1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) ("[B]oilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter." (alteration added)). And Plaintiffs allege no "concrete benefits" Daly, Shanley, and Wilson would receive from the alleged misstatements. *In re Shanda*, 128 F.4th at 52; *see also Tellabs*, 551 U.S. at 326 ("[O]missions and ambiguities count against inferring scienter[.]" (alterations added)). The Court thus declines to credit the scienter allegations related to Defendants Daly, Shanley, and Wilson. (*See* ACAC ¶¶ 160–61).

Plaintiffs also allege that the Special Committee Defendants' conflicts with respect to the Merger, and their compensation for service on KnowBe4's Board of Directors, contribute to a finding of scienter. (*See id.* ¶¶ 163–65). As discussed, Plaintiffs' allegations regarding the Special Committee Defendants' supposed conflicts of interest are conclusory and insufficiently particular to allege actionable misstatements or omissions. These allegations similarly fail to support an inference of scienter. *See Thompson*, 610 F.3d at 634 ("conclusory allegations are insufficient" to establish scienter (citing *Tellabs*, 551 U.S. at 314)).

CASE NO. 25-22574-CIV-ALTONAGA/Reid

Separately, Plaintiffs assert that the Special Committee Defendants received restricted stock units ("RSUs") whose vesting accelerated upon a transaction, generating a significant windfall when they approved the Merger.  (*See* ACAC ¶¶ 162, 166; *see also* Mot. 16).  The Special Committee Defendants' RSUs modestly bolster a scienter inference.  *See Godinez v. Alere Inc.*, 272 F. Supp. 3d 201, 217 (D. Mass. 2017) (crediting prospect of change-in-control payments as one among several factors in scienter analysis (citing *Tellabs*, 551 U.S. at 325)).

Fifth, Plaintiffs contend that the Special Committee Defendants allowed Vista to maintain an "unfair timing and information advantage" in the sales process preceding the Merger.  (ACAC ¶ 168).  Yet, Plaintiffs do not explain how these purported advantages create a strong inference that Defendants knowingly omitted the Special Committee's price conclusions or KKR's rollover increase.  (*See id.* ¶¶ 168–69).  Because the Court cannot "forge a tenuous chain of inferences" on Plaintiffs' behalf, *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1013 (S.D. Cal. 2000), allegations regarding Vista's unfair advantage in the sales process fail to contribute to Defendants' scienter.

Sixth, Plaintiffs point to the Special Committee Defendants' conclusions that a $25 per-share valuation was not in "the right zone" and that the $25 to $27 range was "low" as evidence of their knowledge that KnowBe4 was undervalued in the Merger.  (ACAC ¶ 170 (alteration adopted)).  The Special Committee's access to this information — including Morgan Stanley's reiteration of that view — supports an inference of scienter.  *See Theodore v. Purecycle Techs., Inc.*, No. 21-cv-809, 2023 WL 4035880, *6 (M.D. Fla. June 15, 2023) ("In the Eleventh Circuit, a plaintiff may prove knowledge or severe recklessness by providing evidence that defendants possessed knowledge of facts or access to information contradicting their public statements." (quotation marks and citations omitted)).

29

Seventh, Plaintiffs allege that Vista, KKR, Elephant Partners, and Sjouwerman converted their KnowBe4 shares from Class B to Class A to manipulate the Merger vote.  (*See* ACAC ¶¶ 173–76).  But Plaintiffs fail to explain how this conversion enabled Defendants to manipulate the Merger vote, which required approval from all the public stockholders voting together as a class — a vote in which Plaintiffs do not allege Defendants could participate after this conversion.  (*See id.* ¶ 174).  More importantly, Plaintiffs do not explain how this supposed vote manipulation scheme creates a strong inference that Defendants knowingly omitted the Special Committee's price conclusions or KKR's rollover increase.  As stated, the Court cannot make a series of inferential leaps to bolster scienter for Plaintiffs and thus does not credit this scienter theory.  *See Reiger*, 117 F. Supp. 2d at 1013.

