UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-22574-ALTONAGA/REID

In re:

KNOWBE4, INC.
SECURITIES LITIGATION

_____/

**DEFENDANTS KEVIN KLAUSMEYER, SHRIKRISHNA VENKATARAMAN, GERHARD WATZINGER, ELEPHANT PARTNERS, ELEPHANT PARTNERS I, L.P., ELEPHANT PARTNERS II, L.P., ELEPHANT PARTNERS 2019 SPV-A, L.P., ELEPHANT PARTNERS II-B, L.P., KKR KNOWLEDGE INVESTORS, L.P., KKR & CO. INC., VISTA EQUITY PARTNERS MANAGEMENT, LLC, AND SJOERD SJOUWERMAN'S MOTION FOR PARTIAL RECONSIDERATION OF THE ORDER ON THE MOTION TO DISMISS**

1

Pursuant to Rule 54(b) and the inherent authority of the Court, Defendants Kevin Klausmeyer, Shrikrishna Venkataraman, Gerhard Watzinger, Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L. Elephant Partners II-B, L.P., KKR Knowledge Investors, L.P., KKR & Co. Inc., Vista Equity Partners Management, LLC, and Sjoerd Sjouwerman ("Defendants"), submit this Motion for Partial Reconsideration of the Court's December 23, 2025 Order.  (ECF No. 100 ("Order").)

## INTRODUCTION

Defendants respectfully move for partial reconsideration of the Court's December 23, 2025 Order because it deferred analysis of loss causation on the Section 10(b) claim as beyond the scope of Rule 12(b)(6).[1]  That was clear error.  Supreme Court and Eleventh Circuit precedent require dismissal of a Section 10(b) claim at the pleading stage where, as here, a plaintiff pleads no more than a speculative possibility that a misrepresentation caused an economic loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346–347 (2005); *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1241–1249 (11th Cir. 2023); *Meyer v. Greene*, 710 F.3d 1189, 1200–1202 (11th Cir. 2013).

To plead loss causation in this Circuit, a complaint "must plausibly allege that a fraudulent statement inflated the security price—and that this inflated price was later eroded in a way that relates back to the fraud." *Jastram v. NextEra Energy, Inc.*, 161 F.4th 693, 708 (11th Cir. 2025). Plaintiffs do not allege the inflation of KnowBe4's stock price or that any truth emerged and caused a price decline.  Instead, they invert the usual paradigm and claim stockholders sold at a *depressed* price by approving the merger.  But selling at a purportedly deflated price (like buying at an inflated price) is not itself a relevant economic loss.  At a minimum, Plaintiffs also need to plausibly allege that they would have made more money if the "truth" had come out.  They do not. The Court should reconsider its Order and dismiss the Section 10(b) claim for failure to plead loss causation.

## RELEVANT BACKGROUND

On October 7, 2025, Defendants moved to dismiss for failure to state a claim under Sections 10(b) and 14(a) of the Exchange Act.  Defendants argued that Plaintiffs failed to plead

---

[1] This motion only seeks reconsideration of the Court's order as it pertains to the Section 10(b) claim.  Although Defendants continue to believe that Plaintiffs failed to adequately plead loss causation for both their Section 10(b) and Section 14(a) claims, they acknowledge that the Eleventh Circuit has more clearly articulated the pleadings requirements for loss causation in the context of a Section 10(b) claim.

actionable misstatements or omissions, failed to plead scienter or negligence, and failed to plead a plausible theory of loss causation.  (ECF No. 79.)  On December 23, 2025, the Court granted the motion in part.  As to loss causation, the Court acknowledged Defendants' "legitimate concerns" about the lack of any revelation of the "truth" or related price reaction, but concluded those issues were not properly resolved on a Rule 12(b)(6) motion.  (Order at 32–33.)

## LEGAL STANDARD

Under Rule 54(b), "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims."  Fed. R. Civ. P. 54(b).  A court may reconsider a prior order to correct clear error or prevent manifest injustice.  *Barr v. Harvard Drug Grp., LLC*, 2015 WL 11181968, at \*3 (S.D. Fla. Dec. 7, 2015).

