**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22574-CIV-ALTONAGA/Reid**

In re:

**KNOWBE4, INC.**
**SECURITIES LITIGATION**

_____/

**LEAD PLAINTIFFS' OMNIBUS**
**OPPOSITION TO CERTAIN DEFENDANTS' MOTIONS FOR PARTIAL**
**RECONSIDERATION OF THE COURT'S MOTION TO DISMISS ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL POSTURE........................................... 3

ARGUMENT .................................................................................................................. 3

    I.      There is No Basis For Reconsideration of the Court's MTD Order ................. 3

    II.     The Court Correctly Held that Lead Plaintiffs Allege Loss Causation for the Section 10(b) Claims.................................................................................. 5

    III.    The Court Correctly Held that Lead Plaintiffs Allege the Moving Defendants are Makers of the Challenged Statements for the Section 10(b) Claims.................................................................................................. 8

CONCLUSION.............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*A&M Mgmt. Inc. v. Deme*,
No. 18-63099, 2019 WL 7344795 (S.D. Fla. Mar. 14, 2019).............................................. 9

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*,
663 F. Supp. 3d 334 (S.D.N.Y. 2023).................................................................... 7

*Bassat v. Dana*,
No. 24-24340, 2025 WL 3682723 (S.D. Fla. Apr. 3, 2025).......................................... 2, 3

*Burger King Corp. v. Ashland Equities, Inc.*,
181 F. Supp. 2d 1366 (S.D. Fla. 2002) .................................................................. 4

*Campero USA Corp. v. ADS Foodservice, LLC*,
916 F. Supp. 2d 1284 (S.D. Fla. 2012) .................................................................. 3

*Craig v. Target Corp*,
No: 2:23-cv-599, 2024 WL 4979234 (M.D. Fla. Dec. 4, 2024) ....................................... 6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................................................... 5, 7

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ........................................................................... 7

*Flynn v. Exelon Corp.*,
No. 19 C 8209, 2021 WL 1561712 (N.D. Ill. Apr. 21, 2021)......................................... 2, 8

*Friedman v. Hammer*,
No. 19-cv-62481, 2020 WL 2559549 (S.D. Fla. May 20, 2020)........................................ 7

*Gottlieb v. SEC*,
No. 17-21669-CIV, 2017 WL 4278516  (S.D. Fla. June 23, 2017)..................................... 5

*Hornady v. Outokumpu Stainless USA, LLC*,
118 F.4th 1367 (11th Cir. 2024) ......................................................................... 4, 5

*In re CannaVest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)................................................................... 10

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
843 F.3d 1257 (11th Cir. 2016) ........................................................................ 4, 5, 9

*In re Nevsun Resources Ltd.*,
No. 12 Civ. 1845, 2013 WL 6017402 (S.D.N.Y. Sept. 27, 2013)..................................... 9

*In Re Shanda Games Ltd. Sec. Litig.*,
    128 F.4th 26 (2d Cir. 2025) ................................................................................................ 6

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) .............................................................................................. passim

*Jastram v. NextEra Energy, Inc.*,
    161 F.4th 693 (11th Cir. 2025) ................................................................................. 4, 5, 7

*Lane v. Page*,
    727 F. Supp. 2d 1214 (D.N.M. 2010) .................................................................................. 7

*Leoncio v. Louisville Ladder, Inc.*,
    NO. 13-21837, 2014 WL 11429055 (S.D. Fla. June 4, 2014) ........................................... 4

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) ........................................................................................................ 10

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ........................................................................................... 6

*MacPhee v. MiMedx Grp., Inc.*,
    73 F.4th 1220 (11th Cir. 2023) ......................................................................................... 7

*Maverick Fund, Ltd. v. Mohawk Indus., Inc.*,
    No. 4:21-cv-00118, 2023 WL 2887603 (N.D. Ga. Mar. 31, 2023) ................................... 7

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ........................................................................................ 7

*Naranjo Toloza v. Ruiz*,
    No. 24-22033, 2024 WL 5508150 (S.D. Fla. Aug. 20, 2024) ....................................... 2, 4

