**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22574-CIV-ALTONAGA/Reid**

In re:

**KNOWBE4, INC.**
**SECURITIES LITIGATION**

_____/

**[PROPOSED] ORDER ENTERING**
**STIPULATED ELECTRONIC DISCOVERY PROTOCOL**

**THIS CAUSE** came before the Court upon the Joint Motion for Entry of Stipulated Electronic Discovery Protocol [ECF No. X]. Being fully advised, it is

**ORDERED AND ADJUDGED** that the motion is **GRANTED** as follows:

**I.      INTRODUCTION**

This protocol will govern how the parties manage electronic discovery in the above-captioned action (the "Action").  Nothing herein shall prejudice the parties' prerogative to hereafter modify or waive any provisions of this stipulation by agreement.

The production specifications in this Protocol apply to documents that are produced in the first instance in this Action, by a party to this Action.  To the extent any party is required or agrees to re-produce documents in this Action that originally were produced or prepared for production in other cases or government investigations, or by a non-party, such documents may be produced in the same format in which they originally were produced or prepared for production.

**II.     PRESERVATION**

The parties confirm that they have taken reasonable measures to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise, consistent with their obligations under the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act. The parties agree that preservation of potentially relevant electronically stored information ("ESI") will be reasonable and proportionate, consistent with their obligations under the Federal Rules of Civil Procedure.  For the avoidance of doubt, Fed. R. Civ. P 37(e) controls when a party fails to take reasonable steps to preserve discoverable information.

The parties agree there is no need to preserve data that is fragmented or in unallocated space and duplicative data stored on backup tapes reasonably accessible through other sources, in random access memory, temporary files, browser history files, cache files, and cookies.

### III.   IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner.  Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.  The parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms or predictive coding). The parties agree that any grounds for objections should be supported by specific information.

#### A.  Sources

The parties will each provide their own proposed custodian lists to be used for the search of custodial ESI and disclose and discuss the non-custodial data sources likely to contain responsive information.  Each party shall undertake a reasonable search for responsive information across relevant custodial and non-custodial sources, consistent with their obligations under the Federal Rules of Civil Procedure.  Subject to the limitations on discovery imposed by the Court and the Federal Rules of Civil Procedure, the parties retain the right, upon reviewing the production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and will meet and confer regarding such requests.

#### B.  Search Proposal

To the extent a producing party intends to use search terms to identify documents for review purposes in responding to a production request, the producing party shall identify those search terms that it reasonably believes would lead to the identification of responsive documents and the custodial and non-custodial sources to be searched. To the extent reasonably practicable, search terms will be crafted with input from persons with relevant knowledge of the underlying subject matter. The parties agree to collaborate on the refinement of such terms, which may include the sharing of hit reports or other search methodology information, as needed to reach agreement. If the requesting party reasonably believes additional or different aspects of the search proposal, including search terms are warranted, the requesting party shall promptly notify the producing

party, and the parties shall meet and confer regarding such issues.

### C.  GenAI and Technology Assisted Review ("TAR")

If a party decides to use Generative AI, or TAR (collectively, "TAR") for the purpose of culling document collections to exclude documents from review, that party shall notify the opposing party and describe the general process and workflows, including a description of the data included and excluded from application of TAR and the validation of the results using statistical methods such as elusion sampling. Nothing herein shall be construed as an agreement by either party in favor of the use of TAR or other similar discovery tools.

### D.  Acknowledgment

Notwithstanding Sections III.A through III.C above, and with due consideration to principles of proportionality, the parties acknowledge their obligation to conduct a reasonable search for responsive, non-privileged documents, consistent with their obligations under the Federal Rules of Civil Procedure. This obligation is not limited solely to the application of agreed-upon custodians and search terms, but includes the use of other proportional and reasonable efforts to identify documents likely to contain responsive information, consistent with their obligations under the Federal Rules of Civil Procedure.

### IV.    PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Absent an objection, parties shall produce hard copy documents in the format set forth herein.  If a party responding to a production request objects to this format, that party shall so state in its objections and responses and shall meet and confer with the requesting party in advance of producing any documents.

