**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-22574-ALTONAGA/REID**

In re:

**KNOWBE4, INC.**
**SECURITIES LITIGATION**

_____/

**DEFENDANTS KEVIN KLAUSMEYER, SHRIKRISHNA VENKATARAMAN,**
**GERHARD WATZINGER, ELEPHANT PARTNERS, ELEPHANT PARTNERS I, L.P.,**
**ELEPHANT PARTNERS II, L.P., ELEPHANT PARTNERS 2019 SPV-A, L.P.,**
**ELEPHANT PARTNERS II-B, L.P., KKR KNOWLEDGE INVESTORS, L.P., KKR &**
**CO. INC., VISTA EQUITY PARTNERS MANAGEMENT, LLC, AND**
**SJOERD SJOUWERMAN'S REPLY IN SUPPORT OF THE MOTION FOR PARTIAL**
**RECONSIDERATION OF THE ORDER ON THE MOTION TO DISMISS**

Defendants submit this Reply in Support of the Motion for Partial Reconsideration [ECF No. 111 ("Mot.")] of the Court's December 23, 2025 Order [ECF No. 100 ("Order")].

## INTRODUCTION

Plaintiffs' loss causation theory is both legally and factually untenable.  In a typical Section 10(b) claim, a plaintiff alleges that fraud artificially inflated the price of a security, the "truth" later emerged, and the stock price dropped as a result.  *See Jastram v. NextEra Energy, Inc.*, 161 F.4th 693, 708–09 (11th Cir. 2025); *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1242–43 (11th Cir. 2023); *Meyer v. Greene*, 710 F.3d 1189, 1196–97 (11th Cir. 2013).  This combination—a misrepresentation, a corrective disclosure, and a resulting stock drop—provides the factual basis from which a court can infer that the alleged fraud caused investor losses.

Plaintiffs have abandoned this established framework entirely.  They do not allege that KnowBe4's stock was artificially inflated, that the "truth" was disclosed, or even that the stock price declined.  Instead, Plaintiffs contend that Defendants deceived the class into selling or tendering shares at a price that was too low.  The Eleventh Circuit has never held that this constitutes a viable causation theory under Section 10(b).  And for good reason: the Supreme Court made clear in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005), that a depressed sale price alone does not constitute the relevant economic loss.  *See Trahan v. Interactive Intel. Grp., Inc.*, 308 F. Supp. 3d 977, 1000 (S.D. Ind. 2018) ("*Dura Pharmaceuticals* teaches that [a] complaint fails to allege loss causation simply by pleading that the share price … on the date of sale was depressed because of an actionable misrepresentation....").

Even assuming this theory was viable in the abstract, Plaintiffs have failed to allege any nonconclusory, non-speculative facts suggesting that the alleged misrepresentations caused economic harm.  In the handful of cases Plaintiffs cite in their Opposition, the complaints alleged a clear factual predicate from which the court could infer that the stock's intrinsic value exceeded the merger price—whether a benchmark transaction (*Vargas*), multiple internal appraisals (*Lane*), or a judicial finding of fair value (*Shanda Games*).  [ECF No. 123 ("Opp."), pp. 6–7].  No comparable facts exist here.  The Eleventh Circuit instructs courts to dismiss Section 10(b) claims where no facts support a plausible loss causation theory.  *Meyer*, 710 F.3d at 1202.  By deferring its loss causation analysis and permitting Plaintiffs to proceed to discovery on conclusory allegations, the Court committed clear error.  Defendants respectfully request that the Court reconsider this narrow aspect of its Order and dismiss the Section 10(b) claim.

## ARGUMENT

### A.  Defendants' Motion is Proper.

The Eleventh Circuit requires courts to evaluate a plaintiff's loss causation allegations at the pleading stage.  [Mot., p. 2].  The Court deferred that analysis.  [Order, pp. 32–33].  This was clear error.[1]  *See, e.g.*, *In re Witness Sys., Inc. Sec. Litig.*, 2008 WL 9020540, at *10 (N.D. Ga. Mar. 31, 2008) ("[W]here the pleadings do not set forth a basis to establish loss causation, dismissal on that basis is mandated.") (collecting cases).  Defendants respectfully request that the Court reconsider that portion of its Order, evaluate Plaintiffs' loss causation allegations under the plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and dismiss the Section 10(b) claim.

