**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22574-CIV-ALTONAGA/Reid**

In re:

**KNOWBE4, INC.**
**SECURITIES LITIGATION**

_____/

**STIPULATED PROTECTIVE ORDER AND**
**STIPULATED ORDER GOVERNING DISCOVERY**

**THIS CAUSE** came before the Court upon the parties' Joint Motion for Protective Order and Stipulated Order Governing Discovery [ECF No. 129], filed on February 20, 2026.  The Court has considered and applied the Eleventh Circuit's four-factor test for assessing whether good cause exists for the issuance of such an order.  *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).  Being fully advised, it is

**ORDERED AND ADJUDGED** that the parties' Joint Motion for Protective Order and Stipulated Order Governing Discovery **[ECF No. 129]** is **GRANTED** as follows:

**A.  Stipulated Protective Order**

**Proceedings and Information Governed.**

1.      This Protective Order is made under Fed. R. Civ. P. 26(c). It shall govern the handling of documents, depositions, deposition exhibits, interrogatory responses, admissions, and any other information or material produced, given, or disclosed by any party or non-party ("Producing Party") to any other party ("Receiving Party") in connection with discovery in this litigation (such information or material hereinafter referred to as "Discovery Material") that are designated by a party as "Confidential" or "Highly Confidential" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing Discovery Material. For purposes of this Protective Order, the defined term "Producing Party" refers to and includes any Designating Party, as defined below in paragraph 7.

2.      The Parties to this litigation agree that the production of any Discovery Material by any non-party to this litigation shall be subject to and governed by the terms of this Protective

Order.  The Party seeking the production of Discovery Material from the non-party shall include in the discovery request a copy of this Protective Order.

**Designation and Maintenance of Information.**

3.      This Protective Order does not confer blanket protections on all disclosures or responses to discovery in this Action, and the protection it affords extends only to the limited information and documents that are entitled to confidential treatment under applicable legal principles.

4.      For purposes of this Protective Order, the "Confidential" designation means that the document contains information that is proprietary, commercially sensitive, or composed of trade secrets or commercial information that is not publicly known, or other information required by law or agreement to be kept confidential.  The Confidential designation does not include, and this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information, or information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

5.      The "Highly Confidential – Attorneys' Eyes Only" designation means that the document contains highly proprietary business, strategic, medical, financial commercially sensitive business information, trade secrets, or other similar information that is substantially likely to cause injury to the commercial, financial, strategic, or business interests of the producing party or its employees, customers, or clients if disclosed.

6.      Any Producing Party may designate any Discovery Material as Confidential under the terms of this Protective Order if such party in good faith reasonably believes that such Discovery Material falls within the scope of paragraph 4 above ("Confidential Discovery Material") or as Highly Confidential if such party in good faith reasonably believes that the Discovery Material falls within the scope of paragraph 5 above ("Highly Confidential Discovery Material").  The designation of Discovery Material as Confidential or Highly Confidential shall constitute a representation that such Discovery Material has been reviewed by an attorney engaged as part of the representation of the Designating Party, and that there is a good faith basis for such designation.

2

7.　For purposes of clarity, any party may designate Discovery Material as Confidential or Highly Confidential subject to the terms of this Protective Order, even if the designating party itself did not produce the Discovery Material at issue (the "Designating Party").

8.　Discovery Material within the scope of paragraph 4 above may be designated by the Producing Party as containing Confidential Discovery Material by placing on each page and each thing a legend, or otherwise conspicuously designating electronically stored information, substantially as follows: **CONFIDENTIAL**.

9.　Discovery Material within the scope of paragraph 5 above may be designated by the Producing Party as containing Highly Confidential Discovery Material by placing on each page and each thing a legend, or otherwise conspicuously designating electronically stored information, substantially as follows: **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.**

10.　A party may designate information disclosed at a deposition as Confidential or Highly Confidential Discovery Material by requesting the court reporter to so designate the transcript or any portion of the transcript at the time of the deposition.  If no such designation is made at the time of the deposition, any party will have fifteen (15) calendar days after receipt of the final deposition transcript to designate, in writing to the other parties and to the court reporter, whether the transcript is to be designated as Confidential or Highly Confidential Discovery Material.  If no such designation is made at the deposition or within this fifteen (15) calendar day period (during which period, the transcript must be treated as Highly Confidential Discovery Material, unless the Producing Party consents to less confidential treatment of the information), the entire deposition will be considered devoid of Confidential Discovery Material, though exhibits, if any, shall be treated in accordance with their designation under paragraphs 4 or 5.  Each Party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order.  It is the responsibility of counsel for each party to maintain materials containing Confidential or Highly Confidential Discovery Material in a secure manner and appropriately identified so as to allow access to such information only to such persons and under such terms as is permitted under this Protective Order.

