**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22574-CIV-ALTONAGA/Reid**

In re:

**KNOWBE4, Inc.**
**SECURITIES LITIGATION**
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants' Motion for Reconsideration [ECF No. 112].[1]  Lead Plaintiffs[2] filed a Response [ECF No. 123]; to which Defendants filed a Reply [ECF No. 130].[3]  The Court has reviewed the parties' written submissions, the record, and applicable law.  For the following reasons, the Motion is granted.

## I.  BACKGROUND

The Court assumes the reader's familiarity with the case and briefly recounts procedural facts and allegations relevant to the Motion.  On September 23, 2025, Plaintiffs filed a Consolidated Amended Class Action Complaint ("ACAC") [ECF No. 70], asserting three claims for relief under the Securities Exchange Act of 1934 ("Exchange Act").  (*See generally* ACAC). In Count I, Plaintiffs allege all Defendants disseminated a proxy statement containing material misrepresentations, in violation of Section 14(a) of the Exchange Act, 15 U.S.C. section 78n(a)

---

[1] Defendants, KKR & Co. Inc., KKR Knowledge Investors L.P. (collectively, "KKR"); Elephant Partners, Elephant Partners I, L.P., Elephant Partners II, L.P., Elephant Partners 2019 SPV-A, L.P., and Elephant Partners II-B, L.P. (collectively, "Elephant Partners") moved for reconsideration.  (*See generally* Mot.). Vista Equity Partners Management, LLC ("Vista") filed a Joinder in KKR's and Elephant Partners' Motion ("Vista Supplemental Brief") [ECF No. 114].  The Court refers to the moving Defendants as "Defendants."

[2] Lead Plaintiffs ("Plaintiffs") are the Water Island Event-Driven Fund, the AltShares Merger Arbitrage ETF, The Arbitrage Fund, and the Hilary L. Shane Revocable Trust.

[3] Vista also filed a Reply ("Vista Supplemental Reply") [ECF No. 132].

and Securities & Exchange Commission ("SEC") Rule 14a–9, 17 C.F.R. section 240.14a–9. (*See* ACAC ¶¶ 204–14). In Count II, Plaintiffs allege all Defendants made or disseminated material misrepresentations and omissions, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. section 78j(b) and SEC Rule 10b–5, 17 C.F.R. section 240.10b–5. (*See* ACAC ¶¶ 215–26). And in Count III, Plaintiffs allege Vista, KKR, Elephant Partners, and seven individual Defendants were controlling persons of the company whose conduct violated Section 20(a) of the Exchange Act, 15 U.S.C. section 78t(a). (*See* ACAC ¶¶ 227–35).

On October 7, 2025, Defendants moved to dismiss the ACAC with prejudice for failure to state claims upon which relief can be granted. (*See generally* Mot. to Dismiss [ECF No. 79]). In support, Defendants made an argument that serves as the basis for the present Motion: that Count II should be dismissed as to all Defendants except KnowBe4 and Sjoerd Sjouwerman because no Defendant other than those two "made" the misstatements or omissions, as is required to state a claim under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), and related precedent. (*See* Mot. to Dismiss 23; Mot. to Dismiss Reply [ECF No. 99] 14–15).[4]

On December 23, 2025, the Court entered an Order [ECF No. 100] on the Motion to Dismiss. The Court found five misstatements or omissions across two categories are actionable, and the remaining statements in two other categories are not actionable. (*See* Dec. 23, 2025 Order 9–24). The Court dismissed Count II against KnowBe4, Jeremiah Daly, Stephen Shanley, and Kara Wilson. (*See id.* 31). As to the actionable statements, Count I remains against all Defendants; and Count II remains against Shrikrishna Venkataraman, Kevin Klausmeyer, Gerhard Watzinger, Sjouwerman, KKR, Elephant Partners, and Vista. (*See id.* 30–31). Count III also survives with respect to adequately pleaded primary violations. (*See id.* 34).

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

The Order did not address Defendants' contention that Count II should be dismissed as to certain Defendants because they did not make the alleged misstatements. (*See generally id.*). On January 30, 2026, Defendants moved for reconsideration for this reason. (*See generally* Mot.; *see also* Vista Suppl. Br.).

