# EXHIBIT 6

# ENTWISTLE & CAPPUCCI LLP

# FIRM RESUME

New York, New York                        Austin, Texas

ENTWISTLE & CAPPUCCI LLP is a national law firm providing exceptional legal representation to clients globally in the most complex and challenging legal matters.  Our practice encompasses many areas of complex litigation including securities, antitrust, corporate transactions, creditor's rights and bankruptcy, shareholder rights and fiduciary duty, as well as general areas of practice including government affairs, insurance and investigations, and white collar defense.  Our reputation as highly skilled and accomplished litigators among clients, adversaries and the judiciary has been earned over the Firm's long history of practice which includes all too numerous high-profile litigation matters and our achievement of extraordinary results.  Our proven ability and depth of experience has earned us special recognition and distinction in our core practice areas by publications including *U.S. News*, *Best Lawyers in America*, *Super Lawyers*, *Law 360*, *the National Law Journal* and *The American Lawyer.*

Our success has resulted in particular national recognition and distinction as one of the nation's preeminent firms specializing in securities and corporate transactional-related litigation. In this regard, E&C has served as lead plaintiffs' counsel, co-lead counsel or institutional plaintiffs' counsel in class and direct securities actions against corporate defendants including *Akorn, Alere*, *Allergan, Alta Mesa Resources*, *Bank of America*, *Bear Stearns*, *Cendant*, *Citigroup*, *CMS Energy, Cobalt International Energy*, *Countrywide*, *Daimler-Chrysler*, *Dole Food Company*, *Dynagas, Enron*, *Goldman Sachs*, *Global Crossing*, *HSBC*, *JPMorgan, Merrill Lynch*, *National City, Pattern Energy Group*, *Resideo, Royal Ahold, Sunbeam*, *UBS*, *Valeant Pharmaceuticals, Vivendi* and *Waste Management*.  Our clients in these and other actions have included many of the largest and most influential U.S. public pension funds, including the New York State Common

1

Retirement Fund, the New York State Teachers' Retirement System, the Public Employees' Retirement Association of Colorado, the Florida State Board of Administration, the Teacher Retirement System of Texas, the Illinois State Board of Investment, the State Universities Retirement System of Illinois, the Ohio Public Employees Retirement System, the Alaska Permanent Fund Corporation and the Tennessee Consolidated Retirement System, as well as leading private institutional investors, mutual funds, hedge funds and asset managers.

For these and other clients, the Firm has secured significant financial recoveries and successful legal outcomes. For example, the Firm achieved a landmark *$1.6 billion* settlement in the *MF Global Holdings Limited Investment Litigation*, which represented a 100% recovery of the MF Global customers' missing deposits. E&C also reached a comprehensive resolution of the *Tremont Securities Law, State Law and Insurance Litigation* arising out of the Bernard L. Madoff Ponzi scheme, which will result in ultimate recoveries exceeding *$2 billion* for Madoff customers and creditors. In addition, the Firm reached settlements totaling *$2.24 billion* as co-lead counsel in an action on behalf of all investors in Bernard L. Madoff Investment Securities against JPMorgan Chase & Co. In terms of cutting-edge legal accomplishments, the Firm's *$26.5 million* settlement of claims against the NASDAQ Exchange in *In re Facebook, Inc. IPO Securities & Derivative Litigation* was the first time in U.S. history that a national securities exchange, which typically has immunity as a self-regulatory organization, settled class claims for alleged wrongdoing stemming from trading disruptions on the opening day of Facebook's initial public offering. Similarly, in the *Dole Food Securities Litigation,* we reached a *$74 million* settlement in one of the first securities class actions to successfully prosecute artificial *deflation* of a company's stock price. Likewise, the Firm achieved a *$40 million* settlement against pharmaceutical company

Valeant Pharmaceuticals International, Inc. in one of the first cases to involve an investor class consisting solely of derivative traders. Recently, the Firm litigated the *Alta Mesa Resources Securities Litigation* through three weeks of a jury trial and ultimately resolved the action for $126.3 million, the largest ever recovery on behalf of investors in a Special Purpose Acquisition Company (SPAC).

In addition to representing its institutional investor clients in securities litigation, the Firm has a prominent antitrust practice targeting improper trade practices and anticompetitive activity involving financial instruments. In this practice area, the Firm represented named institutional plaintiffs in two of the most high-profile and successful antitrust class actions involving Forex and CDS instruments which resulted in settlements exceeding $4 billion. These matters required creative strategies and novel approaches, close work with industry experts, collaboration with leading economic and damage consultants, and the willingness to confront well-financed, globally based corporations and enterprises engaged in complex wrongdoing.

We also have extensive experience in complex litigation arising from corporate bankruptcy proceedings, including representation of equity and debt investors in both reorganizations and liquidations, working with debtors, creditor committees and trustee representatives to negotiate and structure Chapter 7 and 11 plans, and all ancillary proceedings such as prosecuting and defending adversary actions. For example, the Firm represents the State Universities Retirement System of Illinois and the Illinois State Board of Investment in the *Tribune* bankruptcy clawback litigation, as well as certain public funds and prominent mutual and investment funds in the *Lyondell* bankruptcy litigation. In a securities litigation against the now insolvent *Cobalt International Energy*, the Firm anticipated and defeated defendants' attempts in bankruptcy court

3

to indefinitely stay the class action in the federal district court, which would have imperiled defrauded investors' prospects for recovery.  Similarly, in the *MF Global* litigation involving customers' missing deposits, our Firm worked closely with the trustee appointed under the Securities Investor Protect Act to preserve estate assets and ensure that customers recovered their missing funds before all other creditors.  Securities law claimants must often obtain further protection of their financial interests and/or advance their corporate governance objectives by litigating in parallel bankruptcy court proceedings.  As a result, the Firm routinely identifies those matters that require expertise in corporate and bankruptcy law and assigns its lawyers accordingly.

We invite you to visit our website at **www.entwistle-law.com** to learn more about our practice, distinguished record of success and our legal professionals.

### ***Practice Groups***

We organize the firm's legal professionals into a number of highly specialized practice groups capable of responding effectively, efficiently and expeditiously to our clients' increasingly diverse needs.  Our practice groups, however, do not operate in isolation; teams of lawyers from any number of these specialized groups often work together to provide a seamless interdisciplinary approach that we find critical to effective problem solving.