**Conclusions Regarding Scienter & Negligence.**  Viewed in isolation, many of these facts would not demonstrate scienter.  But each fact is "one more piece of the puzzle[.]"  *Thorpe*, 111 F. Supp. 3d at 1376 (alteration added; quotation marks and citation omitted).  Viewed holistically, the ACAC raises a strong inference that Venkataraman, Klausmeyer, Watzinger, Sjouwerman, KKR, Elephant Partners, and Vista acted with scienter as to the two categories of actionable misstatements.  A reasonable person would find this inference of scienter at least as cogent and compelling as any opposing inference.  Because Plaintiffs adequately allege scienter for these Defendants as to the Section 10(b) claim, Plaintiffs likewise plead the negligence required for the Section 14(a) claim against Venkataraman, Klausmeyer, Watzinger, Sjouwerman, KKR, Elephant Partners, and Vista.  *See Theodore*, 2023 WL 4035880, at *12.

The Court next addresses where Plaintiffs' allegations nevertheless fall short.  While scienter analysis requires a "holistic[]" assessment of the allegations "taken collectively," *Tellabs*, 551 U.S. at 326 (alteration added), "the complaint must allege facts supporting a strong inference

of scienter *for each defendant* with respect to each violation." *Mizzaro*, 544 F.3d at 1238 (emphasis added; quotation marks and citation omitted).

First, Plaintiffs allege no facts supporting scienter as to KnowBe4. (*See* ACAC ¶¶ 143–77; Resp. 26–31). Second, as stated, the allegations regarding Daly, Shanley, and Wilson do not support an inference of scienter, and even when Plaintiffs' scienter allegations are aggregated, *Stevens*, 2007 WL 9701197, at *10 n.4, Plaintiffs do not establish scienter as to these three Defendants simply by associating them with KKR's and Elephant Partners' incentive structures. Absent sufficient scienter allegations as to Daly, Shanley, and Wilson, Plaintiffs' Section 10(b) claim against them fails. *See Mizzaro*, 544 F.3d at 1238; *see also e.g.*, *Plumbers, Pipefitters & Apprentices Loc. No. 112 Pension Fund v. Vestis Corp.*, No. 24-cv-02175, 2025 WL 2797712, at *12 (N.D. Ga. Sep. 30, 2025) (dismissing Section 10(b) claim against defendant lacking sufficient scienter allegations). Consequently, Count II is dismissed as to KnowBe4, Daly, Shanley, and Wilson.

For their Section 14(a) claim against KnowBe4, Daly, Shanley, and Wilson, Plaintiffs must allege that Defendants acted negligently. *See Biver*, 2014 WL 2441891, at *4; *Craig v. Target Corp.*, No. 23-cv-599, 2024 WL 4979234, at *15 (M.D. Fla. Dec. 4, 2024). This requires only a showing that the "proxy solicitation contain[ed] a misleading misrepresentation or omission[,]" regardless of the issuer's state of mind. *Beck*, 559 F.3d at 682 (alterations added). KnowBe4 and these three Individual Defendants disseminated the Proxy (*see* ACAC ¶¶ 20, 31, 33, 35), and Plaintiffs have adequately alleged it contained misleading misrepresentations or omissions. Therefore, Plaintiffs adequately allege negligence as to KnowBe4, Daly, Shanley, and Wilson.

 4.      **Causation**[19]

Defendants contend that Plaintiffs have "not adequately allege[d] loss causation" (Mot. 33 (alteration added)) — i.e., the "causal connection" between the alleged misstatements and purported economic harm, *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1241 (11th Cir. 2023) (quotation marks and citations omitted).  Loss causation under Counts I and II requires that the fraud "be both the but-for and proximate cause of the plaintiff's later losses." *Id.* (quotation marks and citation omitted); *see also Jabil Cir., Inc.*, 594 F.3d at 796–97 (loss causation required for Section 14(a) claim).

To plead loss causation, Plaintiffs need not show that the Defendants' misconduct was the "sole and exclusive cause" of their injury; instead, Plaintiffs need only show that Defendants' misconduct was a "substantial" or "significant contributing cause." *FindWhat Inv. Grp.*, 658 F.3d at 1309 (quotation marks and citation omitted).  Nor do the PSLRA and Rule 9(b)'s heightened pleading standards apply to loss causation.  *See Jastram v. NextEra Energy Inc.*, No. 24-13372, 2025 WL 3293701, at *9 (11th Cir. Nov. 26, 2025).