## ARGUMENT

This motion seeks reconsideration on one issue: whether Plaintiffs adequately alleged loss causation for their Section 10(b) claim.  Defendants do not seek reconsideration lightly, but the implications of deferring loss causation scrutiny are significant.  Securities class actions "can extort a great deal of undeserved settlement money if the courts do not filter out the unfounded ones early enough to avoid huge litigation expenses."  *Ronconi v. Larkin*, 253 F.3d 423, 428 (9th Cir. 2001); *accord Meyer*, 710 F.3d at 1196.  Deferring analysis here exposes Defendants to significant costs on a facially deficient claim.

### A. The Court Committed Clear Error in Deferring Consideration of Loss Causation.

The Order acknowledges Defendants' "legitimate concerns" about loss causation but defers analysis.  (Order at 33.)  That was error.  The Eleventh Circuit directs courts to dismiss Section 10(b) claims that allege only a speculative possibility of economic loss.  *See Meyer*, 710 F.3d at 1196 ("[L]oss causation polices the realm of § 10(b) claims, guarding against their use as an *in terrorem* device to force companies to settle claims simply to avoid the cost and burden of litigation.").  As recently as November 2025, the Eleventh Circuit reaffirmed that courts should evaluate loss causation allegations in resolving a motion to dismiss.  *See Jastram*, 161 F.4th at 708.  In line with this authority, district courts routinely dismiss complaints that fail to plausibly allege loss causation.  *See, e.g.*, *In re Witness Sys., Inc. Sec. Litig.*, 2008 WL 9020540, at \*10 (N.D.

3

Ga. Mar. 31, 2008) ("[W]here the pleadings do not set forth a basis to establish loss causation, dismissal on that basis is mandated.") (collecting cases).

Plaintiffs contend here that the merger price undervalued the Company and that stockholders somehow would have received more money had they known the "truth." (¶¶ 178–183.)[2] But that is not a fact; it is an inference that Plaintiffs urge the Court to draw. As Defendants' motion explained, that inference is not warranted. (ECF No. 79 at 33–34; ECF No. 99 at 17–19.) Among other things, it is undisputed that the stock price rose significantly after the alleged misrepresentations (the merger price represented a 44% premium over the stock's closing price on the day before the merger was announced), there were no competing bids, and unaffiliated stockholders overwhelmingly approved the transaction. Those undisputed facts bear directly on the plausibility of Plaintiffs' claim. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2023 WL 4249356, at *13 (S.D.N.Y. June 29, 2023) ("the SAC's notion that, had the tenderer shareholders voted down the Merger, the market price for Qihoo's [share] would have risen to its significantly higher valuations is contradicted by how the market, in fact, valued Qihoo prior to the Merger's announcement").

The Court quotes *Vargas* for the proposition that "such issues are beyond the scope of a motion to dismiss." (Order at 33.) But the district court in *Vargas* addressed only a Section 14(a) claim, not Section 10(b), and it simply declined to resolve a factual dispute about a benchmark transaction's valuation implications. *Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1311 (S.D. Fla. 2024). There are no factual disputes here; Plaintiffs simply assert the merger price was too low. (¶¶ 178–183.) Likewise, the other cases cited in the Order—*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) and *Craig v. Target Corp.*, 2024 WL 4979234 (M.D. Fla. Dec. 4, 2024)—do not stand for the proposition that loss causation is categorically unsuited for Rule 12(b)(6). But even if they did, they could not be reconciled with binding Eleventh Circuit precedent. The clear takeaway from cases like *Meyer* and *MacPhee* is that plaintiffs must do more at the pleading stage than declare that a misrepresentation caused them economic harm, they must plausibly allege it. Without facts supporting a causation theory, a complaint fails to state a claim. *See MacPhee*, 73 F.4th at 1242; *see also City of Warren Gen. Employees' Ret. Sys. v.*

---

[2] References to "¶" are to the paragraphs of the Consolidated Amended Class Action Complaint. (ECF No. 70.)