*Page v. Derrickson*,
    No. 96–842–CIV, 1997 WL 148558 (M.D. Fla. Mar. 25, 1997)...................................... 8

*Rothschild v. Great N. Ins. Co.*,
    No. 21-23148, 2024 WL 6975269 (S.D. Fla. Nov. 7, 2024) ............................................ 3

*SEC v. Brown*,
    878 F. Supp. 2d 109 (D.D.C. 2012) .................................................................................. 8

*SEC v. Complete Bus. Sols. Grp., Inc.*,
    538 F. Supp. 3d 1309 (S.D. Fla. 2021) ........................................................................... 10

*SEC v. Kameli*,
    No. 17 C 4686, 2020 WL 2542154 (N.D. Ill. May 19, 2020) ......................................... 10

*SEC v. Monterosso*,
    756 F.3d 1326 (11th Cir. 2014) ...................................................................................... 10

*SEC v. Spartan Sec. Grp., Ltd*,
    No. 8:19-cv-448, 2020 WL 7695698 (M.D. Fla. Dec. 28, 2020) ................................... 8, 9

*Siegmund v. Xuelian Bian*,
    No. 16-62506-CIV, 2018 WL 1611847 (S.D. Fla. Apr. 2, 2018)................................... 6, 8

*Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*,
    No: 2:18-cv-356, 2019 WL 4600409 (M.D. Fla. Sept. 23, 2019) ..................................... 6

*Vargas v. Citrix Sys., Inc.*,
    716 F. Supp. 3d 1295 (S.D. Fla. 2024) ............................................................................ 7

## Regulations

17 C.F.R. § 240.13 ...................................................................................................................... 8

Lead Plaintiffs[1] respectfully submit this omnibus opposition to (i) Defendants Kevin Klausmeyer, Shrikrishna Venkataraman, Gerhard Watzinger, Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P., Elephant Partners II-B, L.P., KKR Knowledge Investors, L.P., KKR & Co. Inc., Vista Equity Partners Management, LLC, and Sjoerd Sjouwerman (collectively, the "Moving Defendants") Motion for Partial Reconsideration of the Order on the Motion to Dismiss [ECF No. 111] (the "LC Mot."); (ii) Defendants KKR Knowledge Investors, L.P., KKR & Co. Inc., Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P. and Elephant Partners II-B, L.P.'s Motion for Reconsideration of the Order on the Motion to Dismiss [ECF No. 112] (the "Janus Mot."); (iii) Defendant Vista Equity Partners Management, LLC's Joinder [ECF No. 114] (the "Vista Joinder"); and (iv) Defendants Jeremiah Daly, Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P., and Elephant Partners II-B, L.P Joinder [ECF No. 115] (together, the "Motions to Reconsider").

The Moving Defendants only move for reconsideration regarding certain elements of Count II (the Section 10(b) claim) of the Consolidated Amended Complaint ("Complaint") [ECF No. 70].  The Moving Defendants' motions woefully fail to meet the settled standards for reconsideration in this Circuit. Even if they did, the motions for reconsiderations are bereft of factual or legal support and therefore fail for the same reasons the previously decided motions to dismiss failed.

Each of the Moving Defendants is also named in Count I (the Section 14(a) claim) and Count III (the Section 20(a) claim).  The Moving Defendants do not seek reconsideration of the Court's rulings with respect to Count I (the Section 14(a) claim) and Count III (the Section 20(a) claim).

## INTRODUCTION

The Moving Defendants do no more than improperly rehash the same Section 10(b) related arguments that this Court rejected in its detailed December 23, 2025 Order on Defendants' Motion to Dismiss (the "MTD Order") [ECF No. 100].  In their motion to dismiss, Defendants argued that Plaintiffs did not adequately allege "loss causation" or that "Defendants, aside from KnowBe4

---

[1] Lead Plaintiffs are Water Island Event-Driven Fund, The Arbitrage Fund, AltShares Merger Arbitrage ETF, and the Hilary L. Shane Revocable Trust.  All emphasis is added and internal citations and quotations omitted unless otherwise noted.

itself and Sjouwerman, were 'makers' of the challenged statements." [ECF No. 79 at 13, 23]. Defendants merely reraise those same arguments, which the Court already rejected, again here. For that reason alone, the motions fail. *See, e.g.*, *Naranjo Toloza v. Ruiz*, 2024 WL 5508150, at *1 (S.D. Fla. Aug. 20, 2024) (Altonaga, C.J.) (explaining that a motion for reconsideration is improper where a party "ask[s] the Court to merely reassess its conclusions on arguments Defendants made . . . in their Motion to Dismiss"); *Bassat v. Dana*, 2025 WL 3682723, at *1 (S.D. Fla. Apr. 3, 2025) (Altonaga, C.J.) (same).