Absent objection, hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "Bates Start," "Bates End," "Page Count," and "Custodian," and for unitization purposes also include "Parent ID," "Attach ID," "BegAttach," "EndAttach," and "Folder ID" metadata fields.  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color, it may be produced in black-and-white format.  The receiving party may request that the document be produced as single-page, 300 DPI images with JPG compression and a high-quality setting if the black-and-white production

has resulted in degradation of the original image or for any other good faith reason, in which case the parties shall meet and confer as to producing that document in that format or some other reasonably useable format.  Multi-page OCR text for each document should also be provided to the extent such OCR text can be provided or applied in an automated fashion.  Each party shall make a good faith attempt to maximize the text quality of the production through use of settings in the OCR software available to that party (or party's vendor).  The receiving party may request production of a color version of any document or documents, and such requests will not be unreasonably denied.  The receiving party may also request to inspect the original document if it determines that such inspection is necessary, and such requests will not be unreasonably denied.

### V.        PRODUCTION OF ESI

"ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

### A.        Format

Absent an objection, parties shall produce electronically stored information in the format set forth herein.  If a party responding to a production request objects to this format, that party shall so state in its objections and responses and shall meet and confer with the requesting party in advance of producing any documents.

Absent objection, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, source code, audio, and video files, which shall be produced in native format.  PowerPoint and other presentation file types shall be produced with single-page, 300 DPI TIFF/JPG color-for-color images, as applicable. Other than the native and presentation file type exceptions described herein, if an original document contains color, it may be produced in black-and-white format.  The receiving party may request that the document be produced as single-page, 300 DPI images with JPG compression and a high-quality setting if the black-and-white production has resulted in degradation of the original image or for any other good faith reason, in which case the parties shall meet and confer as to producing that document in that format or some other reasonably usable format.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  The parties will apply available settings and take reasonable steps to ensure TIFFs/JPGs show the text and images which would be visible to the reader using the native software that created the document, including tracked changes.  For example, TIFFs/JPGs of e-mail messages should

include the BCC line.  PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden and shall be processed to show both the slide and the speaker's notes on the TIFF/JPG image.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format will also be provided.  Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents should be produced in native format, the parties agree to meet and confer in good faith.

The parties need not produce non-human readable electronic documents (for example documents that include only machine readable language), except upon a showing of good cause by the requesting party.

**B.       De-Duplication**

Each party may remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include the same content in those fields, even if all remaining content in the email is identical.  De-duplication may be done across the entire collection (global de-duplication) and the "Custodian" field will list the primary custodian of a document after de-duplication, and the "Filepath" field will list a single filepath associated with the document.  Any other custodians that are associated with the document (that are excluded due to De-Duplication) will be listed in an "AllCustodians" field separated by a semicolon, and the "AllFilePath" field will list each file path, separated by a semicolon. Removal of near-duplicate documents is not acceptable.  To the extent email suppression is used, the receiving party may submit a list requesting lower-level or earlier-in-time emails for which header information, metadata, attachments, or other relevant content appears to be missing, incomplete, or is necessary for an accurate understanding of the email communication.  The producing party shall, to the extent reasonably possible or available, re-produce such identified emails without truncated or missing portions.

### C.      Document Families

If any part of a document, particularly emails, or its attachments is responsive, the entire document and all attachments shall be produced, *i.e.*, the entire family of documents, except: (i) where a family member is withheld pursuant to a valid claim of privilege, in which case that document will be replaced with a single-page TIFF image identifying the privilege or work product protection being claimed, and the rest of the family produced; and (ii) where the attachment is a non-substantive, automatically generated embedded file (*e.g.*, logos) or formatting file (*e.g.*, .ole or .dll).  Attachments shall be produced sequentially after the parent e-mail and the metadata load file should include the relevant fields to provide the parent/child relationship.   For such attachments, the "BegAttach" and "EndAttach" metadata fields shall be populated to show the family relationship.

### D.      Modern/Linked Attachments

The Parties agree that regardless of whether a document is shared via hyperlink (e.g., SharePoint, Google Drive, etc.), the Parties will conduct a reasonable and proportional search of custodial and non-custodial sources likely to contain responsive information. Document(s) that are hyperlinked inside a responsive document (including hyperlinks inside emails) within a producing party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the requesting party in produced documents, the requesting party may submit a list of hyperlinks to a producing party to search for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the producing party, and the producing party will engage in good-faith effort to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a requesting party may identify to a producing party shall not be excessive and shall be reasonable and proportional to the needs of the case, and not unduly burdensome.

### E.      Partially Privileged Documents

If only a portion of a responsive document or document family is privileged, the producing party will redact the privileged content and produce all responsive non-privileged portions of the document family, consistent with the Federal Rules of Civil Procedure and Eleventh Circuit precedent regarding same.