Plaintiffs do not dispute that the Court was required to evaluate their loss causation allegations.  Instead, they attempt to rewrite the Court's Order, insisting that the Court already performed this analysis.  [Opp., p. 6].  Even if that were true, it would not preclude reconsideration. But it is not true.  The Court did not address whether Plaintiffs alleged sufficient factual matter "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Rather, the Court restated Plaintiffs' theories, acknowledged Defendants' "legitimate concerns" with those theories, and deferred its analysis.  [Order, pp. 32–33].  The Court never addressed, for example, whether any *facts* supported Plaintiffs' claim that "[h]ad the truth been known to the market, KnowBe4 shares would have traded at higher prices throughout the Class Period."  [ECF No. 70 ("ACAC"), ¶ 182].  This allegation is not remotely plausible.  It is undisputed that when KnowBe4 announced the merger in October 2022, the Company's stock price increased to nearly the merger price, where it remained throughout the Class Period.  *Id.* at ¶ 184.  It defies logic to infer that disclosure of the "truth"—which Plaintiffs claim was negative and would have caused stockholders to "vote[] down the Merger" *id.* at ¶ 183—would have resulted in an even higher share price.  Plaintiffs make no

---

[1]      Under Rule 54(b), the Court has "plenary power" to reconsider the interlocutory order regardless of the clear error standard.  *Hornady v. Outokumpu Stainless USA, LLC*, 118 F. 4th 1367, 1379–81 (11th Cir. 2024) ("If the movant is able to meet a significantly higher showing for reconsideration—for example, the standards applicable to Rules 59(e) or 60(b), or the exceptions to the mandate rule—the district court should not hesitate to revisit its prior ruling. But just because a movant fails to meet these higher standards does not mean that reconsideration cannot be had— the district court may still have room to conclude that reconsideration is appropriate.").

attempt to defend these allegations in their Opposition because they know they cannot withstand scrutiny.[2]

### B. Plaintiffs' Loss Causation Theory is Untenable.

Plaintiffs' Opposition confirms that they failed to adequately plead loss causation. Plaintiffs rely on two cases—*Shanda Games* and *Siegmund*—for the proposition that stockholders suffer a loss when they forego statutory appraisal and accept an unfair merger price. [Opp., p. 6]. But Plaintiffs omit key facts from both cases. In *Shanda Games*, certain shareholders did object to the merger and filed an appraisal action, and a court determined in that action that the merger price was a mere 55 percent of fair value. *See In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 37 (2d Cir. 2025). Consequently, there was a clear factual predicate for the court in the securities case to infer that investors lost money by foregoing appraisal. Here, by contrast, there are no well-pled facts supporting such an inference. Plaintiffs merely speculate that investors could have recovered more in an appraisal action (ignoring that the merger price represented a 44% premium over the stock's closing price on the day before the merger was announced and no appraisal actions were filed). Plaintiffs fall back on Rule 8, claiming that they need only provide "notice" of their claims. [Opp., p. 5]. Even under Rule 8, however, a complaint must contain sufficient factual matter "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

*Siegmund* is even further afield. *Siegmund* was not a "misrepresentation" case under Rule 10b-5(b); it involved a "scheme liability" claim under Rule 10b-5(a) and (c). *Siegmund v. Xuelian Bian*, 2018 WL 1611847, at *9 (S.D. Fla. Apr. 2, 2018). The plaintiff alleged that controlling shareholders covertly engineered a freeze-out merger and refused to notify shareholders to prevent them from seeking an injunction or exercising appraisal rights. *Id*. at *9–10. The complaint explained how the freeze-out was intended to relieve the controlling shareholders of the burden—and potential liability—of a derivative action and allow them to obtain control of a subsidiary's assets for no consideration. *Id.* at *11. Under those unique facts, the court had no trouble finding

---

[2]    Nor is there merit to Plaintiffs' assertion that Defendants' motion was "untimely." [Opp., p. 5]. Interlocutory orders and rulings may be modified by a district court at any time prior to final judgment. *Hornady*, 118 F. 4th at 1379; *Spivey v. Royston LLC*, 2020 WL 13111125, at *3–4 (N.D. Ga. Apr. 1, 2020) (ruling on motion for reconsideration filed 57 days after the underlying order). As Plaintiffs concede, there is no strict time limit for filing a motion to reconsider an interlocutory order in this District. Given the number of parties involved in this case, all represented by different firms, and the intervening holiday, all of which complicate review, Defendants sought reconsideration expeditiously.

a non-speculative basis to infer that the deceptive conduct caused stockholders injury. *Id.* Plaintiffs have not alleged anything remotely analogous here. There is no allegation of a covert scheme to deprive shareholders of notice, no derivative action the merger was designed to extinguish, and no suggestion that the acquiring party was trying to strip a subsidiary's assets without paying for them.