**Inadvertent Disclosure of Protected Information/Inadvertent Failure to Designate.**

11. If information subject to a claim of attorney-client privilege, attorney work-product, common interest privilege, or any other ground ("Protected Information") on which production of such information should not be made to any party, is nevertheless inadvertently or otherwise produced, such production shall not constitute a waiver of, or estoppel as to, any claim of privilege, work product, or other ground for withholding production to which the Producing Party would otherwise be entitled. This provision shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).  The provisions of Rule 502(b) do not apply.  A Producing Party must, within seven (7) days of learning that Protected Information was unintentionally disclosed, notify the party receiving the Protected Information, in writing, that it has disclosed Protected Information without intending a waiver by the disclosure. The Parties' agreement to the terms set forth in this Order does not constitute a concession by any Party that any documents are subject to protection of privilege, nor is it intended to waive or limit in any way either Party's right to contest any privilege claims that may be asserted with respect to any of the documents produced.  If a claim of inadvertent production is made with respect to information then in the custody of another party, the Receiving Party shall not use such information for any purpose and shall promptly sequester, destroy, or return the information to the Producing Party. Following written notice to the Producing Party, and conferral, the Receiving Party may challenge the designation and seek an Order compelling production of the material, consistent with the Court's local rules and any applicable standing orders.  The Receiving Party may not use the fact of inadvertent production to argue that any applicable privilege has been waived.  Nothing in this Order is intended to alter, and this Order shall be interpreted consistent with, Federal Rule of Evidence 502(d) and Federal Rule of Civil Procedure 26(b)(5).

12. Inadvertent failure to designate Discovery Material as Confidential or Highly Confidential shall not constitute a waiver of such a claim and may be corrected by supplemental written notice.  Any party receiving such notice shall thereafter mark and treat materials as Confidential or Highly Confidential and such materials shall be fully subject to this Protective Order as if they had been initially so designated.  A person who disclosed Discovery Material that is subsequently designated as Confidential or Highly Confidential shall in good faith assist the Designating Party in its efforts to retrieve such Discovery Material from all recipients not entitled to receive such Discovery Material under the terms of this Protective Order and shall prevent

4

further disclosures except as authorized under the terms of this Protective Order.  Within ten (10) business days after receipt of the re-designated documents or materials, the Receiving Party shall certify in writing that it made its best efforts to ensure that all copies lacking the designation have been returned or destroyed, and in the case of documents bearing notes or other interlineations reflecting the work product of counsel representing such Receiving Party, destroyed.

**Challenge to Designations.**

13.     Nothing in this Protective Order shall be deemed to be an acknowledgement by any party that any designation of Discovery Material as Confidential or Highly Confidential is in fact entitled to such treatment.  No party shall be obligated to challenge the propriety of any other party's designation of Discovery Material as Confidential or Highly Confidential at the time of the designation, and any decision not to challenge such a designation shall not preclude a subsequent challenge to such a designation or be used in support or opposition of a motion to seal or unseal any documents designated Confidential or Highly Confidential.

14.     Any party may challenge a Designating Party's designation at any time.  Any party disagreeing with a designation may request in writing that the Designating Party change the designation.  The Designating Party will then have five (5) business days after receipt of a challenge notice to advise the Receiving Party whether or not it will change the designation. Reasonable extensions shall be provided if the number of challenged documents makes it impracticable to respond within the five (5) business days.  If the parties are unable to reach agreement through conferral, either in person or by phone or video, after the expiration of this five (5) business day time-frame then, the objecting party shall be free to seek Court intervention consistent with the Court's local rules and any applicable standing orders.  The burden of establishing confidentiality shall fall on the Designating Party.  Until any dispute under this paragraph is ruled upon by the Court, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

15.     Prior to the filing of documents under seal marked "Confidential Discovery Material" or "Highly Confidential Discovery Material," the parties will meet-and-confer to discuss whether any or all of the documents require being submitted under seal in accordance with the law governing the sealing of documents.  If any party believes sealing is warranted, it shall brief the issue in accordance with the Court's local rules. The burden of establishing that the documents

should be sealed shall remain with the Designating Party. If the Designating Party agrees, or if the Court determines, that information was improperly redacted, the Party who filed a redacted document will re-file it as a public filing within five (5) business days of the agreement or determination.