## II. LEGAL STANDARD

"The decision to grant or deny a motion for reconsideration is committed to the district court's sound discretion." *Pena v. U.S. Coast Guard Seventh Dist.*, No. 18-23188-Civ, 2019 WL 6210959, at *1 (S.D. Fla. Nov. 21, 2019) (citation omitted). There are three major grounds that justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (citations omitted). Defendants rely on the third ground. (*See* Mot. 2; Vista Suppl. Br. 3).

## III. DISCUSSION

The Court addresses the contentions regarding *Janus* and whether sufficient facts are alleged showing Defendants made the challenged statements.

### A. Background Regarding Actionable Statements & Rule 10b–5

In the Order, the Court held five statements or omissions are actionable. (*See* Dec. 23, 2025 Order 22, 24). Four statements — at ACAC ¶¶ 114, 121–22, and 125 — comprise one group and pertain to the fairness of the merger of KnowBe4 and Vista ("Merger"). (*See id.* 19–22). The statement at ACAC ¶ 114 appeared in an October 12, 2022 press release ("Press Release") announcing the Merger. (*See* ACAC ¶¶ 111, 114). The statements at ACAC ¶¶ 121–22, and 125 appeared in a December 22, 2022 proxy statement KnowBe4 filed with the SEC in connection with the Merger ("Proxy"). (*See id.* ¶¶ 119, 121–22, 125). The fifth actionable statement — at

ACAC ¶ 136 — is distinct and regards KKR's decision to increase its rollover upon learning of the Merger price.  (*See* Dec. 23, 2025 Order 22–24).  The statement at ACAC ¶ 136 appeared in the Proxy.  (*See* ACAC ¶ 136).

KnowBe4 and Vista issued the Press Release.  (*See id.* ¶ 111).  As CEO of KnowBe4, Sjouwerman signed the Proxy, which was issued "By Order of the Board of Directors[.]"  (*Id.* ¶ 119 (alteration added)).  The Proxy incorporated by reference the Press Release.  (*See id.* ¶ 111).  On December 22, 2022, KnowBe4, Vista, KKR, and Elephant Partners jointly filed a Schedule 13E-3 ("13E-3") with the SEC in connection with the Merger.  (*See id.* ¶ 140).  The 13E-3 attached and incorporated by reference the Proxy.  (*See id.* ¶¶ 140, 209).

Defendants assert Count II must be dismissed against Vista, KKR, and Elephant Partners (collectively, the "Purchaser Filing Entities") based on *Janus* and related authority.  (*See* Mot. 2, 6; Vista Suppl. Br. 3).[5]  Defendants explain that the Purchaser Filing Entities cannot be liable under Section 10(b) of the Exchange Act because under *Janus*, liability only extends to a statement's "maker" — the person or entity with "ultimate authority" over its content.  (Mot. 4 (quotation marks omitted; quoting *Janus*, 564 U.S. at 142); *see also id.* 4–5; Vista Suppl. Br. 2–3; Reply 2–3; Vista Suppl. Reply 2–3).  Defendants also assert that the Purchaser Filing Entities did not become makers of the Proxy's statements by incorporating the Proxy by reference in the 13E-3.  (*See* Mot. 5; Reply 3–4; Vista Suppl. Reply 2).

---

[5] *See In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 361 (S.D.N.Y. 2025) ("*Janus* only discussed the controlling standard for a Section 10(b) claim and thus does not apply to Section 14(a) and Rule 14a[–]9 claims." (alteration added; citation omitted)).