In the following pages, we provide summaries of our approach to the law in the principal areas of our practice:

- Securities Litigation;

- Corporate Transactional Litigation;

- Antitrust and Competition;

- Creditors' Rights and Bankruptcy;

- General Corporate and Commercial Litigation;

- Investigations and White Collar Defense;

- Mergers, Acquisitions, Capital and Exit Strategies;

- Corporate;

- Insurance Litigation;

- Employment Litigation and Counseling; and

- Governmental Affairs.

## Securities Litigation

Entwistle & Cappucci has litigated some of the most high-profile and largest securities litigation matters in recent U.S. history and has assembled one of the most qualified and experienced teams of litigators in this area of specialty.  Our experience and achievements have won the Firm national recognition and distinction as one of the nation's preeminent firms qualified to undertake the most complex and challenging securities-related matters.  The Firm has served as lead plaintiffs' counsel, or as counsel to institutional plaintiffs pursuing direct litigation, in securities fraud actions against publicly traded corporations including *Akorn, Alere, Allergan, Alta Mesa Resources, Bank of America, Bear Stearns, Cendant, Citigroup, CMS Energy, Cobalt International Energy, Countrywide, Daimler-Chrysler, Dole Food Company, Dynagas, Enron, Goldman Sachs, Global Crossing, HSBC, JPMorgan, Merrill Lynch, National City, Pattern Energy Group, Resideo, Royal Ahold, Sunbeam, UBS, Valeant Pharmaceuticals, Vivendi* and *Waste Management*, among others.  These matters, which are often headline *bet-the-company* litigations, routinely draw the nation's top tier defense counsel and are the most aggressively litigated actions.  We have the proven ability to match deeply funded adversary resources with our capabilities to effectively advance class and direct securities actions in all U.S. courts.  We are prepared to fund prosecutions knowing that appellate review of substantive rulings often results in very lengthy and protracted court proceedings.   This work requires a highly developed understanding of financial markets, securities regulation, SEC and Blue Sky reporting requirements, as well as sophisticated financial, accounting, tax and economic concepts, which our legal professionals have mastered over decades of experience in this practice area.

7

The Firm has invaluable knowledge and experience working with the Department of Justice, the SEC, the Commodity Futures Trading Commission, the Financial Industry Regulatory Authority and other regulatory authorities, which we view as a critical element of the Firm's capabilities.  We also draw from attorneys at the Firm having a full range of disciplines and specialties which enables us to navigate a very broad range of industries.  Over the years, the Firm has represented an impressive roster of clients in this practice area, which has included the nation's largest public pension systems, publicly traded corporations, mutual funds, private equity firms, hedge funds, high-net-worth investors and charitable organizations.

We invite you to read more about select prominent litigations where the Firm has represented principal parties in our firm website.

### *Corporate Transactional Litigation*

The Corporate Transactional Litigation practice at our Firm advises public and private companies, boards of directors and board committees as well as institutional and activist investors, hedge funds and public and private pension funds on a full range of matters involving corporate transactions, fiduciary duties and disclosure requirements, across diverse industries and global businesses with an emphasis on prosecuting institutional investors claims.  A core focus of this practice is to advise clients on wide ranging board-level transactional issues and matters involving transactional pricing and process, management controlled or interested transactions, board structure and composition, appraisal rights, dividend declarations, restructurings and recapitalizations, spinoffs, and corporate charter and bylaw amendments.

We are highly experienced in litigating corporate transactional fairness issues, particularly in the Delaware Court of Chancery (as well as state and federal venues across the country).  Over

the years, the Firm has represented parties in many high-profile merger and acquisition related litigations which have served to shape the law governing process, procedural and structural fairness, officer and director responsibility, and shareholder rights. Our lawyers are on the forefront of trends in governance best practices and proposals put forth by Congress, the Securities and Exchange Commission, the stock exchanges and independent policy and advisor groups. We strive to bring both practical and creative approaches to the issues our clients are facing to serve their needs in the most efficient and effective manner. We are well equipped to provide in-depth analyses of governance practices and promote governance issues that best serve both short and long-term objectives.

### *Antitrust and Competition*

Modern international markets have in recent years proved more susceptible to price-fixing, monopolization, bid-rigging and other anti-competitive practices. Our team of complex litigation professionals has proved particularly skilled in its ability to investigate and prosecute the most sophisticated competition matters on behalf of a diverse universe of businesses and institutions. Our firm draws on resources and expertise in various business sectors developed over the years to provide a superior understanding and sensitivity to competition and pricing practices which form the basis of potential anticompetitive claims.

Throughout its history, the Firm has represented lead parties in an impressive roster of antitrust class actions where it has worked in conjunction with law enforcement and regulatory authorities both domestically and overseas. The complexities of these matters require an ability to develop strategies and continually novel approaches while working in conjunction with industry

9

experts and economic and damage consultants to insure the successful prosecution of claims against the most well financed, globally based corporations and enterprises.

In recent years, our Firm has shown particular expertise in investigating and prosecuting anticompetitive practices in global financial markets.  The following are provided as examples of our representative litigations in this practice area:

- *In re Libor-Based Financial Instruments Antitrust Litigation,* 11 MDL 2262 (S.D.N.Y.)

- *In re Credit Default Swaps Antitrust Litigation,* MDL No. 2476 (S.D.N.Y.)

- *In re Foreign Exchange Benchmark Rates Antitrust Litigation,* 13-cv-07789 (S.D.N.Y.)

### *Creditors' Rights and Bankruptcy*

The Firm has extensive experience in complex litigation arising from corporate bankruptcy proceedings, including representation of equity and debt investors in both reorganizations and liquidations, working with debtors, creditor committees and trustee representatives to negotiate and structure Chapter 7 and 11 plans, and all ancillary proceedings such as prosecuting and defending adversary actions.  The Firm served on the Defense Committee in the *Tribune Fraudulent Conveyance* actions arising out of the Tribune Company's 2008 leveraged buy-out transaction, which named as defendants thousands of disinterested former shareholders who tendered shares in the transaction.  The Firm has had important roles in bankruptcy proceedings involving companies such as *American Banknote, Enron, Global Crossing, MF Global, Outboard Marine Corporation, Refco* and *Tremont Group Holdings*.  Our recent retentions include representing hedge funds and other sophisticated investors seeking to purchase equity estate claims and special assets in bankrupt companies.  Our experience and proven ability to provide innovative and practical solutions to clients involved in a diversity of distressed situations across a variety of

industries draws on our capabilities and professional talents in other departments within the Firm, including securities, corporate, M&A and litigation.