Plaintiffs contend that misstatements and omissions in the Proxy and related public filings harmed public stockholders in three ways: "(1) the tender of shares into the Merger for less than fair value; (2) the loss of their ability to exercise their state law appraisal rights on an informed basis; and (3) for the Section 10(b) class, the sale of shares during the Class Period at an artificially deflated value."  (Resp. 31 (citing ACAC ¶¶ 178–79, 181, 183)).  Defendants insist the pleading's allegations of loss are "entirely speculative and untethered to any concrete event or market reaction[.]"  (Mot. 33 (alteration added)).  Defendants also note that the unaffiliated stockholders

---

[19] Plaintiffs are required to plead both "transaction causation" and "loss causation" to prevail on their Section 20(a) claim.  *See Robbins v. Koger Props., Inc.*, 116 F.3d 1141, 1147 (11th Cir. 1997).  Defendants do not contend Plaintiffs have not adequately alleged transaction causation.  (*See generally* Mot.; Reply).

overwhelmingly approved the merger; received a 44% premium on their shares; and faced no competing bidders.  (*See* Reply 17–18).

While Defendants raise legitimate concerns, "such issues are beyond the scope of a motion to dismiss."  *Vargas*, 716 F. Supp. 3d at 1311 (citations omitted); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 n.35 (5th Cir. 2009) ("[S]everal circuit courts and district courts point out that it is often inappropriate to use a Rule 12(b)(6) motion as a vehicle to resolve disputes over 'loss causation.'" (alteration added; collecting cases)); *Craig*, 2024 WL 4979234, at *14 ("[L]oss causation is a fact-based inquiry that should not typically be resolved on a Rule 12(b)(6) motion[.]" (alterations added; quotation marks and citations omitted)).  Consequently, the Court declines to dismiss Counts I and II for lack of loss causation.

### C.        Section 20(a) Claim (Count III)

Finally, Defendants move to dismiss Plaintiffs' Section 20(a) claim in Count III, contending that the claim depends on adequately pleading an underlying securities violation and that Plaintiffs fail to plead facts establishing control.  (*See* Mot. 35–40; Reply 19–22).

To state a claim under Section 20(a), Plaintiffs must allege: (1) a primary securities-law violation; (2) Defendants' power to control KnowBe4's general business affairs; and (3) Defendants' power to control or influence the specific corporate policy that gave rise to the primary violation.  *See Kinnett v. Strayer Educ., Inc.*, 501 F. App'x 890, 894 (11th Cir. 2012) (citation omitted).  Because Plaintiffs have adequately alleged a primary securities-law violation against each Defendant, the Court only addresses Defendants' remaining argument: that Plaintiffs fail to plead control.

Each Defendant's conduct and position must be evaluated individually for purposes of establishing Section 20(a) liability against that defendant.  *See Theodore*, 2023 WL 4035880, at

CASE NO. 25-22574-CIV-ALTONAGA/Reid

*10 (citing *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1252 (N.D. Ga. 2019)). As such, "[w]hether a given defendant exercises control over the liable entity is a factual inquiry not appropriately resolved on the pleadings absent sufficient discovery." *Id.* (citing *Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1190 (S.D. Fla. 2005)). It is premature at this juncture to determine the merits of Section 20(a) liability against Defendants — as a result, Plaintiffs' Section 20(a) claim survives with respect to the adequately pleaded primary violations.

## IV. CONCLUSION

In sum, a few of the alleged misstatements and omissions, as pleaded in the Consolidated Amended Class Action Complaint, are actionable. Plaintiffs have sufficiently pleaded scienter or negligence and adequately alleged causation. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[ECF No. 79]** is **GRANTED in part**. Should Plaintiffs choose to amend, they must advise Defendants of their intent to do so by **January 7, 2026** and must file their amended pleading by **January 18, 2026**. Should Plaintiffs inform Defendants they do not intend to amend, an answer to the Consolidated Amended Class Action Complaint must be filed by **January 18, 2026**. In addition, the parties shall submit a joint scheduling report no later than **January 21, 2026**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of December, 2025.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record