*Teleperformance SE*, 2024 WL 2320209, at \*22 (S.D. Fla. May 22, 2024) (Altonaga, C.J.) (plaintiffs must allege more than the "mere possibility of loss causation").

### B.  The Amended Complaint Does Not Allege a Relevant Economic Loss.

The Court should reconsider its decision on loss causation to correct clear error and prevent manifest injustice. *Dura* made clear that plaintiffs cannot satisfy loss causation merely by alleging that they "paid artificially inflated prices" for securities.  544 U.S. at 347.  If the purchaser sells later after the truth makes its way into the marketplace, an initially inflated purchase price "*might*" mean a later loss, but "that is far from inevitably so." *Id.* at 342.  "Given the tangle of factors affecting price, the most logic alone permits us to say is that the higher purchase price will *sometimes* play a role in bringing about a future loss." *Id.* at 343.  The same reasoning applies to claims "that a share's higher price is lower than it would otherwise have been." *Id*.  Accordingly, Plaintiffs cannot plead loss causation simply by proclaiming that the price of \$24.90 per share of KnowBe4 stock on the date of sale was "deflated" because of an actionable misrepresentation.

In fraud-on-the-market cases, plaintiffs typically show loss causation by: (1) identifying a corrective disclosure revealing the pertinent truth; (2) demonstrating a subsequent price decline; and (3) plausibly alleging the fraud was a significant contributing cause of that decline. *Jastram*, 161 F.4th at 708.  Absent a revelation of truth, an associated price reaction, and consideration of other causal factors, proximate cause cannot be inferred. *Id.* ("a plaintiff must identify some new public information that cast doubt on the earlier fraudulent statements and caused the price to decline"); *id.* at 713 ("the price of the security must fall in order for a plaintiff to claim he was injured by a misrepresentation"); *id.* at 714 ("At the pleading stage, a plaintiff must adequately rule out other explanations so as to give rise to the inference that the fraud was a significant contributing factor to the price decline.").

Plaintiffs allege none of these things.  They claim that "[h]ad the truth been known to the market, KnowBe4 shares would have traded at higher prices throughout the Class Period." (¶ 182.) That is pure conjecture.  On October 12, 2022, KnowBe4 announced the merger and the Company's stock price *increased* to almost the merger price, where it remained throughout the Class Period. (¶ 184.)  How then would disclosure of the "truth"—which Plaintiffs claim was negative and would have caused stockholders to "vote[] down the Merger" (¶ 183)—have resulted in an even higher share price?  Plaintiffs' theory makes no sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–664 (2009) ("Determining whether a complaint states a plausible claim for relief will, as the

Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Plaintiffs claim that approval of the merger prevented stockholders from obtaining a "higher price per share" from someone, sometime. (¶183.). But approval of the merger "can only have proximately caused economic loss if the shareholders' hope would have been *realized*." *Trahan v. Interactive Intel. Grp., Inc.*, 308 F. Supp. 3d 977, 1000 (S.D. Ind. 2018). And Plaintiffs allege no more than a speculative possibility that it would have been. They point to no higher competing offer, and no facts indicating KnowBe4 would have been more valuable as a going concern. They only vaguely suggest that some members of the class "could have" have declined the $24.90 per share price in favor of an appraisal proceeding. Accepting such allegations as sufficient would eviscerate loss causation and convert Rule 10b-5 into the "insurance" against investor losses that *Dura* forbids. 544 U.S. at 345; *see also Altimeo*, 2023 WL 4249356, at *13–16 & n.14 (rejecting much more detailed loss causation allegations as "inherently conjectural"); *Trahan*, 308 F. Supp. 3d at 1000 (no loss causation where complaint did not allege a "definite, immediately available, superior alternative to the Merger consideration" such as a "higher competing offer"). Where, as here, Plaintiffs have not plausibly alleged loss causation, reconsideration is the appropriate remedy. *See In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214, 1221 (E.D. Wash. 2005) (granting defendant's motion for reconsideration where "the CAC does not allege requisite causal nexus between Avista's alleged misrepresentations and the economic harm allegedly suffered by Plaintiffs. Therefore, Plaintiffs have not adequately plead loss causation").