Notwithstanding the Moving Defendants' abject failure to satisfy any basis to invoke the extraordinary remedy of reconsideration, the Moving Defendants substantive arguments fail for the same reasons they failed in their motions to dismiss. For example, on loss causation, the Court correctly recognized that the Complaint satisfies the low pleading requirements by alleging that shareholders were harmed by selling or tendering their KnowBe4 shares at an artificially deflated value and/or forgoing available statutory appraisal rights on an uninformed basis. The MTD Order directly addressed the arguments the Moving Defendants have repeated here, carefully assessed Plaintiffs' allegations, analyzed loss causation under the proper standards, and specifically declined to dismiss Counts I and II for lack of loss causation. MTD Order at 32-33.

The same is true with respect to the Moving Defendants' rehashed arguments regarding *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Defendants provide no authority to support their contention that a party's incorporation of a false statement in its own SEC filings—as KKR, Elephant Partners, and Vista did here—fails to render that party a maker of that statement. In fact, courts have held the opposite. *E.g.*, *Flynn v. Exelon Corp.*, 2021 WL 1561712, at *6 (N.D. Ill. Apr. 21, 2021). Moreover, the Proxy specifically attributes certain of the "fairness statements" sustained by the Court to Defendants KKR, Elephant Partners, and Vista, rendering them makers of those statements. These Defendants are also liable for violations of Rule 10b-5 because they "disseminated" false statements in their own SEC filings.

Despite merely repeating arguments that fail to meet the high bar for reconsideration, the Moving Defendants claim reconsideration is necessary because deferring analysis "exposes Defendants to significant costs" and "settlement pressure." LC Mot. at 3. But the Moving Defendants omit that the reconsideration motion exclusively challenges the Section 10(b) claims against them, ignoring that the Section 14(a) claims – not contested on reconsideration – involve the same Defendants, many of the same alleged misstatements and omissions, and the same core

2

underlying facts, meaning fact and expert discovery will proceed irrespective of the Court's decision on the current Motion.

Put simply, "[a] motion for reconsideration is an extraordinary remedy to be employed sparingly." *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012). Defendants do not come close to meeting their heavy burden on a motion for reconsideration. Accordingly, the Motions to Reconsider should be denied.

### FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This action was commenced on June 5, 2025. [ECF No. 1]. On September 2, 2025, the Court appointed Lead Plaintiffs under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3)(B). [ECF No. 51]. On September 23, 2025, Lead Plaintiffs filed the operative Complaint [ECF No. 70].

Defendants moved to dismiss the Complaint on October 7, 2025. [ECF No. 79] ("MTD"). In their thirty-page motion, Defendants argued, among other things, that Plaintiffs failed to allege "Defendants, aside from KnowBe4 itself and Sjouwerman, were 'makers' of the challenged statements" under *Janus*, 564 U.S. at 135, 142. [ECF No. 79 at 13]. Defendants also argued in their motion to dismiss that "Plaintiffs Do Not Adequately Allege Loss Causation." [ECF No. 79 at 23-24].

On December 23, 2025, the Court denied in part the Defendants' motion to dismiss the Complaint, holding Lead Plaintiffs alleged actionable misstatements regarding both the fairness of the Merger and KKR's rollover. [ECF No. 100] ("MTD Order"). While the Court agreed with Defendants' arguments that the alleged misleading statements concerning the conflicts of the Special Committee and Morgan Stanley were not actionable, the Court rejected Defendants' other arguments, including the Defendants' "maker of the statement" and loss causation arguments. *Id.*

Discovery has since commenced, and trial is scheduled for February 2027.