**F.      Metadata**

All individually maintained ESI will be produced with a delimited, database load file that contains the metadata fields below to the extent feasible . except that to the extent any party is required or agrees to re-produce ESI that originally was produced or prepared for production in other cases or government investigations, such ESI may be produced with the same metadata fields in which they originally were produced or prepared for production. The metadata produced should have the correct encoding to enable preservation of the documents' original language.  Unless otherwise agreed, the parties shall use the following Metadata fields where available:

General Metadata Fields:
- BegBates: First Bates Number Branded on First Image of Document
- EndBates: Last Bates Number Branded on Last Image of Document
- BegAttach: BegBates of Absolute Parent Document
- EndAttach: EndBates of Last Page in Document Family
- Parent ID: Contains the BegBates of an attachment's parent
- Attachment ID: Contains the BegBates of an attachment
- Attachment List: BegBates values of all attachments delimited by semicolons
- Page Count: Page count of document
- Confidentiality: Confidentiality designation for the document[1]
- Redacted: Identifies all documents that have been redacted either in image or native format with a Yes/No indicator
- Embedded: A Yes/No indicator that identifies whether a document is embedded in another document
- Extracted Text: File path to Extracted Text/OCR File
- Native Link: Path and file name to a produced native format file
- Hash Value: MD5 or SHA-1 hash value

Metadata from Email:
- Email Subject [subject to any redaction for privilege]

---

[1] Where this field is not consistent with the face of a document image or produced native file name, the higher designation controls until the parties resolve the invonsistency.

- Email Author (From)

- Email Recipient (To)

- Email CC

- Email BCC

- Email Received Date: MM/DD/YYYY HH:MM:SS AM/PM

- Email Sent Date: MM/DD/YYYY HH:MM:SS AM/PM

- Meeting Start Date: The start date of a calendar entry MM/DD/YYYY HH:MM:SS AM/PM

- Meeting End Date: The end date of a calendar entry MM/DD/YYYY HH:MM:SS AM/PM

- Conversation Index: The Outlook Conversation Index ID used to tie together email threads

- Message ID: The Outlook Message ID

- Importance: Indicates the priority level of an email

Metadata from Electronic Files:
- File Name [subject to any redaction for privilege]

- File Author

- File Manager: Native File Application (e.g. Microsoft Excel, Word, etc.)

- File Date Created: MM/DD/YYYY HH:MM:SS AM/PM

- File Last Modified Date: MM/DD/YYYY HH:MM:SS AM/PM

- Last Modified By: Name of the person who last modified or saved the document

- File Extension

- Track Changes: A Yes/No indicator that identifies whether a document has tracked changes

Data for both Email and Electronic Files:
- Custodian: Last name, First name

- AllCustodians: (semicolon delimited) Last name, First name

- File Path: location of original file on disk or in mail container

- AllFilePath: The file paths from the locations in which removed duplicate documents were stored

For other types of ESI which do not conform to the standard metadata listed above, including, but not limited to, text messages, messaging apps, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

### G.        Bates numbering

Each TIFF/JPG image produced shall be branded with a Bates number that (i) identifies the producing party; (ii) maintains a constant length of nine numeric digits (including 0-padding) across the entire production; and (iii) is sequential, both within each document and across the production set, but should not include the Bates number in the extracted text of the ESI.  Each TIFF/JPG image file shall be named with the same page-level Bates number branded on the underlying image.  For ESI that is produced subject to a claim of confidentiality pursuant to the Protective Order entered in this Action (the "Protective Order"), the producing party shall electronically brand the appropriate confidentiality designation onto each page of the document, but should not include the confidentiality designation in the extracted text of the ESI.

### H.        Text Files and OCR

All documents and ESI shall be produced with a corresponding multipage searchable text file (*i.e.*, one .TXT file per electronic file as opposed to one text file per page).  The text file for ESI shall contain full text extraction and be created by extracting text directly from the underlying native file, unless the ESI must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the ESI.  Each text file shall be named with the beginning Bates number of the electronic file to which the text file relates.

### I.        Embedded Objects

Embedded files should be included in the parties' productions, unless the embedded object is:  (1) a file fragment that is fully visible in the parent document; (2) unreadable; or (3) the parties otherwise agree.

### J.        Compressed File Types

Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### K.        Electronic Messages

Non-privileged, responsive electronic messages (*e.g.*, iMessage, SMS, MMS, Snapchat messages, MS Teams Chat, WhatsApp, G-Chat, Instant Bloomberg, Slack, etc.) shall be produced

in a searchable format that preserves the presentational features of the original message, *e.g.*, emojis, images, and video files, to the extent reasonably feasible, and shall be produced with its relevant conversation thread broken down by 24 hour increments.  To the extent a requesting party believes that an electronic message was not produced in a searchable format that preserved material presentation features of the original message, the requesting party shall identify the message by Bates number, and the producing party will investigate whether it is possible to produce the message in a different format.