Plaintiffs also broadly (and inaccurately) claim that "the tender of shares into the Merger for less than fair value . . . [and] the sale of shares during the Class Period at an artificially deflated value" has been "widely recognized as adequate to plead loss causation." [Opp., p. 7]. But again, the cases Plaintiffs cite for this proposition—*Lane* and *Vargas*—provided factual detail that is absent here. In *Lane*, the plaintiffs pointed to two internal appraisals that valued the stock at between $474.00 and $1013.00 per share, far more than the $315 per share merger price. *Lane v. Page*, 727 F. Supp. 2d 1214, 1235–36 (D.N.M. 2010). Likewise, in *Vargas*, the complaint pointed to a specific a benchmark transaction—Citrix's acquisition of another cloud computing software business—to show that the sale price significantly undervalued the company. *Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1311 (S.D. Fla. 2024). Plaintiffs here offer no comparable facts, merely declaring that class members were induced to accept an insufficient price for their shares.[3]

The better analogues are *In re Emisphere Techs., Inc. Sec. Litig.*, 2025 WL 2779107, at *6–7 (D.N.J. Sept. 30, 2025) and *Trahan*, 308 F. Supp. 3d at 999–1000. In both cases, courts evaluated allegations of artificially deflated prices in connection with a merger and concluded that the plaintiffs alleged no more than a speculative possibility that they were economically injured by any misrepresentation. The Court should reach the same conclusion in this case.

## CONCLUSION

In every merger, a plaintiff could contend that the stock price should have been higher. And in every merger, a plaintiff could claim that they could have received more. That is not loss causation. By permitting Plaintiffs' Section 10(b) claim to proceed, the Court implicitly held that a shareholder can plead loss causation by simply claiming to have sold shares at an artificially depressed price. *Dura* says otherwise. The Court should reconsider its Order to correct clear error and prevent manifest injustice. Because Plaintiffs fail to plead a plausible theory of loss causation under Section 10(b), the Court should dismiss that claim.

---

[3]     *Lane* and *Vargas* are also distinguishable because neither involved a claim under Section 10(b) – both were Section 14(a) cases.

4

Dated: February 20, 2026

Respectfully submitted,

_/s/ Adam M. Schachter_

Adam M. Schachter (Florida Bar No. 647101)
Joan Silverstein (Florida Bar No. 997330)
**GELBER SCHACHTER &
GREENBERG, P.A.**
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
(305) 728-0950
aschachter@gsgpa.com
jsilverstein@gsgpa.com
E-service: efilings@gsgpa.com


Koji Fukumura (_pro hac vice_)
Peter Adams (_pro hac vice_)
Heather Speers (_pro hac vice_)
**COOLEY LLP**
10265 Science Center Drive
San Diego, California 92121
(858) 550-6000
kfukumura@cooley.com
padams@cooley.com
hspeers@cooley.com

_Counsel for Defendants Kevin Klausmeyer,
Shrikrishna Venkataraman, and Gerhard Watzinger_

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
Samuel G. Williamson
Florida Bar No. 1033817
David A. Nabors
Florida Bar No. 1024722
2601 S Bayshore Drive
Suite 1550
Miami, Florida 33133-5417
(305) 402-4880
samwilliamson@quinnemanuel.com
davidnabors@quinnemanuel.com

5

Andrew J. Rossman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Marielle Paloma Greenblatt (*pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
295 Fifth Avenue
New York, NY 10016
(212) 446-4800
andrewrossman@quinnemanuel.com
courtneywhang@quinnemanuel.com
mariellegreenblatt@quinnemanuel.com

*Counsel for Defendants Vista Equity Partners
Management, LLC and Sjoerd Sjouwerman*

Michael Holecek
Florida Bar No. 1035950
**GIBSON, DUNN & CRUTCHER LLP**
161 NW 6th Street, Suite 1010
Miami, FL 33136
(213) 229-7018
MHolecek@gibsondunn.com

Brian M. Lutz (*pro hac vice*)
Colin Davis (*pro hac vice*)
Jeff Lombard (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center
Suite 2600
San Francisco, California 94111
(415) 393-8200

*Counsel for Defendants KKR & Co. Inc., KKR
Knowledge Investors L.P., Stephen Shanley, and
Kara Wilson*

Martin B. Goldberg
Florida Bar No. 0827029
Benjamin R. Shiekman
Florida Bar No. 113114
mgoldberg@lashgoldberg.com
bshiekman@lashgoldberg.com
**LASHGOLDBERG**
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
(305) 347-4040

6

Colleen Smith *(pro hac vice)*
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, California 92130
(858) 523-5400
colleen.smith@lw.com

Jordan Cook (*pro hac vice*)
**LATHAM & WATKINS LLP**
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
(714) 755-8238
jordan.cook@lw.com

J. Christian Word (*pro hac vice*)
Stephen Nasko *(pro hac vice)*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 654-7130
christian.word@lw.com
stephen.nasko@lw.com

*Counsel for Defendants Jeremiah Daly, Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P., and Elephant Partners II-B, L.P.*

7