**Disclosure and Use of Confidential Information.**

16.     Discovery Material designated as Confidential or Highly Confidential may only be used for purposes of preparation, trial, and appeal of this action.  Confidential or Highly Confidential Discovery Material may not be used under any circumstances for any other purpose, including but not limited to any competitive or commercial activity.

17.     Subject to paragraphs 19 and 22 below, Confidential Discovery Material may be disclosed by the Receiving Party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order: (a) the Parties and their current employees, officers, directors, and managers; (b) outside counsel for any party to this litigation; (c) supporting personnel employed by (a) and (b), such as paralegals, legal secretaries, data entry clerks, legal clerks, and private photocopying services; (d) third-party experts or consultants; (e) any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court reporting services, demonstrative exhibit preparation, or the creation of any computer database from documents; (f) witnesses or deponents and their counsel, during the course of depositions or testimony in this litigation and, to the extent necessary, in preparation for depositions or testimony in this litigation; (g) insurers of any party to this litigation and insurers' counsel; (h) mediators or arbitrators that the parties engage or that the Court appoints in this litigation, and their employees; (i) the Court and its employees; (j) court reporters employed in connection with this litigation; and (k) any other person only upon order of the Court.

18.     All witnesses or deponents who appear at deposition or trial, and their counsel, will be provided with this Protective Order prior to such deposition or proceeding by the party deposing or calling the witness.  Notwithstanding that, all witnesses or deponents, and their counsel, will be bound by all of the provisions of the Protective Order.  Confidential and Highly Confidential Discovery Material may be introduced as an exhibit at a deposition without the witness executing an undertaking.  No witnesses or deponents or their counsel (except to the extent the counsel represents a party) shall be permitted to retain another party's Confidential or Highly Confidential Discovery Material after the conclusion of the testimony for which the witness or deponent used

6

the Designated Material to prepare, unless that witness is separately authorized to do so, *e.g.*, pursuant to Section 19(a) below.

19. Further, Confidential Discovery Material may be disclosed to a person who is not already allowed access to such information under this Protective Order if:

(a) the information was previously received, sent or authored by the person or was authored, sent or received by a director, officer, employee or agent of the company for which the person is testifying as a designee under Fed. R. Civ. P. 30(b)(6);

(b) the person is the Designating Party or a current or former director, officer, employee, consultant or agent of the Designating Party; or

(c) counsel for the Designating Party agrees in writing that the material may be disclosed to the person.

20. Further, all third-party experts and consultants who reasonably may be expected to receive Discovery Material designated Confidential or Highly Confidential shall be required, before receiving such information, to sign an undertaking in the form attached as Exhibit A hereto, agreeing in writing to be bound by the terms and conditions of this Protective Order, consenting to the jurisdiction of the United States District Court for the Southern District of Florida, for purposes of the enforcement of this Protective Order, and agreeing not to disclose or use any Confidential or Highly Confidential Discovery Material in a manner or for purposes other than those permitted hereunder.  All signed undertakings will be maintained by counsel for the party designating or hiring any expert or consultant.

21. Highly Confidential Discovery Material may be disclosed by the Receiving Party only to: (a) the Receiving Party, the Receiving Party's Outside Counsel of Record in this action, as well as employees of Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation; (b) experts of the Receiving Party to whom the disclosure is reasonably necessary for this litigation and who have signed the undertaking in the form attached as Exhibit A hereto; (c) the Court, Magistrate Judge, and their personnel, Special Masters or discovery referees who may be appointed by the Court, and any appellate court or other court and their personnel before whom the parties appear in this action; (d) court reporters, videographers, and their staff, professional jury or trial consultants, mock jurors, and professional vendors to whom disclosure is reasonably necessary and who have signed the undertaking in the form attached as Exhibit A hereto; (e) during their depositions or trial testimony, witnesses in the action

to whom disclosure is reasonably necessary; (f) mediation or settlement officers, and their supporting personnel, subject to the mutual agreement of the parties engaged in the settlement discussions, who have signed the undertaking in the form attached as Exhibit A hereto; (g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

22.     Counsel shall confirm that any third-party vendors engaged by Counsel agree to the terms and conditions of this Protective Order.  Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit B.

23.     In the event any Confidential or Highly Confidential Discovery Material, or the information therein, is disclosed to any person or other entity not authorized under the terms of this Protective Order to have access to that information, the party responsible for having made, and any party having knowledge of, that disclosure shall inform counsel for the Producing Party within a reasonable time, not to exceed five (5) business days of the date the party obtained knowledge of the unauthorized disclosure, concerning that disclosure and certify that it has made its best efforts to ensure that the person or other entity not authorized to have the information has returned or destroyed such material and all copies thereof (including summaries and excerpts). The responsible party also shall promptly take all reasonable measures to ensure that no further or greater unauthorized disclosure of such information or materials is made by anyone, and each party shall cooperate in good faith in that effort.  Nothing in this paragraph shall limit any party's right to seek sanctions or other relief from the Court for violation of this Protective Order.