According to Plaintiffs, by filing the 13E-3, which incorporated by reference the Proxy, the Purchaser Filing Entities made the statements in the Proxy.  (*See* Resp. 13–14).[6]  Alternatively, Plaintiffs contend Defendants are liable on a scheme liability theory under SEC Rules 10b–5(a) and (c) for disseminating the actionable statements in the Proxy.  (*See* Resp. 15); *see also Lorenzo v. SEC*, 587 U.S. 71, 73 (2019).  Defendants insist that Plaintiffs cannot sustain a scheme liability theory because they do not sufficiently plead it in the ACAC and did not raise it in their Response to the Motion to Dismiss, and because Defendants did not disseminate the Proxy with the requisite intent to defraud.  (*See* Reply 4–5; Vista Suppl. Reply 3–4).[7]

SEC Rule 10b–5 and Exchange Act Section 10(b) form the basis of Count II.  (*See* ACAC ¶¶ 215–26).  Rule 10b–5 makes it unlawful: "(a) [t]o employ any device, scheme, or artifice to defraud[;] (b) [t]o make any untrue statement of a material fact or to omit to state a material fact . . . [;] or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit[.]"  17 C.F.R. § 240.10b–5 (alterations added).  Together, "[t]hese provisions capture a wide range of conduct." *Lorenzo*, 587 U.S. at 79 (alteration added).  The Court refers to liability under Rule 10b–5(b) as "maker" or "misstatement" liability and to liability under Rules 10b–5(a) and (c) as "scheme" liability.  Plaintiffs assert both theories in Count II.

---

[6] Plaintiffs also assert the Purchaser Filing Entities made the statement at ACAC ¶ 122, since the statement is attributed to those entities.  (*See* Resp. 14–15; ACAC ¶ 122 (stating the Purchaser Filing Entities "believe the Merger is substantively and procedurally fair to KnowBe4's" public stockholders (emphases omitted))).

[7] Vista also contends that it "articulates a distinct legal theory[ — ]one specific to its status as a transacting counterparty[ — ]that distinguishes it from . . . any other [D]efendant here."  (Vista Suppl. Reply 4 (emphases omitted; alterations added)).  Vista provides no authority substantiating this *theory*, and its arguments ultimately turn on the same concept as those of KKR and Elephant Partners: that the Purchaser Filing Entities did not make the challenged statements because they did not have authority over the statements' contents.  (*See id.* 2–4).

### B. Maker Liability

For purposes of Rule 10b–5(b), "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. . . . One who prepares or publishes a statement on behalf of another is not its maker." *Janus*, 564 U.S. at 142 (alteration added). A speechwriter, for example, cannot be liable for the statements of the person who delivers the speech, as the speaker ultimately controls the speech's content. *See id.* at 143. Even one party's "significant[] involve[ment] in preparing" statements made by another does not mean the first party made those statements if they were "subject to the ultimate control" of the second party. *Id.* at 148 (alterations added).[8] Publishing or distributing a statement on behalf of another also does not create liability under Rule 10b–5(b). *See id.* at 142; *Zazzali v. Alexander Partners, LLC*, No. 12-828, 2013 WL 5416871, at *6 (D. Del. Sep. 25, 2013).

Additionally, "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by[ — ]and only by[ — ]the party to whom it is attributed." *Janus*, 564 U.S. at 142–43 (alterations added); *see also SEC v. Spartan Sec. Grp., Ltd.*, 164 F.4th 1231, 1255 (11th Cir. 2026) (citing *Janus*, 564 U.S. at 142–43).

"Nothing in *Janus* precludes a single statement from having multiple makers." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 427 (7th Cir. 2015) (citations omitted);

---

[8] Group pleading is the "presumption of group responsibility for statements and omissions[.]" *Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) (alteration added). While the Eleventh Circuit has not determined whether *Janus* abrogated the group pleading doctrine, some courts have held it did. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 638–41 (S.D.N.Y. 2017) (discussing courts' divergent holdings on the issue and concluding *Janus* abrogated group pleading). The Court assumes that, for liability under Rule 10b–5(b), regardless of whether *Janus* abrogated the group pleading doctrine, Plaintiffs must allege specific facts as to each Defendant's ability to control the content of a misstatement or omission. *See Thorpe v. Walter Inv. Mgmt., Corp.*, No. 14-cv-20880, 2014 WL 11961964, at *8–9 (S.D. Fla. Dec. 23, 2014) (explaining, without deciding whether group pleading is viable after *Janus*, that a complaint much allege each defendant's ability to control the contents of the statements); *Banco Bradesco*, 277 F. Supp. 3d at 640–41 (concluding that in light of *Janus*'s abrogation of the group pleading doctrine, a plaintiff must allege the individual defendants possessed ultimate authority over the statements).