### *General Corporate and Commercial Litigation*

Our commercial litigators are devoted to the creative resolution of complex business disputes on behalf of both corporate entities and individuals. We represent a diverse client base in a correspondingly broad array of matters. Although the nature of these disputes may vary greatly, our approach to resolving them is consistent. From the outset, we painstakingly marshal the relevant facts, objectively analyze the controlling law, assess the underlying commercial realities and develop a strategy to achieve the client's business objectives as efficiently and expeditiously as possible.

Each of our commercial litigators understands this strategy, which is applied to every business dispute we encounter. Our team approach guarantees that each lawyer knows who is doing what and why they are doing it. This allows us to staff our cases effectively from a deep bench of experienced litigators whose overriding priority is to materially advance the client's objectives.

"Litigation for litigation's sake" has no place in our pragmatic and business-oriented approach. We understand firsthand that litigating complex business issues is enormously expensive and disruptive. For this reason, we vigilantly explore all available means short of a bet-the-company litigation to effect expeditious and favorable resolutions to disputes, whether through direct negotiation with our adversaries or some means of alternative dispute resolution, such as mediation or arbitration.

### *Investigations and White Collar Defense*

Our investigations and white collar defense practice group draws on decades of success defending public and private corporations, financial firms, investment entities and individuals in highly sensitive, federal and state criminal, civil and regulatory investigations and proceedings. This practice group represents clients in all stages of government investigations (including U.S. Congressional, DOJ, SEC, FINRA, state attorneys general and other agencies) from the inception of an investigation and/or service of subpoenas, through grand jury, indictment, trial, post-trial and any appellate process. Some of the group's most important and sophisticated work takes place before criminal charges even materialize, and through a credibility and reputation developed over years in working with the governmental authorities, our lawyers have had considerable success in persuading prosecutors not to pursue criminal charges.

As long-time defense lawyers, members of our white collar defense practice group are also uniquely qualified to conduct internal corporate investigations into suspected wrongdoing or improprieties. We have led internal investigations on behalf of major corporations involving a broad cast of wrongful conduct including accounting and financial fraud, illegal financial market activities, regulatory fraud, insider trading, unauthorized trading, accounting fraud and financial malfeasance, market timing, market manipulation and obstruction of justice, among others. We have conducted such investigations as a result of our clients' independent decisions to look into suspected wrongdoing, as well as parallel to ongoing government investigations. Our focus in such matters rests with limiting our clients' exposure and providing remedial action and disclosures as necessitated by circumstances. We also assist companies in adopting procedures to promote and monitor anti-fraud and other legal compliance measures by designing and

implementing legal, financial, technical, audit and other corporate programs and related systems. Working with accountants, computer forensic and other consultants as needed, our lawyers assist clients in taking a proactive role in uncovering improper conduct by their employees, vendors, officers, directors and others.

### *Mergers, Acquisitions, Capital and Exit Strategies*

We help companies, boards of directors and shareholders/owners manage their interests in mergers, acquisitions, dispositions and leveraged buy-outs. Unique issues confront entrepreneurs and capital providers who engage the Firm for its experience in venture capital deals. These include start-up companies, emerging growth companies and mature businesses in a wide variety of industries -- from conventional to technology-based industries. We can represent either portfolio companies or capital providers engaged in equity, mezzanine and/or senior debt financings.

Just as important as helping clients close a deal is helping clients choose the proper exit from a deal which can include sales, public offerings, refinancings, recapitalizations, restructuring or the spinning-off of businesses.

### *Corporate*

We advise clients with respect to general legal matters relating to their business operations, including the proper choice of entity and the formation of corporations, limited liability companies and partnerships; negotiation and documentation of shareholder agreements, limited liability company agreements, partnership agreements, employment and severance agreements; and partnership dissolutions and other business separations.

13

The Firm also negotiates, structures and documents a wide variety of transactions including consulting agreements and many other commercial agreements and contracts that are dictated by the business needs of our clients.  For matters involving intellectual property and information technology, we negotiate and document licenses, franchise and distributorship arrangements, consulting agreements and related contracts.

A portion of our client base is comprised of foreign investors who buy and sell U.S.-based assets and businesses.  We understand the various challenges facing those making cross-border investments in this country and can structure deals that maximize their opportunities and minimize their exposure, just as we assist domestic businesses to explore, develop and engage in business transactions in foreign countries.

Finally, many of our clients have accumulated substantial assets and want to develop comprehensive estate plans that reflect their priorities.  We work with individuals and families to integrate personal, business and philanthropic needs into estate planning.

### *Insurance Litigation*

We have a long history of representing insurance carriers in the negotiation and litigation of complex coverage matters.  In addition, carriers routinely look to our litigators to handle the most challenging claims asserted against their insureds.

We also have served as counsel to the New York State Superintendent of Insurance in his capacity as rehabilitator of troubled insurers.  In that capacity, we have been called upon to determine why those insurers failed or faltered, and prosecute actions to recover wasted or misappropriated assets.  We also have pursued actions against third parties, including accountants and brokers, for their role in precipitating the failure of these insurers.

14

## *Employment Litigation and Counseling*

Our employment law group assists employers as they navigate the evolving and expanding universe of laws affecting the workplace.  One of this group's most important services is counseling clients on designing and implementing policies and practices to avoid costly and disruptive litigation commenced by current and former employees.  It is an unfortunate business reality that employers, regardless of size, will at some point become embroiled in disputes with employees alleging discrimination, harassment, retaliation, wrongful discharge, wage and hour law violations, or any number of other employment-related claims.  Our employment litigators are experienced in investigating and assessing the workplace claims brought against our clients and implementing a comprehensive strategy to dispose of those claims in the least disruptive manner.

In addition to defending workplace claims, we have deep experience in aggressively protecting our clients' confidential and proprietary business information.  The Firm's litigators move quickly and decisively to pursue former employees and competitors in matters involving breaches of restrictive covenants, misappropriation of confidential information and trade secrets, breaches of fiduciary duty, breaches of the duty of loyalty and similar wrongdoing.  We also have extensive experience managing investigations into our clients' employment practices commenced by regulators.