## CONCLUSION

The Court should reconsider its Order to correct clear error and prevent manifest injustice. Because Plaintiffs fail to plead a plausible theory of loss causation under Section 10(b), the Court should dismiss that claim.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)**

Pursuant to Local Rule 7.1.(a)(3), I hereby certify that counsel for the movant has conferred with counsel for Plaintiffs on January 29, 2026, and counsel for Plaintiffs opposes the requested relief herein.

Date: January 30, 2026

|  | */s/ Adam M. Schachter* |
|---|---|
|  | Adam M. Schachter (Florida Bar No. 647101) |
|  | Joan Silverstein (Florida Bar No. 997330) |
|  | **GELBER SCHACHTER & GREENBERG, P.A.** |
|  | One Southeast Third Avenue, Suite 2600 |
|  | Miami, Florida 33131 |
|  | (305) 728-0950 |
|  | aschachter@gsgpa.com |
|  | jsilverstein@gsgpa.com |
|  |  |
|  | Koji Fukumura (*pro hac vice*) |
|  | Peter Adams (*pro hac vice*) |
|  | Heather Speers (*pro hac vice*) |
|  | **COOLEY LLP** |
|  | 10265 Science Center Drive |
|  | San Diego, California 92121 |
|  | (858) 550-6000 |
|  | kfukumura@cooley.com |
|  | padams@cooley.com |
|  | hspeers@cooley.com |
|  |  |
|  | *Counsel for Defendants Kevin Klausmeyer, Shrikrishna Venkataraman, and Gerhard Watzinger* |
|  |  |
|  | **QUINN EMANUEL URQUHART & SULLIVAN LLP** |
|  | Samuel G. Williamson |
|  | Florida Bar No. 1033817 |
|  | David A. Nabors |
|  | Florida Bar No. 1024722 |
|  | 2601 S Bayshore Drive |
|  | Suite 1550 |
|  | Miami, Florida 33133-5417 |
|  | (305) 402-4880 |
|  | samwilliamson@quinnemanuel.com |
|  | davidnabors@quinnemanuel.com |

7

Andrew J. Rossman (*pro hac vice)*
Courtney C. Whang (*pro hac vice)*
Marielle Paloma Greenblatt (*pro hac vice)*
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
295 Fifth Avenue
New York, NY 10016
(212) 446-4800
andrewrossman@quinnemanuel.com
courtneywhang@quinnemanuel.com
mariellegreenblatt@quinnemanuel.com

*Counsel for Defendants Vista Equity Partners
Management, LLC and Sjoerd Sjouwerman*

Michael Holecek
Florida Bar No. 1035950
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7018
MHolecek@gibsondunn.com

Brian M. Lutz (*pro hac vice*)
Colin Davis (*pro hac vice*)
Jeff Lombard (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center
Suite 2600
San Francisco, California 94111
(415) 393-8200

*Counsel for Defendants KKR & Co. Inc., KKR
Knowledge Investors L.P., Stephen Shanley, and
Kara Wilson*

Martin B. Goldberg
Florida Bar No. 0827029
Benjamin R. Shiekman
Florida Bar No. 113114
mgoldberg@lashgoldberg.com
bshiekman@lashgoldberg.com
**LASHGOLDBERG**
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131

8

(305) 347-4040

Colleen Smith *(pro hac vice)*
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, California 92130
(858) 523-5400
colleen.smith@lw.com

Jordan Cook (*pro hac vice* forthcoming)
**LATHAM & WATKINS LLP**
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
(714) 755-8238
jordan.cook@lw.com

Stephen Nasko *(pro hac vice)*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 654-7130
stephen.nasko@lw.com

*Counsel for Defendants Jeremiah Daly, Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P., and Elephant Partners II-B, L.P.*