### ARGUMENT

I.    **There is No Basis For Reconsideration of the Court's MTD Order**

"Reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Bassat*, 2025 WL 3682723, at *1; *Rothschild v. Great N. Ins. Co.*, 2024 WL 6975269, at *1 (S.D. Fla. Nov. 7, 2024) (Altonaga, C.J.) (same). There are three grounds which justify reconsideration: "(1) an intervening change in controlling law; (2) newly discovered evidence; and

3

(3) the need to correct clear error or prevent manifest injustice." *Bassat*, 2025 WL 3682723, at *1; *see also Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).

None of those grounds are present here. And while the Moving Defendants' motion for reconsideration on loss causation cites to *Jastram v. NextEra Energy, Inc.*, 161 F.4th 693, 708 (11th Cir. 2025) (LC Mot. 3), the Court was aware of, and directly cited to, the *NextEra* decision when it entered the MTD Order. *See* MTD Order at 32. Regardless, that case was not a "change" in the law, involved an entirely different theory of loss causation than alleged here, and resulted in the Eleventh Circuit *reversing* the District Court's dismissal of a complaint on loss causation grounds. It cannot and does not form a basis for reconsideration.

The Moving Defendants' dissatisfaction with the Court's order also offers no support for their suggestion of "clear error." *Leoncio v. Louisville Ladder, Inc.*, 2014 WL 11429055, at *2 (S.D. Fla. June 4, 2014) (Altonaga, C.J.) ("dissatisfaction with the result is plainly not enough to warrant reconsideration"). "[T]o demonstrate clear error, the party must do more than simply restate its previous arguments." *Ruiz*, 2024 WL 5508150, at *1; *see also Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1381 (11th Cir. 2024) (motion to reconsider properly denied where "movant simply rehashed arguments already considered and rejected"). And to the extent a motion to reconsider includes new arguments that could have been raised earlier, those arguments must be "deemed waived." *Ruiz*, 2024 WL 5508150, at *1.

Here, the Moving Defendants effectively admit in both Motions to Reconsider that they are merely restating prior arguments. *See* LC Mot. at 4 ("***As Defendants' motion explained***"); Janus Mot. at 3 ("***As Defendants argued in their Motion to Dismiss briefing***") (emphasis added). Indeed, even a cursory review of the Motions to Reconsider shows that they resurrect the *exact* arguments regarding loss causation and *Janus* that Defendants fully briefed and which this Court already addressed and rejected. *Compare* MTD at 23-24 (characterizing loss causation allegations as "entirely speculative and untethered to any concrete event," and stating that the stock price rose to the Merger price) with LC Mot. at 3-5 (noting "speculative possibility of economic loss," and that "the Company's stock price increased to almost the merger price"); and *compare* MTD at 13 (arguing "the maker of a statement is the person or entity with ultimate authority over the statement," so even one who "prepares or publishes a statement on behalf of another is not its maker" citing *Galectin* and *Janus*) with Janus Mot. at 3-4 (arguing that the Complaint's allegations

4

"do not establish 'ultimate authority' over the disclosure under *Janus* because even one who 'prepares or publishes a statement on behalf of another is not its maker,'" under *Galectin* and *Janus*).  Defendants' disagreement with the Court's decision does not provide a "vehicle to revisit prior arguments" and it cannot "induce the Court to 'rethink what it already thought through— rightly or wrongly.'" *Gottlieb v. SEC*, 2017 WL 4278516, at *1 (S.D. Fla. June 23, 2017) (Altonaga, C.J.).

The Motions to Reconsider should also be rejected as untimely.  While Rule 54(b) does not impose a strict time limit for motions for reconsideration, the Moving Defendants waited *more than five weeks* from the Court's MTD Order to seek reconsideration with no explanation for their delay.  They also failed to mention their reconsideration plans in case scheduling discussions, the joint scheduling report, and their request for additional time to file answers.  *See Hornady*, 118 F.4th at 1381 ("[T]he more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's request.").