**L.     Dynamic Fields**

All dynamic date and time fields, where such fields are processed to contain a value, shall, to the extent reasonably feasible, be processed with a single date and time setting that is consistent across each party's productions, and in a way that maintains the date/time shown in a document as it was last saved by the custodian or end user, not the date of collection or processing.

**M.     Hidden Content, Speaker Notes, Comments, and Tracked Changes**

To the extent that a document contains hidden content, tracked changes, comments, notes, or other similar information, it shall be imaged so that such information is captured on the produced image file as it would appear in the native format of the document. To the extent reasonably possible, documents with track changes will be marked with a "Yes" in the load file under the "Track Changes" metadata field.

**N.     Proprietary or Customized Software**

To the extent that relevant ESI cannot be rendered or reviewed in a reasonably useable form without the use of proprietary or customized software, the parties will meet and confer to determine whether and to what extent producing such ESI is necessary and, if so, how that can be accomplished.

**O.     Structured Data**

To the extent parties produce electronically stored information from a database, either party may propose the production of all relevant information by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.  The producing and requesting parties shall then meet and confer concerning producing information in this fashion.

**P.      Encrypted Files**

To the extent reasonably feasible, any password protected or encrypted documents shall be processed to unlock any passwords or encryption, and the unlocked or decrypted document produced.  To the extent such documents are unable to be processed successfully to decrypt the documents included in a party's production, the parties agree to: (i) produce a slip-sheet for each encrypted or password protected document that cannot successfully be processed, indicating that the document cannot be decrypted; and (ii) provide the metadata for the document specified herein.

**Q.      Secure Production Delivery**

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

**R.      Redactions**

If documents that the parties have agreed to produce in native format need to be redacted, the parties may use standard e-discovery native redaction software for applicable files.  If a party needs to redact native files that are not redactable using native redaction software, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. In all cases, any redactions and the basis upon which redactions were applied shall be clearly indicated on the face of the document where information has been redacted, and the metadata field Redacted shall be marked with a "Yes."

**S.      Document Production Prior to Deposition**

To the extent practicable, the parties agree to complete the production of a deponent's custodial file at least ten (10) days prior to the scheduled deposition.

**T.      Privilege Log**

The parties agree to exchange privilege logs that comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure within 21 days of the completion of document production. Privilege logs will be provided in a searchable and sortable spreadsheet format, as applicable.  Certain privileged communications or documents need not be included in a privilege log unless otherwise agreed to by the parties or ordered by the Court: (a) communications to or from outside legal counsel after the commencement of, and related to, the Delaware Action (meaning the lawsuit captioned *Le*

11

*Clair, et al. v. KnowBe4, Inc., et al.*, No. 2024-1143-KSJM in the Delaware Court of Chancery) or this Action; (b) work product of counsel and the parties after the commencement of, and related to, the Delaware Action or this Action; and (c) any communications regarding litigation holds or preservation, collection, or review of discoverable information in the Delaware Action or this Action, unless and until one or both parties raise issues concerning the preservation, collection, or production efforts of the other party; (d) documents with redactions.  The parties will meet and confer in good faith regarding the scope of the privilege log, including seeking clarity regarding the privilege basis regarding documents with redactions, should any issue arise.  If the receiving party reasonably requires further information, it shall explain the need for such information and identify in writing, by Bates number or other unique identifier where reasonably feasible and if not then by category, each document or category of documents for which it seeks this information. The producing party will respond to any such reasonable request by providing in writing a more detailed description of the nature of the withheld information that will enable the receiving party to assess the claim of privilege, consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

In an effort to avoid unnecessary expense and burden, the parties agree that, for documents withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing party will prepare a log containing, for each document (except those exempted above): (a) the privilege(s) claimed and basis for the claim; (b) the date of the document; (c) the name/email address, or other data identifying the author(s)/addresser, as applicable, including specifically identifying any person who is an attorney or an employee of any legal department as such; (d) the name/email address, or other data identifying the addressee(s), as applicable,  including specifically identifying any person who is an attorney or an employee of any legal department; (e) a description of the document or communication sufficient to allow the receiving party to assess the claimed privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and (f) the custodian, or custodians.

If the receiving party contests a privilege claim, the receiving party must notify the producing party in writing.  The parties must attempt to confer in good faith to resolve any challenge.

**DONE AND ORDERED** in Miami, Florida, this ___day of _____, 2026.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**


cc: counsel of record