24.     In the event additional parties join or are joined in this litigation, they shall not have access to Confidential Discovery Material until the newly joined party by its counsel has executed and filed with the Court its agreement to be fully bound by this Protective Order.

**Filing Documents with the Court.**

25.     If any party submits Confidential or Highly Confidential Discovery Material to the Court, the submission must be filed only under seal on CM/ECF if filed electronically as permitted by the Court.

26.     In the event that any Confidential or Highly Discovery Material is used in any court proceeding in this litigation or any appeal therefrom, said Confidential or Highly Confidential Discovery Material shall not lose its status as Confidential or Highly Confidential through such use.  Nothing in this Protective Order prevents any party from introducing Confidential and Highly

Confidential Discovery Material at trial.   Counsel shall confer in good faith regarding the procedures for use of Confidential or Highly Confidential Discovery Material in the course of any court proceedings, including trial.

### No Prejudice.

27.     Producing or receiving confidential information, or otherwise complying with the terms of this Protective Order, will not (a) operate as an admission by any party that any particular Confidential or Highly Confidential Discovery Material contains or reflects trade secrets or any other type of sensitive, confidential, or proprietary information; (b) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the Court that particular materials be produced; (d) prejudice the rights of a party to apply to the Court for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

28.     Nothing contained in this Protective Order shall preclude any party from using or disclosing its own Confidential or Highly Confidential Discovery Material information in any manner, without prior consent of any party or Court.

### Conclusion of Litigation.

29.     Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal with prejudice pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order shall use commercially reasonable efforts to destroy or return to the Producing Party all materials and documents containing Confidential or Highly Confidential Discovery Material, and upon request of the Producing Party, certify to the Producing Party that this destruction or return has been done.   However, outside counsel for any party and their experts are entitled to retain all court papers, hearing and trial transcripts, trial exhibits, deposition transcripts, deposition exhibits, legal memoranda, correspondence including emails, expert reports, attorney work product, and consultant and expert work product containing Confidential or Highly Confidential Discovery Material.   Outside counsel are not required to search their email and disaster recovery systems to comply with this Order.   Any retained materials must be maintained and protected in accordance with the terms of this Protective Order.

9

CASE NO. 25-22574-CIV-ALTONAGA/Reid

**Other Proceedings.**

30.     By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Subject to paragraph 23, any person or party subject to this Protective Order who may be subject to a subpoena, a motion to disclose, or other notice compelling the production of any information designated Confidential or Highly Confidential Discovery Material pursuant to this Protective Order must promptly notify in writing the Designating Party of such subpoena, motion, or other notice as soon as possible, not to exceed five (5) business days, so that the Designating Party may have an opportunity to appear and be heard on whether that information should be disclosed.

**Remedies.**

31.     This Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the Court, including the power to hold parties or other violators of this Protective Order in contempt.  All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

32.     Any party may petition the Court for good cause shown if the party desires relief from a term or condition of this Protective Order.

33.     The parties agree to be bound by the terms of this Protective Order pending its entry by the Court, or an alternative thereto that is satisfactory to all parties, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order had been entered by the Court.

**Exhibit A**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22574-CIV-ALTONAGA/Reid**

In re:

**KNOWBE4, INC.
SECURITIES LITIGATION**
_____ /

**CONFIDENTIALITY AGREEMENT FOR
THIRD-PARTY EXPERT OR CONSULTANT OF ANY PARTY**

I hereby affirm that:

Information, including documents and things, designated as "Confidential Discovery Material" or "Highly Confidential Discovery Material," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order, and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of the United States District Court for the Southern District of Florida for enforcement of the Protective Order.

I agree not to use any Confidential or Highly Confidential Discovery Material disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the Court.

I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

I understand that I am to retain all documents or materials designated as or containing Confidential or Highly Confidential Discovery Material in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof,

11

and any writings prepared by me containing any Confidential or Highly Confidential Discovery Material are to be returned to counsel who provided me with such documents and materials.