*see also In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 240 (S.D.N.Y. 2018) (issuer and signer of SEC filing can both be liable for statements therein). This is also true for a statement attributed to another party. *See City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 n.9 (S.D.N.Y. 2011) ("[*Janus*] does not imply that there can be only one 'maker' of a statement in the case of express or implicit attribution." (alteration added)); *see also Abdo v. Fitzsimmons*, No. 17-cv-00851, 2021 WL 616324, at *7 (N.D. Cal. Feb. 17, 2021) (statements can be attributed to more than one party).

The Court first addresses the statement at ACAC ¶ 114 from the Press Release; then the statement at ACAC ¶ 122 from the Proxy; then the statements at ACAC ¶¶ 121, 125, and 136, also from the Proxy.

Plaintiffs allege that Vista and KnowBe4 — and no other Defendants — issued the Press Release. (*See* ACAC ¶¶ 111, 217; Resp. 13–15 & n.3 (not explaining how any Defendant other than Vista or KnowBe4 made the statements in the Press Release or otherwise controlled their contents); Mot. to Dismiss Resp. [ECF No. 96] 23–24 (same); *see also generally* ACAC). Further, the statement at ACAC ¶ 114 is not attributed to KKR or Elephant Partners. Thus, Vista is the only Purchaser Filing Entity that made the statement at ACAC ¶ 114; neither KKR nor Elephant Partners is alleged to have made this statement. *See Janus*, 564 U.S. at 142–43.

Next, the statement at ACAC ¶ 122 represents that the Purchaser Filing Entities believed the Merger was fair to KnowBe4's public stockholders. (*See* ACAC ¶ 122; *see also* Resp. 14–15). Because the statement is expressly attributed to the Purchaser Filing Entities, these Entities allegedly made the statement at ACAC ¶ 122. *Janus*, 564 U.S. at 142.

Last, none of the final three actionable statements is attributed to the Purchaser Filing Entities. (*See* ACAC ¶¶ 121, 125, 136). Plaintiffs also do not allege that the Purchaser Filing

CASE NO. 25-22574-CIV-ALTONAGA/Reid

Entities were involved in preparing the Proxy or otherwise controlled its content. (*See generally* ACAC). The Purchaser Filing Entities thus cannot be liable on a maker liability theory for the statements at ACAC ¶¶ 121, 125, 136. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 576 n.14 (S.D.N.Y. 2014) (no maker liability for misstatements or omissions without "particularized allegations that [defendant] had any role in shaping [those statements'] content" (alterations added)), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *see also Cannavest*, 307 F. Supp. 3d at 242 (generic, conclusory allegations of authority over misleading statements are insufficient); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012) (sufficient to allege defendant's "participation in drafting relevant disclosures, his position on the disclosure committee, his review of draft filings," and his approval of the SEC filings).

Instead, Plaintiffs contend that the Purchaser Filing Entities made the statements in the Proxy because they filed the 13E-3, which incorporated by reference the entire Proxy. (*See* Resp. 13–14; *see also* Mot. to Dismiss Resp. 24; ACAC ¶ 140).[9] Defendants maintain that the Purchaser Filing Entities' incorporation by reference of the Proxy into the 13E-3 did not render them makers of the Proxy's statements. (*See* Mot. 4–5; Reply 3–4; Vista Suppl. Reply 2).

No party supplies authority addressing Plaintiffs' theory: that a party that makes one SEC filing that incorporates by reference a second SEC filing is the maker of the statements in the

---

[9] Plaintiffs also assert, without supporting authority, that because in the 13E-3, the Purchaser Filing Entities directed readers to certain sections of the Proxy, that rendered the Purchaser Filing Entities makers of the Proxy's statements. These allegations do not show the Purchaser Filing Entities' authority over the contents of the statements in the Proxy, so this theory does not help Plaintiffs plausibly allege that the Purchaser Filing Entities made the statements in the Proxy. *See Janus*, 564 U.S. at 142–43; (*see* Resp. 14).