Our lawyers routinely draft employment contracts, employee handbooks, restrictive covenants, and other documents used to memorialize the terms of the employer-employee relationship, that optimally position the employer should that relationship terminate or turn hostile. Similarly, we help clients -- individuals and employers alike -- structure severance packages for

15

departing executives.  We also have extensive experience advising employers as they devise and implement plans for reductions in force.

### ***<u>Governmental Affairs</u>***

Our governmental affairs practice is national in scope.  We represent clients requiring expertise in the development, management and resolution of public policy issues before the governmental community.  We work to ensure that our clients have the necessary access to, and level of advocacy before, decision-makers in government.

### *RELEVANT ATTORNEY RESUMES*

Securities Litigation Practice Group

*Partners*

**Andrew J. Entwistle**

Andrew J. Entwistle is a co-founding partner of the Firm and serves as its Head of Litigation and Managing Partner. Mr. Entwistle's practice principally involves the representation of public and private institutional investors and public and private corporations in complex litigation (including both the prosecution and defense of securities and antitrust cases), corporate finance and transactional matters and internal investigations.

Mr. Entwistle's litigation successes include: representation of the Colorado Public Employees' Retirement Association in *In re Royal Ahold N.V. Securities and ERISA Litigation* resulting in recovery of more than $1.1B for his clients; acting as co-lead counsel in the MF Global litigation arising out of the loss of $1.6B in customer funds, where Mr. Entwistle successfully worked with the SIPA Trustee and regulators to negotiate the 100 percent recovery by customers of all net equity losses (including separate recoveries totaling more than $100m against JPMorgan and the CME); successfully co-leading the JPMorgan settlement that resulted in contemporaneously negotiated resolutions of class, claw back and regulatory claims recovering a total of $2.243B for Madoff victims with net losses; and co-leading the ongoing Tremont litigation that resolved claw back litigation through an agreement that resulted in a $2.9B allowed SIPA claim for Tremont customers (and the recovery of more than $100m in additional settlements).  On the defense side, Mr. Entwistle was appointed by Judge William Pauley as co-liaison counsel in the multi-billion dollar Tribune litigation, which successfully resulted in dismissal of the Note Holder litigation.

Mr. Entwistle and his team also regularly represent corporate boards, audit and special committees in connection with internal investigations involving potential regulatory and/or criminal issues--often in "bet the company" situations where it is particularly important for regulators to understand that the investigation is being led by a team equally familiar with prevailing in billion dollar matters from both sides of the "v".

Appointed by the late Judge Burton Lifland of the United States Bankruptcy Court for the Southern District of New York to serve on the Court's Special Mediation Panel, Mr. Entwistle has both mediated and actively litigated a number of complex bankruptcy matters including representing the Retired Employees Committee in the Outboard Marine Corp. Bankruptcy, equity holders in the American Bank Note Bankruptcy, the State of Florida in connection with the Enron Bankruptcy, acting as special litigation counsel in connection with the Global Crossing Bankruptcy, and representing investors in connection with the MF Global, Refco, Lehman, and Bernard Madoff Investment bankruptcies.

Mr. Entwistle is proud to have received the 2013 Learned Hand Award from the American Jewish Committee, the Knute Rockne Award from Hannah & Friends where he continues to serve on

17

the board of directors, the 2016 Vision Of Hope Award from Boys Hope Girls Hope where he also serves on the board, and the 2003 Man of the Year Award from the Catholic Big Brothers for Boys and Girls after more than a decade of service on the Board of that organization--including founding Sports Buddies New York, a partnership between the youth of New York City and athletes from the New York region's professional sports teams.   Mr. Entwistle has also received special commendations from the President of the United States, the Governors of the States of Georgia and Hawaii, and the New York State Assembly.   In addition to the above, Mr. Entwistle is now or has previously acted as a director on several corporate, advisory and charitable boards.   In addition to membership in the Federal Bar Council and various city, county, state and national bar associations, Mr. Entwistle is a member of the National Association of Public Pension Attorneys and is an Educational Sustainer of the Council of Institutional Investors.

Mr. Entwistle has been named to the Martindale-Hubbell *Bar Register of Preeminent Lawyers*, the Order of International Fellowship, Who's Who In The World, Who's Who In America, Who's Who In The East, Who's Who In American Law, Who's Who In Practicing Attorneys, Who's Who In Emerging Leaders In America and Who's Who In Finance and Industry, and as a New York "Super Lawyer".   The International Biographical Centre of Cambridge, England named Mr. Entwistle as its International Legal Professional of the Year for 2004 and inducted him into the Centre's International Order of Merit.

Mr. Entwistle acts as Northeast Regional Editor for the Defense Research Institute publication The Business Suit (from 1998-present), is a member of various bar and business associations and he has lectured extensively on a variety of general business law, litigation, securities, antitrust, bankruptcy and trial issues including, by way of example only: acting as a panelist on the Sarbanes-Oxley Panel at the Federal Bar Council's 2003 Annual Winter Bench and Bar Conference; as a panelist on both the Class Action Litigation and Cross Border Issues Panels at the Federal Bar Council's 2005 Conference; acting as a panelist on the Supreme Court Review Panel at the Federal Bar Council's 2008 Conference; acting as a panelist for the American Bar Association's conference entitled "Implied Repeals of the Antitrust Laws: How Far Are the Courts Willing to Go?"; and co-chairing a New York State Bar Association Panel on Alternative Dispute Resolution for the Trial Practice Committee of the State Bar's Commercial and Federal Litigation Section.   Mr. Entwistle is frequently interviewed by journalists, including interviews on CNN and CNBC on developing legal and business issues of the day; by the Wall Street Journal and New York Times; and by the Insider Exclusive about topics including the Bernard Madoff scandal, Wall Street's Meltdown, the American Financial System, and the Fight to Save Tator's Dodge.   In 2005 the Texas State Bar Association asked Mr. Entwistle to videotape a talk on disaster-related issues to assist lawyers and other professionals in the wake of Hurricane Katrina.   The videotape also received broad distribution by the State of Mississippi and State of Texas Governors' offices.