## II.      The Court Correctly Held that Lead Plaintiffs Allege Loss Causation for the Section 10(b) Claims

Defendants' entire loss causation reconsideration motion is based on an apparent misunderstanding of the relevant pleading standards that ignores this Court's clear and correct holding that neither "the PSLRA [nor] Rule 9(b)'s heightened pleading standards apply to loss causation."  Order at 32.  As the Court and the Eleventh Circuit have recognized "loss causation need not be pleaded with particularity," and instead need only comply with Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." *NextEra*, 161 F.4th at 707-08; *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (pleading loss causation "should not prove burdensome for a plaintiff").  Indeed, a plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347.

In their motion, Defendants concede that the Complaint sets forth the "inference" of loss causation the "Plaintiffs urge the Court to draw." LC Mot. at 4.  This concession alone proves that Rule 8's notice pleading standard has been satisfied. Defendants understand Plaintiffs' loss causation theory and dedicated much of their motion to dismiss and their motion for reconsideration to substantive arguments that Plaintiffs' theory is "speculative." LC Mot. at 6; MTD at 24. Such factual contentions can be explored in discovery and tested at summary

5

judgment—not through a motion for reconsideration. *Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*, 2019 WL 4600409, at \*9 (M.D. Fla. Sept. 23, 2019) (denying reconsideration where defendants challenged "whether plaintiff actually suffered a loss and how such a loss can be demonstrated" because such issues "are beyond the scope of a motion to dismiss").

Defendants relatedly contend that the Court erred by "defer[ring] analysis of loss causation on the Section 10(b) claim as beyond the scope of Rule 12(b)(6)" and by purportedly finding that "loss causation is categorically unsuited for 12(b)(6)." LC Mot. at 2-4. But the Court did no such thing. The MTD Order expressly considered the causal connection and losses alleged in the Complaint—including that "Plaintiffs contend that misstatements and omission harmed public stockholders in three ways"—recognized the modest burden for pleading loss causation, and properly declined to dismiss Counts I and II for lack of loss causation because Defendants' challenges raised fact questions inappropriate at this stage. MTD Order at 32-33. Indeed, the Court's Order cited *Craig v. Target Corp.*, which rejected the same arguments Defendants make here, namely that loss causation was not well pled "because Target's stock allegedly rose following the [alleged misstatement]," explaining that such contentions are inherently "fact-based." 2024 WL 4979234, at \*14 (M.D. Fla. Dec. 4, 2024); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) ("[W]e are not authorized or required to determine whether the plaintiff's plausible inference of loss causation is equally or more plausible than other competing inferences[.]"). Thus, contrary to Defendants' argument, the Court did not shirk its responsibility but instead followed the law in ruling that Defendants' fact-based arguments were premature.

Regardless, Defendants are wrong on the substance. Just last year, the Second Circuit confirmed that loss causation is alleged—and that a plaintiff "suffered economic loss"—where a Complaint asserts that the plaintiff "accepted the tender price due to the misleading statements in the Proxies instead of receiving a higher value in an appraisal action." *In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 57 (2d Cir. 2025) ("[L]oss causation may be established when a proxy statement prompts a shareholder to accept an unfair exchange ratio for his shares rather than recoup a greater value through a state appraisal"). This Court has reached the same conclusion. In *Siegmund v. Xuelian Bian*, 2018 WL 1611847, at \*11 (S.D. Fla. Apr. 2, 2018), the Court found loss causation well pled where the complaint alleged that the false statements were a "a substantial factor in determining [plaintiff's] course of conduct which resulted in his failure to [enjoin the transaction or exercise appraisal rights] and the alleged loss caused by the transaction." *Id.* That

is precisely what was alleged here. *See* Compl. ¶¶ 181, 183, 185, 186. Accordingly, the MTD Order's conclusion that the Complaint adequately alleged loss causation based on "the loss of [Plaintiffs'] ability to exercise their state law appraisal rights on an informed basis" (MTD Order at 32) was correct—and certainly not clear error.