_____

Signed

_____

Printed Name

_____

Date

**Exhibit B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22574-CIV-ALTONAGA/Reid**

In re:

**KNOWBE4, INC.**
**SECURITIES LITIGATION**
_____ /

## <u>CONFIDENTIALITY AGREEMENT FOR NON-PARTY WITNESSES</u>

I hereby affirm that:

Information, including documents and things, designated as "Confidential Discovery Material" or "Highly Confidential Discovery Material," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order, and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of the United States District Court for the Southern District of Florida for enforcement of the Protective Order.

I agree not to use any Confidential or Highly Confidential Discovery Material disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the Court.

_____
Signed

_____
Printed Name

_____
Date

13

**B. Stipulated Electronic Discovery Protocol**

### I.  INTRODUCTION

This protocol will govern how the parties manage electronic discovery in the above-captioned action (the "Action").   Nothing herein shall prejudice the parties' prerogative to hereafter modify or waive any provisions of this stipulation by agreement.

The production specifications in this Protocol apply to documents that are produced in the first instance in this Action, by a party to this Action.  To the extent any party is required or agrees to re-produce documents in this Action that originally were produced or prepared for production in other cases or government investigations, or by a non-party, such documents may be produced in the same format in which they originally were produced or prepared for production.

### II.  PRESERVATION

The parties confirm that they have taken reasonable measures to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise, consistent with their obligations under the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act. The parties agree that preservation of potentially relevant electronically stored information ("ESI") will be reasonable and proportionate, consistent with their obligations under the Federal Rules of Civil Procedure.  For the avoidance of doubt, Fed. R. Civ. P 37(e) controls when a party fails to take reasonable steps to preserve discoverable information.

The parties agree there is no need to preserve data that is fragmented or in unallocated space and duplicative data stored on backup tapes reasonably accessible through other sources, in random access memory, temporary files, browser history files, cache files, and cookies.

### III.  IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner.  Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.  The parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms or predictive coding). The parties agree that any grounds for objections should be supported by specific information.

### A.     Sources

The parties will each provide their own proposed custodian lists to be used for the search of custodial ESI and disclose and discuss the non-custodial data sources likely to contain responsive information.  Each party shall undertake a reasonable search for responsive information across relevant custodial and non-custodial sources, consistent with their obligations under the Federal Rules of Civil Procedure.  Subject to the limitations on discovery imposed by the Court and the Federal Rules of Civil Procedure, the parties retain the right, upon reviewing the production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and will meet and confer regarding such requests.

### B.     Search Proposal

To the extent a producing party intends to use search terms to identify documents for review purposes in responding to a production request, the producing party shall identify those search terms that it reasonably believes would lead to the identification of responsive documents and the custodial and non-custodial sources to be searched. To the extent reasonably practicable, search terms will be crafted with input from persons with relevant knowledge of the underlying subject matter. The parties agree to collaborate on the refinement of such terms, which may include the sharing of hit reports or other search methodology information, as needed to reach agreement. If the requesting party reasonably believes additional or different aspects of the search proposal, including search terms are warranted, the requesting party shall promptly notify the producing party, and the parties shall meet and confer regarding such issues.

### C.     GenAI and Technology Assisted Review ("TAR")

If a party decides to use Generative AI, or TAR (collectively, "TAR") for the purpose of culling document collections to exclude documents from review, that party shall notify the opposing party and describe the general process and workflows, including a description of the data included and excluded from application of TAR and the validation of the results using statistical methods such as elusion sampling. Nothing herein shall be construed as an agreement by either party in favor of the use of TAR or other similar discovery tools.

### D.     Acknowledgment

Notwithstanding Sections III.A through III.C above, and with due consideration to principles of proportionality, the parties acknowledge their obligation to conduct a reasonable search for responsive, non-privileged documents, consistent with their obligations under the Federal Rules of Civil Procedure. This obligation is not limited solely to the application of agreed-upon custodians and search terms but includes the use of other proportional and reasonable efforts to identify documents likely to contain responsive information, consistent with their obligations under the Federal Rules of Civil Procedure.

## IV.  PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Absent an objection, parties shall produce hard copy documents in the format set forth herein.  If a party responding to a production request objects to this format, that party shall so state in its objections and responses and shall meet and confer with the requesting party in advance of producing any documents.

Absent objection, hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "Bates Start," "Bates End," "Page Count," and "Custodian," and for unitization purposes also include "Parent ID," "Attach ID," "BegAttach," "EndAttach," and "Folder ID" metadata fields.  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color, it may be produced in black-and-white format.  The receiving party may request that the document be produced as single-page, 300 DPI images with JPG compression and a high-quality setting if the black-and-white production has resulted in degradation of the original image or for any other good faith reason, in which case the parties shall meet and confer as to producing that document in that format or some other reasonably useable format.  Multi-page OCR text for each document should also be provided to the extent such OCR text can be provided or applied in an automated fashion.  Each party shall make a good faith attempt to maximize the text quality of the production through use of settings in the OCR software available to that party (or party's vendor).  The receiving party may request production of a color version of any document or documents, and such requests will not be unreasonably denied.  The receiving party may also request to inspect the original document if it determines that such inspection is necessary, and such requests will not be unreasonably denied.