second SEC filing.[10, 11]  Yet as Defendants note (*see* Reply 4 (citations omitted)), those who sign SEC filings that attach additional documents such as press releases are generally not found to have made the statements in the attached documents, *see, e.g.*, *Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 363 (S.D.N.Y. 2022) (signer of SEC filing did not make statements in attached press release); *Levy v. Gutierrez*, No. 14-cv-443, 2017 WL 2191592, at *12 (D.N.H. May 4, 2017) (same); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-6509, 2020 WL 3026564, at *14–16 (D.N.J. June 5, 2020) (signer of SEC filing did not make statements in attachments whose content the signer did not control); *see also In re Fannie Mae*, 891 F. Supp. 2d at 485 (noting plaintiff's inability to substantiate its assertion of maker liability for SEC filings incorporated by reference into stock offering materials).

Considering the principles discussed in these cases, the Court is persuaded that the Purchaser Filing Entities did not allegedly make all the statements in the Proxy merely by incorporating the Proxy by reference in the 13E-3.  The only statement in the Proxy that Vista,

---

[10] (*See* Mot. 4–5 (citations omitted); Vista Suppl. Br. 2–3 (citation omitted); Reply 3 (citations omitted)); *see In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) (defendant that paid for stock promoters' articles but had no control over the articles' contents did not make the statements in the articles); *A&M Mgmt. Inc. v. Deme*, No. 18-63099-Civ, 2019 WL 7344795, at *3 (S.D. Fla. Mar. 14, 2019) (defendants who endorsed statements did not make those statements); *Cannavest*, 307 F. Supp. 3d at 242 (alleging that defendant was a senior official or held a significant ownership stake in a company does not render defendant a maker of that company's statements); *In re Fisker Auto. Holdings, Inc. S'holder Litig.*, No. 13-2100, 2015 WL 6039690, at *17 (D. Del. Oct. 15, 2015) (defendant not maker of statements in news article third party wrote about him); *Meitav Dash Provident Funds & Pension Ltd. v. Spirit Aerosystems Holdings, Inc.*, No. 20-cv-00054, 2022 WL 377415, at *11 (N.D. Okla. Jan. 7, 2022) (similar), *aff'd*, 79 F.4th 1209 (10th Cir. 2023).

[11] (*See* Resp. 13–15 (citations omitted)).  In each of the three cases Plaintiffs cite, the defendants were held to be makers of statements in documents that reflected or referenced information derived from a different source.  *See Flynn v. Exelon Corp.*, No. 19-c-8209, 2021 WL 1561712, at *6 (N.D. Ill. Apr. 21, 2021); *In re Nevsun Res. Ltd.*, No. 12-Civ-1845, 2013 WL 6017402, at *11 (S.D.N.Y. Sep. 27, 2013); *Spartan Sec. Grp., Ltd.*, 2020 WL 7695698, at *10.  Plaintiffs' theory is different: their theory is that by making the statements in one document, which incorporated by reference a second document, Defendants made the statements in the second document.

KKR, and Elephant Partners allegedly made is therefore the one at ACAC ¶ 122; Vista, KKR, and Elephant Partners are not alleged to have made the statements at ACAC ¶¶ 121, 125, and 136.[12]

In sum, in Count II, Plaintiffs adequately allege a maker liability theory for Vista as to the statements at ACAC ¶¶ 114 and 122.  Plaintiffs adequately allege a maker liability theory for KKR and Elephant Partners as to the statement at ACAC ¶ 122.

### C.  Scheme Liability

A defendant who does not make a misleading statement or omission cannot be liable under Rule 10b–5(b), but a defendant who "disseminate[s] false or misleading statements to potential investors with the intent to defraud[] can be found to have violated the *other* parts of Rule 10b–5, subsections (a) and (c)[.]"  *Lorenzo*, 587 U.S. at 74 (emphasis in original; alterations added). "[T]hat is so even if the disseminator did not 'make' the statements and consequently falls outside subsection (b) of the Rule."  *Id.* at 78 (alteration added).  "The main difference between a 10b–5(b) misrepresentation claim and a 10b–5(a) and (c) scheme liability claim is that, while 10b–5(b) involves deceptive statements, 10b–5(a) and (c) scheme liability involves deceptive conduct."  *Gnanaraj v. Lilium N.V.*, No. 23-cv-80232, 2024 WL 3916758, at *10 (S.D. Fla. Aug. 23, 2024) (quotation marks and citation omitted).