Mr. Entwistle is also the author of numerous articles and publications on various legal and business topics, including:

*"American Pipe's* Rule Tolling the Statute of Limitations Does Not Apply to the Three-Year Statute of Repose in the Securities Act"; "Non-Party Class Members Are Not Permitted To Intervene and Use the 'Relation-Back' Doctrine of Rule 15(c) To Revive Claims Already Extinguished by

18

Expiration of the Statute of Repose"; and "Bankruptcy Code § 546(e) Exempts from Avoidance Transfers Made to or for the Benefit of a Financial Institution in Connection with a Securities Contract, Even if the Transferee Is an Intermediary Conduit," The Business Suit, DRI, August 2013;

"Piercing the Corporate Veil and Indemnification Claims Are Not Mutually Exclusive"; and "Allegation That a Party Entered into an Agreement with No Intent to Fulfill Its Contractual Obligations Does Not Negate The Agreement's Arbitration Clause," The Business Suit, DRI, April 2013;

"Second Circuit Vacates Judgment of the United States District Court for the District of Connecticut Dismissing a Breach of Contract Action for Improper Venue Based upon a Forum Selection Clause"; and "Second Circuit Construes the Meaning Of 'Customers' Under FINRA Arbitration Code," The Business Suit, DRI, March 2012;

"Revisiting Discovery 'Best Practices' and Penalties," For The Defense, DRI, August 2010;

"Unconscionable Terms Can Be Waived in Arbitration Agreement," The Business Suit, DRI, June 2010;

"Computer Hacker Can Be Sued for Securities Fraud, Second Circuit Rules"; and "New York Appellate Court Reinstates Complaint Based on Adverse Interest Exception to *In Pari Delicto* Doctrine," The Business Suit, DRI, January 4, 2010;

"Broad Arbitration Agreement Authorizes Arbitrator to Sanction A Party's Bad Faith Conduct"; "Absent Class Members Not Entitled Full Access to Attorney's Files"; and "Intentional Spoliation of Evidence May Form Basis for Fraud Claims," The Business Suit, DRI, August 25, 2009;

"Affiant's 'To My Knowledge' Statement Sufficient to Defeat Summary Judgment"; and "Class Action Waiver Clause in Arbitration Agreement is Unenforceable," The Business Suit, DRI, April 13, 2009;

"'*Staehr*'" Hikes Burden of Proof to Place Investor on Inquiry Notice," New York Law Journal, December 15, 2008;

"Potential Securities Fraud: 'Storm Warnings' Clarified," New York Law Journal, October 23, 2008;

"'*Wagoner*' In Pari Delicto Defenses Aid Outside Auditors," New York Law Journal, August 29, 2008;

"Second Circuit Clarifies Pleading Requirements for Scienter in Securities Fraud Class Actions"; and "No Forum Shopping in Insurance Dispute, Second Circuit Says; New York Sets Aside Verdict Imposing Alter Ego Liability," The Business Suit, DRI, August 11, 2008;

"Long-Arm Statute Does Not Confer Jurisdiction on Foreign Libel Litigant"; and "Crime-Fraud Exception Pierces Attorney-Client Privilege; New York May Seek Own Separate Arbitration," The Business Suit, DRI, May 16, 2008;

19

"Approaches to Asset Recovery For Pension Fund Subprime Exposure," The NAPPA Report, February 2008;

"Injunction Against NHL's Transfer of Website Denied"; and "Republic of Congo's Oil Company Immune from RICO Charges; Discovery of Anonymous Bloggers Denied," The Business Suit, DRI, December 20, 2007;

"Ex Parte Communications with Former Employee May Not Merit Disqualification"; and "Accounting Firm Not Subject to Federal Jurisdiction; Statements Made by Employer Privileged," The Business Suit, DRI, September 6, 2007;

"Accounting Firm Has Affirmative Duty; New York's Highest Court Rejects Insured's Single-Occurrence Theory," The Business Suit, DRI, May 2, 2007;

"Imputation Doctrine No Longer Protects Auditors," The Business Suit, DRI, August 2006;

"Merchant Lacks Standing to Assert Antitrust Claims Against Credit Card Companies for Chargeback Fees," The Business Suit, DRI, December 22, 2006;

"Thompson Memorandum's Attorneys' Fees Provision Held Unconstitutional," The Business Suit, DRI, August 2006;

"Beer Supplier and Distributor Must Arbitrate Dispute Despite New York Law to the Contrary," The Business Suit, DRI, January 5, 2006;

"Corporate Exposure and Employment Practices Liability," Mealey's Reinsurance Conference, November 2000;

"Distinguishing Valid Fraud Claims From Trumped Up Breach of Contract Actions," The Business Suit, DRI, Winter 2000;

"New York Clarifies Its 'Borrowing Statute', New Jersey's 'New Business' Rule Declared Alive and Well, Second Circuit Finds Former Corporate Executives Entitled to Fifth Amendment Privilege," The Business Suit, DRI, January 2000;

"The Fine Line Between An Auditor's Recklessness and Intent to Deceive," The Business Suit, DRI, Summer 1999;

"What a Web We Weave . . . Jurisdiction in Web-Related Litigation," The Business Suit, DRI, Winter 1998;

"Red Light, Green Light, 1-2-3: Stop and Go Traffic on the Information Superhighway," The Business Suit, DRI, Winter 1998;

"Due Deference -- The Supreme Court Confirms the Post-Daubert Discretion of the Trial Judge as the 'Gatekeeper,'" The Business Suit, DRI, Winter 1998;

20

"The Inevitable Disclosure Doctrine and the Economic Espionage Act: Emerging Weapons In the Battle to Protect Trade Secrets from Theft and Misappropriation," The Business Suit, DRI, Spring 1998;

"Covenants Not to Compete and the Duty of Loyalty," (DRI Spring 1997 Conference Chicago);

"New York Business Law Update 1997," (New York State Society of CPA's);

"New York Business Law Update 1998," (New York State Society of CPA's);

"Excess Insurers Late Notice and Prejudice, American Home Puts The Issue to Rest," New York Law Journal, July 1993; and

"Managing the Risks of Accounting Liability, A Legal Perspective," New York Society of CPA's, 1993, 1995, 1997 and 1998.

Mr. Entwistle is a graduate of Notre Dame University and the University of Syracuse College of Law.