Moreover, the other loss causation theories set forth in the Complaint and addressed in the MTD Order—"the tender of shares into the Merger for less than fair value . . . [and] the sale of shares during the Class Period at an artificially deflated value" (MTD Order at 32)—have also been widely recognized as adequate to plead loss causation. *See, e.g.*, *Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1311 (S.D. Fla. 2024) (allegation that "but for the allegedly material misrepresentations and omissions in the Proxy, Citrix shareholders would not have voted for the Merger and cashed out their shares" was sufficient for pleading loss causation);[2] *Lane v. Page*, 727 F. Supp. 2d 1214, 1238 (D.N.M. 2010) (plaintiff adequately pled loss causation by alleging the stock was worth "more than the shareholders received from the merger and bases that allegation on alleged appraisals of which the Defendants were allegedly aware").

Rather than address these on-point authorities or even address the Complaint's alleged loss causation theories, Defendants rehash arguments from their motion to dismiss by citing to a host of inapposite cases that addressed an *entirely different* loss causation theory based on "corrective disclosures." LC Mot. at 5 (citing *Dura*, 544 U.S. at 346–347, *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1241–1249 (11th Cir. 2023) and *Meyer v. Greene*, 710 F.3d 1189, 1200–1202 (11th Cir. 2013)). But, as the Moving Defendants' own cases acknowledge, a corrective disclosure is not required. *See, e.g., Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 663 F. Supp. 3d 334, 374 (S.D.N.Y. 2023) ("[T]he case law does not require the revelation of defendants' fraud to manifest in a corrective disclosure, specifically, for a § 10(b) claim to survive a motion to dismiss."); *NextEra*, 161 F.4th at 708, n.7 ("We have not held that [identifying a corrective disclosures and stock drop] is the only way to demonstrate loss causation"). Indeed, in addition to the cases noted above, courts regularly find loss causation alleged in similar situations where

---

[2] Defendants' argument that *Vargas* "addressed only a Section 14(a) claim" ignores that *all* the in-circuit authorities relied upon by the *Vargas* court exclusively addressed Section 10(b) claims. *See Vargas*, 716 F. Supp. 3d at 1311 (relying on *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1309 (11th Cir. 2011); *Friedman v. Hammer*, 2020 WL 2559549, at *3 (S.D. Fla. May 20, 2020); *3 Amigos Prods.*, 2019 WL 4600409, at *8; *Maverick Fund, Ltd. v. Mohawk Indus., Inc.*, 2023 WL 2887603, at *7 (N.D. Ga. Mar. 31, 2023).

investors were harmed via undervalued mergers and which did not involve corrective disclosures. *Siegmund*, 2018 WL 1611847, at *11 (loss causation alleged without a corrective disclosure); *Page v. Derrickson*, 1997 WL 148558, at *6 (M.D. Fla. Mar. 25, 1997) ("Plaintiff alleges that it was induced to sell IRR for the common stock of Quadrex because of its belief in the alleged misrepresentations . . . .   Additionally, Plaintiff alleges that '[b]y reason thereof, [it has] been damaged'. . . .   [T]hese allegations are sufficient to satisfy the element of causation in a § 10(b) action").

### III.   The Court Correctly Held that Lead Plaintiffs Allege the Moving Defendants are Makers of the Challenged Statements for the Section 10(b) Claims

Citing to *Janus*, 564 U.S. 135, KKR, Elephant, and Vista (the "Purchaser Filing Parties") argue they cannot be held liable under Section 10(b) because they did not "make" any of the alleged false statements. Janus Mot. at 3; Vista Joinder at 2. In doing so, the Purchaser Filing Parties acknowledge that they jointly filed and executed the Schedule 13E-3 incorporating the Proxy, yet they claim the Court committed "clear error" because *Janus* supposedly shields "one who publishes a statement *on behalf of another*" and because incorporation by reference "cannot retroactively confer authorship." Janus Mot. at 3-4 (emphasis added). Defendants are wrong.