## V.  PRODUCTION OF ESI

"ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

### A.  Format

Absent an objection, parties shall produce electronically stored information in the format set forth herein.  If a party responding to a production request objects to this format, that party shall so state in its objections and responses and shall meet and confer with the requesting party in advance of producing any documents.

Absent objection, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, source code, audio, and video files, which shall be produced in native format.  PowerPoint and other presentation file types shall be produced with single-page, 300 DPI TIFF/JPG color-for-color images, as applicable. Other than the native and presentation file type exceptions described herein, if an original document contains color, it may be produced in black-and-white format.  The receiving party may request that the document be produced as single-page, 300 DPI images with JPG compression and a high-quality setting if the black-and-white production has resulted in degradation of the original image or for any other good faith reason, in which case the parties shall meet and confer as to producing that document in that format or some other reasonably usable format.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  The parties will apply available settings and take reasonable steps to ensure TIFFs/JPGs show the text and images which would be visible to the reader using the native software that created the document, including tracked changes.  For example, TIFFs/JPGs of e-mail messages should include the BCC line.  PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden and shall be processed to show both the slide and the speaker's notes on the TIFF/JPG image.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format will also be provided.  Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents should be produced in native format, the parties agree to meet and confer in good faith.

The parties need not produce non-human readable electronic documents (for example documents that include only machine readable language), except upon a showing of good cause by the requesting party.

## B. De-Duplication

Each party may remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include the same content in those fields, even if all remaining content in the email is identical. De-duplication may be done across the entire collection (global de-duplication) and the "Custodian" field will list the primary custodian of a document after de-duplication, and the "Filepath" field will list a single filepath associated with the document. Any other custodians that are associated with the document (that are excluded due to De-Duplication) will be listed in an "AllCustodians" field separated by a semicolon, and the "AllFilePath" field will list each file path, separated by a semicolon. Removal of near-duplicate documents is not acceptable. To the extent email suppression is used, the receiving party may submit a list requesting lower-level or earlier-in-time emails for which header information, metadata, attachments, or other relevant content appears to be missing, incomplete, or is necessary for an accurate understanding of the email communication. The producing party shall, to the extent reasonably possible or available, re-produce such identified emails without truncated or missing portions.

## C. Document Families

If any part of a document, particularly emails, or its attachments is responsive, the entire document and all attachments shall be produced, *i.e.*, the entire family of documents, except: (i) where a family member is withheld pursuant to a valid claim of privilege, in which case that document will be replaced with a single-page TIFF image identifying the privilege or work product protection being claimed, and the rest of the family produced; and (ii) where the attachment is a non-substantive, automatically generated embedded file (*e.g.*, logos) or formatting file (*e.g.*, .ole or .dll). Attachments shall be produced sequentially after the parent e-mail and the metadata load file should include the relevant fields to provide the parent/child relationship. For such

18

attachments, the "BegAttach" and "EndAttach" metadata fields shall be populated to show the family relationship.

### D.  Modern/Linked Attachments

The Parties agree that regardless of whether a document is shared via hyperlink (e.g., SharePoint, Google Drive, etc.), the Parties will conduct a reasonable and proportional search of custodial and non-custodial sources likely to contain responsive information. Document(s) that are hyperlinked inside a responsive document (including hyperlinks inside emails) within a producing party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the requesting party in produced documents, the requesting party may submit a list of hyperlinks to a producing party to search for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the producing party, and the producing party will engage in good-faith effort to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a requesting party may identify to a producing party shall not be excessive and shall be reasonable and proportional to the needs of the case, and not unduly burdensome.

### E.  Partially Privileged Documents

If only a portion of a responsive document or document family is privileged, the producing party will redact the privileged content and produce all responsive non-privileged portions of the document family, consistent with the Federal Rules of Civil Procedure and Eleventh Circuit precedent regarding same.