"To allege a violation of Rule[s] 10b[–]5(a) and (c), a plaintiff must plausibly allege that (1) the defendant committed a deceptive or manipulative act (2) in furtherance of the alleged scheme to defraud (3) with scienter."  *Id.* (alterations added; citation omitted).  While there is "considerable overlap among the subsections of" Rule 10b–5, *Lorenzo*, 587 U.S. at 80, scheme liability claims may not be "premised solely on [d]efendants' alleged misrepresentations and

---

[12] To be clear, as Plaintiffs cannot assert maker liability for the statements in the Proxy based on the Proxy's incorporation by reference into the 13E-3, they cannot assert maker liability for the statements in the Press Release by extending their incorporation theory another degree.  (*See* ACAC ¶ 111 (Press Release incorporated by reference into Proxy)).

omissions[,]" *Gnanaraj*, 2024 WL 3916758, at \*11 (alterations added).  The Eleventh Circuit has not spoken since *Lorenzo* on what deceptive conduct states a scheme liability claim, but courts generally hold that an "actionable scheme liability claim . . . requires something *beyond* misstatements and omissions."  *Id.* (emphasis in original; alteration added; quotation marks omitted; quoting *SEC v. Rio Tinto PLC*, 41 F.4th 47, 49 (2d Cir. 2022)); *see also SEC v. Kinetic Inv. Grp., LLC*, No. 20-cv-394, 2024 WL 4869623, at \*14 (M.D. Fla. Nov. 22, 2024) (citation omitted) (same); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 251 (S.D.N.Y. 2022) (plaintiffs cannot establish scheme liability "*solely* on the basis of [defendant]'s misstatements or omissions . . . . [p]laintiffs must allege something extra" (emphasis in original; alterations added; quotation marks and citation omitted)).

When a plaintiff sets forth different allegations regarding making a statement and engaging in a deceptive scheme, a defendant can be liable under both Rules 10b–5(b) and 10b–5(a) and (c). *See In re RenovaCare, Inc. Sec. Litig.*, No. 21-cv-13766, 2024 WL 2815034, at \*23 (D.N.J. June 3, 2024) (scheme and maker liability are possible "based on the same set of facts, where the plaintiffs allege both that the defendants made misrepresentations in violation[] of Rule 10b–5(b), as well as that the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations" (alteration added; quotation marks and citation omitted)); *contra Gnanaraj*, 2024 WL 3916758, at \*10 ("*identical* factual allegations in support of each alleged Rule 10b[–]5 violation" cannot support claims under multiple subsections (emphasis in original; alteration added)).  But "disseminating one's own misstatement is equivalent to making a misstatement" "and cannot independently undergird a scheme[ ]liability claim." *SEC v. Patel*, 794 F. Supp. 3d 111, 125 (E.D.N.Y. 2025) (alteration added; quotation marks and citation omitted).

As explained, Plaintiffs adequately allege the Purchaser Filing Entities made the statement at ACAC ¶ 122, and that Vista made the statement at ACAC ¶ 114.  The Purchaser Filing Entities cannot be liable for disseminating their own statement at ACAC ¶ 122, and Vista also cannot be liable for disseminating its own statement at ACAC ¶ 114.  *See Gnanaraj*, 2024 WL 3916758, at *10; *Patel*, 794 F. Supp. 3d at 125.  The Court addresses the Purchaser Filing Entities' potential scheme liability for the remaining statements in the Proxy (at ACAC ¶¶ 121, 125, and 136); as well as KKR and Elephant Partners' potential scheme liability for the statement in the Press Release (at ACAC ¶ 114).