**State Bar Admissions**
New York, New Jersey, Illinois, Texas, Colorado, District of Columbia and Pennsylvania

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Second, Third, Fourth, Fifth, Seventh and Eighth Circuits; U.S. District Court for the Eastern, Northern and Southern Districts of New York; U.S. District Court for the District of New Jersey; U.S. District Court for the Northern District of Illinois; U.S. District Court for the District of Colorado; U.S. District Court for the Eastern District of Michigan; U.S. District Court for the Western and Southern District of Texas; and all courts in the states of New York, New Jersey, Illinois, Texas, Colorado, and Pennsylvania and the District of Columbia

**Professional Associations**
Board of Directors of Hannah & Friends
Federal Bar Council
National Association of Public Pension Attorneys
Educational Sustainer of the Council of Institutional Investors
Northeast Regional Editor for the Defense Research Institute - The Business Suit

**Martindale-Hubbell Rating**
AV Preeminent 5.0 out of 5

**Vincent R. Cappucci**

Vincent R. Cappucci is a co-founding partner of the Firm and is head of its Securities Litigation and Corporate Transactional Litigation Practice.  Throughout the years, Mr. Cappucci has served as lead counsel in many high-profile securities class actions, corporate transaction-related litigation, derivative litigations as well as individual actions representing the nation's largest public pension systems, investment advisory firms, major hedge funds and proprietary trading firms.  He has a distinguished record of success in securities litigation, having prosecuted cases in his career which have resulted in recoveries in the billions of dollars.  His experience includes a multitude of complex trials, arguments in numerous state and federal appellate courts, appeals to the U.S. Supreme Court, and mediation and alternative dispute resolution.

Mr. Cappucci has been named to the Martindale-Hubbell *Bar Register of Preeminent Lawyers*, for his expertise in securities litigation. In October 2010, Mr. Cappucci appeared in *Avenue* Magazine's "Legal Elite" list of top litigation attorneys in New York City. Mr. Cappucci is also a Fellow of the *Litigation Counsel of America,* a highly selective honorary society for members of the American Bar who have demonstrated excellence and accomplishment in trial and appellate advocacy. Mr. Cappucci has for many consecutive years been named in *Best Lawyers, The Best Lawyers in America, New York Magazine's New York's Top Attorneys* and *Super Lawyers.*  He was recently listed in *The New York Times Top Lawyers 2016.*

Mr. Cappucci has served as a faculty member for the National Conference on Corporate Governance and Equity Offerings sponsored by the UCLA Anderson School of Management and University of California Rady School of Management.  He has also addressed legal practitioners and financial professionals before the National Association of Public Pension Attorneys, Council of Institutional Investors and The American Conference Institute (Trying and Defending Securities Class Actions), and before International Institutional Investors on Corporate Governance and Shareholder litigation matters at annual conferences of the International Corporate Governance Network ("ICGN"), where he also served on the Committee on Executive Remuneration.

Mr. Cappucci has lectured before associations of the bar and various professional organizations, providing expert commentary on a wide range of securities markets and corporate governance issues.  Mr. Cappucci addressed law professors from across the country in a discussion on The Future of Securities Fraud Litigation sponsored by the RAND Institute for Civil Justice and recently moderated a distinguished roundtable discussion with law faculty and a Vice Chancellor of the Delaware Chancery Court concerning recent decisional authority involving corporate transactional fairness and process.

In addition to membership in various State and National Bar Associations, Mr. Cappucci currently sits on the *Second Circuit Courts Committee* of the Federal Bar Council and is a member of the New York State Bar Association, the American Bar Association and the Association of Trial Lawyers of America.  He is also a member of the American Bar Association *Section of Antitrust Law*.

Mr. Cappucci received his undergraduate degree from Fordham University with a B.S. in Accounting and his law degree from Fordham University School of Law.  In 2007, he was named a

22

Fordham Law School Centennial Founder, served as past Chair of the Law Advisory Committee, and currently is a member of the Dean's Planning Council.  In 2013, Mr. Cappucci became a member of the Board of Trustees of Fordham University.

In November 2011 Mr. Cappucci was elected to the Board of Governors of the Columbus Citizens Foundation, which through its charitable works has disbursed millions of dollars in scholarships and grants supporting the educational goals of deserving young students nationally.

Mr. Cappucci is the author of numerous articles appearing in a host of publications, including:

"Revlon's Shareholder Protections May Be Purely Cosmetic," Law360, February 2015;

"Seeking Subprime Solutions: Fed Action, Legislation and Litigation Address the Subprime Mess," The 2007 Global Securitization Guide, May 2008;

"Legislative and Regulatory Developments in U.S. Securitizations," The 2007 Global Securitization Guide, (May 2007);

"Pay, Performance and Proxies: The Latest in Executive Compensation," Institutional Investor Fund Management Legal & Regulatory Report, March 2007;

"Shareholder Activism and the Use of Litigation to Accomplish Investment Goals," Institutional Investor Fund Management Legal & Regulatory Report, April 2006;

"Corporate Governance: 2005 in Review," Institutional Investor, 2005 Compliance Report;

"Securities Class Actions: Settlements," The Review of Securities & Commodities Regulation, October 2003;

"Hot Topics in Advertising Law: Investor Fraud," The Association of the Bar of the City of New York, October 22, 2003;

"Did I Really Say That? The Truth Behind the DaimlerChrysler Merger," NAPPA Report, November 2003;

"Beyond the Sarbanes-Oxley Bill: Additional Measures to Increase Corporate Accountability and Transparency," NAPPA Report, September 2002;

"Casino Law Is Consistent With Equal Protection," New York Law Journal, March 20, 2002;

"Misreading '*Gustafson*' Could Eliminate Liability Under Section 11," New York Law Journal, September 22, 1997;

"Liability for Excessive Executive Compensation," The Corporate Governance Advisor, March/April 1997;

"Must Reliance Be Proven To Certify A Class?," New York Law Journal, August 30, 1996;

"Class Action Lawsuits and Securities Fraud: A Plaintiff Lawyer's View of the Litigation Reform Act," Securities Industry News, October 7, 1996; and

"Conflicts Between Rule 23 And Securities Reform Act," New York Law Journal, April 2, 1996.