*First*, the Schedule 13E-3 was filed by the Purchaser Filing Parties on their own behalf. Compl. ¶140; ECF No. 80-3 at 4 (showing the filing was made jointly by KKR, Elephant, and Vista, and others). It is well settled that "signers of statements may be held liable for them." *SEC v. Spartan Sec. Grp., Ltd*, 2020 WL 7695698, at *10 (M.D. Fla. Dec. 28, 2020); *SEC v. Brown*, 878 F. Supp. 2d 109, 116 (D.D.C. 2012) ("Both before and after the decision in *Janus,* courts have consistently held that the signer of a corporate filing is its 'maker.'").  Indeed, *Janus* itself confirms that the "Filer"—the one who bore the "statutory obligation to file the prospectus[] with the SEC"—is a "maker" of the statement. 564 U.S. at 147.  Here, the Purchaser Filing Parties were obligated to file the Schedule 13E-3 filing and did so, rendering them the undisputed makers of the statements therein. *See* 17 C.F.R. § 240.13e-3.[3]

*Second*, Defendants provide *no* authority to support their bold assertion that incorporation of a false statement fails to "confer" maker status.  That is unsurprising because the law is directly

---

[3] Vista also jointly issued the October 12, 2022 Merger Press Release containing the false statement this Court found actionably misleading, thereby rendering Vista a maker of that statement. *See* Compl. ¶¶ 111, 114; MTD Order at 22.

to the contrary: incorporating and adopting a statement renders the filer a "maker."  In *Flynn*, 2021 WL 1561712, at *6, for example, the court held that, although the defendant did not author the false statements contained in the company's code of conduct attached to the Form 10-K, she could nevertheless be liable for "directing investors to the Code of Conduct that was attached." Likewise, in *In re Nevsun Resources Ltd.*, 2013 WL 6017402, at *11 (S.D.N.Y. Sept. 27, 2013), the court held that even where a filing incorporated a third-party report, the defendants were deemed makers of those statements because they "adopted those statements, filed them with the SEC, and thereafter repeated them to investors." *Id.*; *see also Spartan*, 2020 WL 7695698, at *10 (filer was maker "even when the statement is purportedly based on third-party information").

Here, moreover, the Purchaser Filing Parties not only attached and incorporated the Proxy in full but affirmatively directed investors to *specific sections* of the Proxy which they adopted as supplying "the information required to be included" in the Schedule 13E-3. ECF No. 80-3 at 5. Of course, those very sections contained the Proxy misstatements this Court has found actionable— namely, those in Paragraphs 121–122, 125, and 136.[4] MTD Order at 22, 24. Moreover, the Schedule 13E-3 itself attached the "partially redacted slide" concealing the truth that the Merger Price was "[n]ot in the right zone for a transaction"—a fact that rendered the misstatements misleading. Compl. ¶¶ 95-96; MTD Order at 21-22.  Thus, the Purchaser Filing Parties are liable for the statements they themselves made in the Schedule 13E-3.[5]

Further, the Purchaser Filing Parties separately qualify as "makers" of the statements expressly attributed to them in the Proxy. As Defendants themselves concede, "[a]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was

---

[4] The statements in Complaint ¶¶ 121-122 were contained in the Proxy sections titled "Summary Term Sheet" and "Special Factors—Reasons for the Merger; Recommendation of the Special Committee and the KnowBe4 Board." *See* Proxy at 1, 5, 53.  The statements in Complaint ¶ 125 and ¶ 136 were both from the Proxy section titled "Special Factors—Background of the Merger." Proxy at 36, 38.  These sections were specifically pointed to and incorporated in the Schedule 13E-3. *See* ECF No. 80-3 at 6.

[5] Despite pointing to these *exact cases* in their original motion to dismiss, the citations to *Galectin* and *Deme* remain distinguishable. In *Galectin*, the stock promoters—not defendants—made the false statements. *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016). Similarly, *Deme* lacked any allegations that the defendants ever spoke to or provided the plaintiff with any information. *A&M Mgmt. Inc. v. Deme*, 2019 WL 7344795, at *3 (S.D. Fla. Mar. 14, 2019).