### F.  Metadata

All individually maintained ESI will be produced with a delimited, database load file that contains the metadata fields below to the extent feasible . except that to the extent any party is required or agrees to re-produce ESI that originally was produced or prepared for production in other cases or government investigations, such ESI may be produced with the same metadata fields in which they originally were produced or prepared for production. The metadata produced should have the correct encoding to enable preservation of the documents' original language.  Unless otherwise agreed, the parties shall use the following Metadata fields where available:

General Metadata Fields:

- BegBates: First Bates Number Branded on First Image of Document

- EndBates: Last Bates Number Branded on Last Image of Document

- BegAttach: BegBates of Absolute Parent Document

- EndAttach: EndBates of Last Page in Document Family

- Parent ID: Contains the BegBates of an attachment's parent

- Attachment ID: Contains the BegBates of an attachment

- Attachment List: BegBates values of all attachments delimited by semicolons

- Page Count: Page count of document

- Confidentiality: Confidentiality designation for the document1

- Redacted: Identifies all documents that have been redacted either in image or native format with a Yes/No indicator

- Embedded: A Yes/No indicator that identifies whether a document is embedded in another document

- Extracted Text: File path to Extracted Text/OCR File

- Native Link: Path and file name to a produced native format file

- Hash Value: MD5 or SHA-1 hash value

Metadata from Email:
- Email Subject [subject to any redaction for privilege]

- Email Author (From)

- Email Recipient (To)

- Email CC

- Email BCC

- Email Received Date: MM/DD/YYYY HH:MM:SS AM/PM

- Email Sent Date: MM/DD/YYYY HH:MM:SS AM/PM

- Meeting Start Date: The start date of a calendar entry MM/DD/YYYY HH:MM:SS AM/PM

- Meeting End Date: The end date of a calendar entry MM/DD/YYYY HH:MM:SS AM/PM

---

1 Where this field is not consistent with the face of a document image or produced native file name, the higher designation controls until the parties resolve the inconsistency.

- Conversation Index: The Outlook Conversation Index ID used to tie together email threads

- Message ID: The Outlook Message ID

- Importance: Indicates the priority level of an email

Metadata from Electronic Files:
- File Name [subject to any redaction for privilege]

- File Author

- File Manager: Native File Application (e.g. Microsoft Excel, Word, etc.)

- File Date Created: MM/DD/YYYY HH:MM:SS AM/PM

- File Last Modified Date: MM/DD/YYYY HH:MM:SS AM/PM

- Last Modified By: Name of the person who last modified or saved the document

- File Extension

- Track Changes: A Yes/No indicator that identifies whether a document has tracked changes

Data for both Email and Electronic Files:
- Custodian: Last name, First name

- AllCustodians: (semicolon delimited) Last name, First name

- File Path: location of original file on disk or in mail container

- AllFilePath: The file paths from the locations in which removed duplicate documents were stored

For other types of ESI which do not conform to the standard metadata listed above, including, but not limited to, text messages, messaging apps, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

**G. Bates numbering**

Each TIFF/JPG image produced shall be branded with a Bates number that (i) identifies the producing party; (ii) maintains a constant length of nine numeric digits (including 0-padding) across the entire production; and (iii) is sequential, both within each document and across the production set, but should not include the Bates number in the extracted text of the ESI.  Each TIFF/JPG image file shall be named with the same page-level Bates number branded on the underlying image.  For ESI that is produced subject to a claim of confidentiality pursuant to the

Protective Order entered in this Action (the "Protective Order"), the producing party shall electronically brand the appropriate confidentiality designation onto each page of the document, but should not include the confidentiality designation in the extracted text of the ESI.

### H.  Text Files and OCR

All documents and ESI shall be produced with a corresponding multipage searchable text file (*i.e.*, one .TXT file per electronic file as opposed to one text file per page).  The text file for ESI shall contain full text extraction and be created by extracting text directly from the underlying native file, unless the ESI must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the ESI.  Each text file shall be named with the beginning Bates number of the electronic file to which the text file relates.

### I.  Embedded Objects

Embedded files should be included in the parties' productions, unless the embedded object is:  (1) a file fragment that is fully visible in the parent document; (2) unreadable; or (3) the parties otherwise agree.

### J.  Compressed File Types

Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### K.  Electronic Messages

Non-privileged, responsive electronic messages (*e.g.*, iMessage, SMS, MMS, Snapchat messages, MS Teams Chat, WhatsApp, G-Chat, Instant Bloomberg, Slack, etc.) shall be produced in a searchable format that preserves the presentational features of the original message, *e.g.*, emojis, images, and video files, to the extent reasonably feasible, and shall be produced with its relevant conversation thread broken down by 24 hour increments.  To the extent a requesting party believes that an electronic message was not produced in a searchable format that preserved material presentation features of the original message, the requesting party shall identify the message by Bates number, and the producing party will investigate whether it is possible to produce the message in a different format.