As to the first element of the scheme liability claim, the Purchaser Filing Entities' alleged dissemination of the Proxy as an attachment to the 13E-3 may be a deceptive or manipulative act sufficient to support a scheme liability claim.  *See Gnanaraj*, 2024 WL 3916758, at *10; *Patel*, 794 F. Supp. 3d at 125 ("[B]ecause the defendant had no control over the misleading content, his act of [disseminating the content] was 'something other' than a misstatement." (alterations added)).  The Purchaser Filing Entities were not "tangentially involved in dissemination" of the Proxy, like "a mailroom clerk"; instead, they allegedly "sent [actionable] statements directly to investors[.]" *Lorenzo*, 587 U.S. at 79 (alterations added).

The second element — that a defendant liable under a scheme liability theory have act "in furtherance of [an] alleged scheme to defraud" — is a "concept that is distinct from scienter[.]" *Happy Tax Franchising LLC v. Hill*, No. 19-24539-Civ, 2023 WL 418820, at *12 (S.D. Fla. Jan. 5, 2023) (alterations added).  Allegations of dissemination strongly support a showing of a scheme to defraud: "there is nothing close, for purposes of Rule[s] 10b[–]5(a) and (c), about a case where the relevant conduct" is dissemination.  *Id.* (alterations added; quotation marks and citation omitted); *cf. id.* (no scheme liability for defendant not alleged to have disseminated actionable

12

statements or otherwise engaged in scheme to defraud); *see Rio Tinto PLC*, 41 F.4th at 54 ("*Lorenzo* tells us that dissemination is one example of something extra that makes a violation a scheme.").

Here, Plaintiffs adequately allege that the Purchaser Filing Entities disseminated the Proxy as part of a scheme to depress the per-share price of KnowBe4, gain public stockholders' approval of the Merger, and buy out public stockholders' equity at a favorable price. (*See, e.g.*, ACAC ¶¶ 8, 66, 68, 74, 96, 101–02, 115, 123, 126, 137–39, 140, 219, 221); *cf. SEC v. Passos*, 760 F. Supp. 3d 95, 122 (S.D.N.Y. 2024) ("[A] campaign intended to inflate stock prices can constitute an actionable 'scheme' under Rule 10b[–]5(a)." (alterations added; citations omitted))

Last, as explained in the Order, Plaintiffs adequately allege scienter for the Purchaser Filing Entities. (*See* Dec. 23, 2025 Order 30). Defendants note that Plaintiffs must allege "scienter with respect to each act or omission" — including with respect to the deceptive conduct alleged to support a scheme liability claim. *See In re CarLotz, Inc. Sec. Litig.*, No. 21-cv-5906, 2024 WL 3924708, at *5 (S.D.N.Y. Aug. 23, 2024) (emphasis and quotation marks omitted; quoting 15 U.S.C. § 78u–4(b)(2)(A)); (*see also* Reply 5 (citation omitted)). The Court's prior scienter holding applies both to the statements the Purchaser Filing Entities made and to the Purchaser Filing Entities' dissemination of the Proxy. Even if, as in *In re CarLotz*, the Purchaser Filing Entities were "legally required to file" the 13E-3, *In re CarLotz*, 2024 WL 3924708, at *5; (*see* ACAC ¶ 140), Plaintiffs' scienter allegations, taken together with allegations that the Purchaser Filing Entities engaged in a scheme to buy out KnowBe4's public stockholders cheaply, create an inference of scienter with respect to the Purchaser Filing Entities' dissemination of the Proxy that is at least as compelling as the opposing inference that the dissemination was merely regulatory compliance, *see Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019) (quoting

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)); *In re CarLotz*, 2024 WL 3924708, at *5.

Plaintiffs therefore adequately allege violations of SEC Rules 10b–5(a) and (c) against Vista, KKR, and Elephant Partners as to the actionable statements in the Proxy that they did not make: those at ACAC ¶¶ 121, 125, and 136. *See Gnanaraj*, 2024 WL 3916758, at *10.

Whether KKR and Elephant Partners can be liable on a scheme liability theory for the statement in the Press Release presents distinct questions. By disseminating the 13E-3, which incorporated by reference the Proxy, KKR, and Elephant Partners disseminated the Press Release, which was itself incorporated by reference into the Proxy. (*See* ACAC ¶ 111). Although the link between KKR's and Elephant Partners' issuance of the 13E-3 and dissemination of the Press Release is more attenuated than the link between issuance of the 13E-3 and dissemination of the Proxy, to disseminate the Proxy was to disseminate all its contents, including those incorporated by reference. There is no basis to differentiate between dissemination of certain parts of the Proxy.