**State Bar Admissions**
New York

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Second, Seventh, Eighth and Ninth Circuits; U.S. District Court for the Eastern and Southern Districts of New York; and all courts of the State of New York

**Professional Associations**
Federal Bar Council
New York State Bar Association
National Association of Securities Class Action Attorneys
Association of the Bar of the City of New York
American Bar Association
Association of Trial Lawyers of America
Fordham University School of Law: Dean's Law Advisory Committee and Law School Planning Committee
Litigation Counsel of America

**Martindale-Hubbell Rating**
AV Preeminent 5.0 out of 5

**Arthur V. Nealon**

Arthur V. Nealon has been a partner in the Firm since 2004. He concentrates his practice on highly complex commercial, securities, employment and white-collar criminal matters.  He has represented corporations, partnerships and individuals at trials and in appeals in federal and state courts and in arbitration proceedings at the AAA, NYSE and NASD.  A graduate of Columbia College and Columbia Law School, Mr. Nealon previously served as an Assistant to the United States Special Prosecutor and an Assistant District Attorney for New York County.

Mr. Nealon has represented plaintiffs and defendants in securities, accounting and employment litigation, arbitration and mediation.  He has also defended professional malpractice claims against attorneys, physicians and accountants and defended individuals accused of securities and financial crimes in federal and state court.  From 2004 to 2009, he co-led a team that successfully prosecuted and settled hundred-million dollar claims arising out of the bankruptcy of Global Crossing, Ltd.  In 2008 to 2011, he co-led a team that successfully settled derivative claims on behalf of a liquidated Bear Stearns investment fund.  He is currently involved in resolving derivative and class claims on behalf of investors injured in connection with the fraudulent investment schemes of Bernard L. Madoff and others, with recoveries to date exceeding $1 billion.

From 2010 to 2013 and 2015 to 2018, he has served on the New York City Bar Association's "Committee on the Judiciary." The Committee on the Judiciary evaluates candidates for election and appointment to judicial office in the Federal and State Courts in New York City. The Committee has been in existence for over 140 years. It seeks to ensure that judicial candidates meet high standards of professional competence and integrity, and are selected based on a merit standard.

**State Bar Admissions**
New York and Texas

**Court Admissions**
U.S. Supreme Court; U.S. Courts of Appeal for the Second Circuit; U.S. District Courts for the Eastern, Northern and Southern Districts of New York; and all courts of the states of New York and Texas

**Professional Associations**
American Bar Association
Association of the Bar of the City of New York (Committees: Judiciary, 2010 – 2013; 2015-2018; State Courts of Superior Jurisdiction, 1990-93; Military Justice and Military Affairs, 1985-88)
D.C. Bar Association
Federal Bar Council

**Martindale-Hubbell Rating**
AV Preeminent 5.0 out of 5

**Robert N. Cappucci**

Robert N. Cappucci, a partner of the Firm, received his undergraduate degree from Fordham University, graduating *cum laude* and *in cursu honorum*. He received his law degree from Fordham University School of Law, where he was Articles Editor of the Fordham International Law Journal. Mr. Cappucci is also the author of *Amending the Treatment of Defense Production Enterprises Under the U.S. Exon-Florio Provision: A Move Toward Protectionism or Globalism?*, 16 Fordham Int'l L.J. 652 (1993), which addresses international mergers and acquisitions, discusses the United States Treasury's Committee on Foreign Investment in the U.S. (CFIUS) and has been cited by the Federal Communications Law Journal in *Too Much Power, Too Little Restraint: How the F.C.C. Expands Its Reach Through Unenforceable and Unwieldy "Voluntary" Agreements*, 53 Fed. Comm. L.J. 49, 51 (2000). Mr. Cappucci concentrates his practice in the area of securities litigation and supervises the Firm's client reporting program. He has particular expertise in issues impacting the Firm's hedge fund and institutional trading firm client base.

Mr. Cappucci's recent litigation successes include: serving as a member of Co-Lead Counsel in *In re Tremont Securities Law, State Law and Insurance Litigation*, Case No. 1:08-cv-11117 (S.D.N.Y.) (resulting in the distribution of proceeds based upon a $2.9 billion claim in the Bernard L. Madoff Investment Securities ("BLMIS") bankruptcy and recovery of more than *$100 million* in additional settlements); and acting as a member of Co-Lead Counsel in *Paul Shapiro v. J.P. Morgan Chase & Co.*, Case Nos. 11 Civ. 8331 (CM)(MHD) and 11 Civ. 7961 (CM) (S.D.N.Y) (resulting in the settlement of class, clawback and regulatory claims worth $2.243 billion). Mr. Cappucci was also one of a handful of attorneys granted access to Bernard Madoff post-sentencing, at which time Mr. Cappucci personally interviewed Madoff in order to obtain further admissions regarding the BLMIS Ponzi scheme. Most recently, in *In re Allergen, Inc. Proxy Violation Securities Litigation*, Case No. 8:14-cv-02004-DOC-KES (C.D. Cal.), Mr. Cappucci was instrumental in securing a *$40 million* settlement from Valeant Pharmaceuticals International, Inc., Pershing Square Capital Management, L.P. and related defendants on behalf of investors in Allergan derivative instruments that were damaged by the defendants' alleged insider trading scheme.

Mr. Cappucci is a member of the Commercial and Federal Litigation Sections of the New York State Bar Association and a member of the American Bar Association, Federal Bar Council, Association of the Bar of the City of New York and Association of Trial Lawyers of America.

Before entering private practice, Mr. Cappucci interned with the Honorable John E. Sprizzo, United States District Court, Southern District of New York.

**State Bar Admissions**
New Jersey, New York and Texas

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Second and Eighth Circuits; U.S. District Court for the District of New Jersey; U.S. District Court for the Eastern and Southern Districts of New York; U.S. District Court for the Eastern District of Michigan; and all state courts of New York, New Jersey, and Texas

26

**<u>Professional Associations</u>**

Commercial and Federal Litigation Sections of the New York State Bar Association
Litigation Section - American Bar Association
Federal Bar Council
Association of the Bar of the City of New York
Association of Trial Lawyers of America

**<u>Martindale-Hubbell Rating</u>**
AV Preeminent 5.0 out of 5

**Jonathan H. Beemer**

Jonathan H. Beemer concentrates his practice on securities litigation and complex commercial disputes.  Mr. Beemer has represented both underwriters and institutional investors in direct and class actions in federal and state courts.  He has also represented parties in bankruptcy-related litigation, and litigation involving antitrust, False Claims Act and civil RICO claims.

Mr. Beemer graduated from Oberlin College with a B.A. in History.  He received his J.D. from Brooklyn Law School, where he was the managing editor of the Brooklyn Law Review.  Mr. Beemer served as a law clerk to the Honorable Marilyn Dolan Go, United States Magistrate Judge for the Eastern District of New York.