made by—*and only by*—the party to whom it is attributed." Janus Mot. at 4 (quoting *Janus*, 564 U.S. at 142-43).  One of the very misstatements that this Court found misleading was the Proxy's assertion that the "Purchaser Filing Parties . . . believe the Merger is substantively and procedurally fair to KnowBe4's [Public Stock]holders." MTD Order at 22; Compl. ¶ 122.  The attribution here is explicit and unmistakable: the statement appears in a section entitled "Position of the Purchaser Filing Parties as to the Fairness of the Merger," and affirms their purported view that the Merger is "substantively and procedurally fair." Proxy at 5. That alone forecloses any dispute over attribution and renders the Purchaser Filing Parties "makers" of the statement.[6]  At a minimum, resolving this issue requires "an inherently fact-bound inquiry" that cannot provide the basis for reconsideration.  *SEC v. Complete Bus. Sols. Grp., Inc.*, 538 F. Supp. 3d 1309, 1338 (S.D. Fla. 2021).[7]

*Finally*, not only are the Purchaser Filing Parties liable as "makers" of the statements, they also face independent Section 10(b) liability because they "disseminated" the Proxy. Compl. ¶ 205. As the Supreme Court held in *Lorenzo v. SEC*, "[t]hose who disseminate false statements with intent to defraud are primarily liable under Rules 10b–5(a) and (c)." 587 U.S. 71, 73 (2019); *see also SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014) (holding *Janus* does not apply to "subsections (a) and (c) of Rule 10b–5"). Here, the Schedule 13E-3 filed by the Purchasing Filer Parties "attached" the Proxy, thereby disseminating it. Compl. ¶ 140.  Courts have held this is sufficient. *See SEC v. Kameli*, 2020 WL 2542154, at *15 (N.D. Ill. May 19, 2020) (defendants "disseminated the false/misleading statements" where they "approved the distribution of the PPMs and their attachments to prospective [ ] investors"). Thus, the Purchaser Filing Parties not only made the misleading statements, they disseminated them to KnowBe4 stockholders as part of their scheme to secure stockholder approval for the unfair Merger. Compl. ¶ 216.

---

[6]The Purchaser Filing Parties' arguments leave them in an untenable position. To avoid liability, they claim the Schedule 13E-3 attributed the statements to KnowBe4, yet they ignore that the Proxy attributed those same statements directly to them. They cannot wield the attribution doctrine only when it serves their purposes.

[7] Vista's reliance on *In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 243 (S.D.N.Y. 2018) is misplaced.  Vista Joinder at 2. In that case, plaintiffs pled no facts demonstrating the individual defendant's involvement in the company's misstatements nor attribution within the statements themselves.  *CannaVest*, 307 F. Supp. 3d  at 255. Here, at least one statement is directly attributable to Vista as a Purchaser Filing Party (Compl. ¶ 122), Vista jointly issued the Merger Press Release (Compl. ¶ 111), and Vista was a co-issuer of the Schedule 13E-3.

10

Reconsideration is unwarranted.

## CONCLUSION

The Motions to Reconsider should be denied in their entirety.

Dated: February 13, 2026

Respectfully submitted,

*Benjamin J. Widlanski*
**KOZYAK TROPIN &
THROCKMORTON LLP**
Benjamin J. Widlanski (Fla. Bar # 1010644)
bwidlanski@kttlaw.com
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Tel.: (305) 372-1800

*Court-Appointed Liaison Counsel and
Proposed Liaison Counsel for the Class*

Vincent R. Cappucci (*pro hac vice*)
Robert N. Cappucci (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher *(pro hac vice)*
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Tel.: (212) 894-7200
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
bbrodeur@entwistle-law.com
asher@entwistle-law.com

Andrew J. Entwistle (*pro hac vice*)
500 West Second Street
Suite 1900
Austin, Texas 78701
Tel.: (512) 710-5960
aentwistle@entwistle-law.com

Adam Warden (Fla. Bar # 0873691)
Jonathan Lamet (Fla. Bar # 0106059)
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434

11

Tel.: (561) 394-3399
awarden@saxenawhite.com
jlamet@saxenawhite.com

David J. Schwartz (*pro hac vice*)
10 Bank Street, Suite 882
White Plains, New York 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
dschwartz@saxenawhite.com

Thomas Curry (*pro hac vice*)
824 N. Market Street, Suite 1003
Wilmington, Delaware 19801
Tel.: (302) 485-0483
tcurry@saxenawhite.com

*Court-Appointed Co-Lead Counsel and*
*Proposed Class Counsel*