### L.  Dynamic Fields

All dynamic date and time fields, where such fields are processed to contain a value, shall, to the extent reasonably feasible, be processed with a single date and time setting that is consistent

across each party's productions, and in a way that maintains the date/time shown in a document as it was last saved by the custodian or end user, not the date of collection or processing.

### M.  Hidden Content, Speaker Notes, Comments, and Tracked Changes

To the extent that a document contains hidden content, tracked changes, comments, notes, or other similar information, it shall be imaged so that such information is captured on the produced image file as it would appear in the native format of the document. To the extent reasonably possible, documents with track changes will be marked with a "Yes" in the load file under the "Track Changes" metadata field.

### N.  Proprietary or Customized Software

To the extent that relevant ESI cannot be rendered or reviewed in a reasonably useable form without the use of proprietary or customized software, the parties will meet and confer to determine whether and to what extent producing such ESI is necessary and, if so, how that can be accomplished.

### O.  Structured Data

To the extent parties produce electronically stored information from a database, either party may propose the production of all relevant information by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.  The producing and requesting parties shall then meet and confer concerning producing information in this fashion.

### P.  Encrypted Files

To the extent reasonably feasible, any password protected or encrypted documents shall be processed to unlock any passwords or encryption, and the unlocked or decrypted document produced.  To the extent such documents are unable to be processed successfully to decrypt the documents included in a party's production, the parties agree to: (i) produce a slip-sheet for each encrypted or password protected document that cannot successfully be processed, indicating that the document cannot be decrypted; and (ii) provide the metadata for the document specified herein.

### Q.  Secure Production Delivery

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

### R. Redactions

If documents that the parties have agreed to produce in native format need to be redacted, the parties may use standard e-discovery native redaction software for applicable files. If a party needs to redact native files that are not redactable using native redaction software, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. In all cases, any redactions and the basis upon which redactions were applied shall be clearly indicated on the face of the document where information has been redacted, and the metadata field Redacted shall be marked with a "Yes."

### S. Document Production Prior to Deposition

To the extent practicable, the parties agree to complete the production of a deponent's custodial file at least ten (10) days prior to the scheduled deposition.

### T. Privilege Log

The parties agree to exchange privilege logs that comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure within 21 days of the completion of document production. Privilege logs will be provided in a searchable and sortable spreadsheet format, as applicable. Certain privileged communications or documents need not be included in a privilege log unless otherwise agreed to by the parties or ordered by the Court: (a) communications to or from outside legal counsel after the commencement of, and related to, the Delaware Action (meaning the lawsuit captioned *Le Clair, et al. v. KnowBe4, Inc., et al.*, No. 2024-1143-KSJM in the Delaware Court of Chancery) or this Action; (b) work product of counsel and the parties after the commencement of, and related to, the Delaware Action or this Action; and (c) any communications regarding litigation holds or preservation, collection, or review of discoverable information in the Delaware Action or this Action, unless and until one or both parties raise issues concerning the preservation, collection, or production efforts of the other party; (d) documents with redactions. The parties will meet and confer in good faith regarding the scope of the privilege log, including seeking clarity regarding the privilege basis regarding documents with redactions, should any issue arise. If the receiving party reasonably requires further information, it shall explain the need for such information and identify in writing, by Bates number or other unique identifier where reasonably feasible and if not then by category, each document or category of documents for which it seeks this information. The producing party will respond to any such reasonable request by providing in writing a more detailed description of the nature of the withheld information that will enable the receiving party

24

CASE NO. 25-22574-CIV-ALTONAGA/Reid

to assess the claim of privilege, consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

In an effort to avoid unnecessary expense and burden, the parties agree that, for documents withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing party will prepare a log containing, for each document (except those exempted above): (a) the privilege(s) claimed and basis for the claim; (b) the date of the document; (c) the name/email address, or other data identifying the author(s)/addresser, as applicable, including specifically identifying any person who is an attorney or an employee of any legal department as such; (d) the name/email address, or other data identifying the addressee(s), as applicable,  including specifically identifying any person who is an attorney or an employee of any legal department; (e) a description of the document or communication sufficient to allow the receiving party to assess the claimed privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and (f) the custodian, or custodians.

If the receiving party contests a privilege claim, the receiving party must notify the producing party in writing.  The parties must attempt to confer in good faith to resolve any challenge.

**Nothing in this Order amends the Scheduling Order's [ECF No. 108] prohibition on the filing of discovery motions or approves the filing of motions to seal.**

**DONE AND ORDERED** in Miami, Florida, this 23rd day of February, 2026.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

25