As to the statement at ACAC ¶ 114, Plaintiffs allege that (1) KKR and Elephant Partners committed a deceptive or manipulative act (disseminating the Press Release as part of the 13E-3 (*see* ACAC ¶¶ 111, 140, 221)) (2) in furtherance of the alleged scheme to defraud (the statement supported the Merger's fairness and furthered the alleged scheme to buy out public stockholders cheaply (*see id.* ¶ 114)) (3) with scienter (*see* Dec. 23, 2025 Order 30); *see Gnanaraj*, 2024 WL 3916758, at *10. Plaintiffs therefore adequately allege a scheme liability theory for KKR and Elephant Partners as to the statement at ACAC ¶ 114 based on those Defendants' alleged dissemination of that statement.

In sum, Plaintiffs adequately allege a scheme liability theory for Vista as to the statements at ACAC ¶¶ 121, 125, and 136.  Plaintiffs further adequately allege a scheme liability theory for KKR and Elephant Partners as to the statements at ACAC ¶¶ 114, 121, 125, and 136.[13, 14]

## IV.  CONCLUSION

For all these reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Reconsideration **[ECF No. 112]** is **GRANTED**.

**DONE AND ORDERED** in Miami, Florida, this 6th day of April, 2026.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[13] Defendants' assertion that Plaintiffs do not adequately plead scheme liability because they did not raise it in their briefing on the Motion to Dismiss is unavailing.  (*See* Reply 4–5; Vista Suppl. Reply 3–4).  Defendants are correct that a plaintiff may not amend its complaint through later briefing — a proposition that works both ways.  While a plaintiff cannot make allegations absent from the pleading in briefing a motion to dismiss, its failure to discuss a topic in such briefing does not negate the presence of adequate allegations on that topic in the pleading.  *See Abdo*, 2021 WL 616324, at *11 (rejecting defendants' argument that plaintiffs' failure to address scheme liability in their responses to a motion to dismiss meant plaintiffs had failed to allege scheme liability); *Jackman v. 20th Jud. Cir. Ct. Admin.*, No. 19-cv-828, 2020 WL 3895425, at *4 (M.D. Fla. July 10, 2020) ("[I]t is the pleading, not the briefing on a motion to dismiss, that must state a claim." (alteration added)); (*see also* ACAC ¶ 216 (alleging in Count II that Defendants "(i) employed devices, schemes[,] and artifices to defraud; . . . and (iii) engaged in acts, practices[,] and a course of business that operated as a fraud and deceit upon the sellers of the [c]ompany's securities in an effort to maintain artificially low market prices for KnowBe4 securities" (alterations added))).

[14] By pleading both maker and scheme liability in the same count, Plaintiffs may have violated the prohibition against shotgun pleadings.  *See In re Tupperware Brands Corp. Sec. Litig.*, No. 22-10658, 2023 WL 5091802, at *8 (11th Cir. Aug. 8, 2023) (pleading scheme liability and maker liability claims under the same count violates the prohibition on shotgun pleadings).  But by not making this argument, Defendants waived it.  (*See* Mot.; Vista Suppl. Br.; Reply; Vista Suppl. Reply; *see also* Mot. to Dismiss 39–40 (asserting that Count III, but no other count, violates the prohibition on shotgun pleadings); Mot. to Dismiss Reply 19–20 (same)); *see Velasco v. U.S. Att'y Gen.*, 238 F. App'x 564, 565 (11th Cir. 2007) ("If a party fails to offer argument on an issue, that issue is deemed abandoned." (citation omitted)); *Cont'l Cas. Co. v. Hardin*, No. 16-cv-322, 2016 WL 11234458, at *9 n.7 (M.D. Fla. Dec. 5, 2016) ("Since the defendants did not challenge those counts as shotgun pleading, any such contention is appropriately deemed abandoned.").