Mr. Beemer has co-authored the following articles:

"Post *Morrison*: The Global Journey Towards Asset Recovery," NAPPA White Paper (certain sections), June 2016;

 "'*Wagoner*' In Pari Delicto Defenses Aid Outside Auditors," New York Law Journal, August 29, 2008;

"Approaches to Asset Recovery For Pension Fund Subprime Exposure," The NAPPA Report, February 2008.

**State Bar Admissions**
New York

**Court Admissions**
U.S. Court of Appeals for the Second, Third, Fifth and Sixth Circuits; U.S. District Court for the Southern and Eastern Districts of New York; and all state courts of New York

**Joshua K. Porter**

Joshua K. Porter has represented financial institutions, broker-dealers, underwriters, investors and individuals in civil and white-collar matters in federal and state courts.  He has also represented parties in bankruptcy litigations and proceedings before self-regulating organizations, and in litigation involving ERISA, the Foreign Corrupt Practices Act and the Commodities Exchange Act.  Mr. Porter graduated from Boston College with a B.A. in English and received his J.D. from the University of Denver Sturm College of Law.

**State Bar Admissions**
New York

**Court Admissions**
U.S. District Court for the Southern and Eastern Districts of New York; and all state courts of New York

**Brendan J. Brodeur**

Brendan J. Brodeur's practice includes a range of securities and complex commercial litigation matters involving allegations of fraud, deceptive business practices, and breach of contract. In addition to prosecuting claims on behalf of institutional investors, he advises and defends financial services and biotechnology firms in response to governmental investigations of suspected violations of securities laws.

After earning a B.A. in Biology from Tufts University College of Arts and Sciences, Mr. Brodeur spent two years developing vaccines at a not-for- profit biomedical research institute. He then earned a J.D. *cum laude* from Northwestern University School of Law, where he was a Senior Articles Editor for the Journal of Criminal Law and Criminology. Prior to joining E&C, Mr. Brodeur worked for five years as a litigation associate at Skadden, Arps, Slate, Meagher & Flom LLP.

**State Bar Admissions**
New York and Massachusetts

**Court Admissions**
U.S Court of Appeals for the First and Second Circuits; U.S. District Court for the District of Massachusetts; U.S. District Courts for the Southern and Eastern Districts of New York; and all state courts of the Commonwealth of Massachusetts and the State of New York

**Andrew M. Sher**

Andrew Sher concentrates his practice on securities litigation and complex commercial disputes on behalf of institutional and individual investors in federal court.  Mr. Sher's work involves legal research and drafting complaints, letters and motions primarily regarding securities fraud cases.  In addition, he has extensive experience reviewing documents and preparing for the depositions of senior management at large public companies.  During his time at E&C, Mr. Sher has been an active participant in *In re Cobalt International Energy, Inc. Securities Litigation* and the *Foreign Exchange Benchmark Rates Antitrust Litigation*, among others.

Mr. Sher graduated from the University of Missouri with a B.S. in finance, *magna cum laude*, and received his J.D. from the Benjamin N. Cardozo School of Law, *cum laude*.  During law school, Mr. Sher served as an Articles Editor for the *Cardozo Journal of Conflict Resolution*.  While obtaining his law degree, Mr. Sher interned for the litigation counsel of a Fortune 500 company, as well as both federal and state administrative agencies.  Prior to joining E&C, Mr. Sher worked as a consultant assisting a global financial institution comply with regulatory requirements.

Mr. Sher has authored the following article:

"FRCP 26 vs. FRE 408:  Why Settlement Negotiations Should Be Privileged Against Third-Party Discovery," 16 Cardozo J. Conflict Resol. 295 (2014).

**State Bar Admissions**
New York and New Jersey

**Court Admissions**
U.S. District Court for the Southern District of New York; and all state courts of New York and New Jersey

31

**Jessica A. Margulis**

Jessica Margulis represents institutional and individual investors in connection with securities litigation and complex commercial disputes in federal court.  She also represents investors in corporate governance and transactional matters, including class action and derivative litigation.  Ms. Margulis graduated from Washington University in St. Louis with a B.A. in English Literature and received her J.D. from Fordham University School of Law.  During law school, she served as a Notes and Articles Editor for Fordham's Intellectual Property, Media, and Entertainment Law Journal.

**State Bar Admissions**
New York, New Jersey and Texas

**Court Admissions**
U.S. Court of Appeals for the Second Circuit; U.S. District Courts for the Southern and Eastern Districts of New York; and all state courts of New York, New Jersey, and Texas

*Associates*

**Callie Crispin**

Callie Crispin represents institutional investors in connection with securities litigation and complex commercial disputes. Callie received her J.D. from the University of Texas School of Law. During law school, Callie served as the Managing Editor of the Texas Journal on Civil Liberties & Civil Rights, was active on the Interscholastic Mock Trial Team and graduated with pro-bono honors. Callie also received her undergraduate degree from the University of Texas at Austin, where she graduated with honors and special honors.

**State Bar Admissions**
Texas

**Court Admissions**
U.S. District Courts for the Northern, Eastern, Southern, Western Districts of Texas; and all state courts of Texas

**Sal H. Lee**

Sal Lee joined E&C as an associate and concentrates her practice on securities and general corporate and commercial litigation. Prior to joining E&C, Ms. Lee served as a law clerk to the Honorable Mary Tabor and the Honorable Gina Badding of the Iowa Court of Appeals.

After receiving a B.A. in Political Science and Ethics and Public Policy from the University of Iowa, Ms. Lee went on to earn her J.D. from the University of Iowa College of Law. During law school, she served as a Managing Editor for the *Iowa Law Review* and was a Board Member of the Iowa Student Bar Association.

**State Bar Admissions**
Iowa and Texas

**Court Admissions**
U.S. District Court for the Southern District of Texas and all state courts of Iowa and Texas

**John W. Weinberger**

John Weinberger joined E&C as an associate and concentrates his practice on securities and general corporate and commercial litigation.

After receiving a B.A. in Political Science from West Virgia University. Mr. Weinberger went on to earn his J.D. from the Florida A&M University College of Law, cum laude. During law school, he served as a member of the FAMU Law Review and was named Law Review Outstanding Senior Editor.

**State Bar Admissions**
Florida

**Court Admissions**
U.S. District Court for the Middle District of Florida and all state courts of Florida